IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY <br> Three Commercial Place <br> Norfolk, Virginia 23510 <br><br> *Plaintiff*, <br><br> v. <br><br> HILDA L. SOLIS, Secretary of Labor <br> 200 Constitution Avenue, N.W. <br> Washington, D.C. 20210, <br><br> *Defendant.* | Civil Action No. _____ |

## COMPLAINT

Plaintiff Norfolk Southern Railway Company ("NSR") brings this Complaint against defendant Hilda L. Solis, United States Secretary of Labor ("Secretary"), pursuant to the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. §20109, the Declaratory Judgment Act, 28 U.S.C. §§2201, 2202, and the All Writs Act, 28 U.S.C. §1651, and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. §1331 and §1337(a), in that federal questions arising under the FRSA are presented. The relief requested is authorized by FRSA, the Declaratory Judgment Act, and the All Writs Act.

2. Venue is proper in this judicial district under 28 U.S.C. §1391(e)(1), as defendant Secretary resides in this judicial district.

3. In this civil action, NSR seeks direct, nonstatutory review of a September 29, 2011 decision of the United States Department of Labor's Administrative Review Board ("ARB"), acting as the delegate of defendant Secretary. (A copy of the ARB decision is attached hereto as Exhibit A.)

4. This Court has authority to grant the relief requested by NSR under the doctrine of *Leedom v. Kyne*, 358 U.S. 184 (1958), because the September 29, 2011 decision is in excess of the Secretary's jurisdiction and delegated powers, and NSR has no other meaningful and adequate means of vindicating its statutory right. NSR seeks a judgment vacating that decision and setting it aside; declaring that the ruling contained in the ARB decision is of no force or effect; directing the Secretary to dismiss the administrative proceeding in which the ARB decision was rendered; and enjoining the Secretary and her delegates from applying the ruling contained in the ARB decision in other proceedings under FRSA.

## THE PARTIES

5. Plaintiff NSR is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal offices located at Three Commercial Place, Norfolk, Virginia 23510. NSR is a common carrier by railroad engaged in interstate commerce and is a "carrier" within the meaning of, and subject to, the Railway Labor Act, 45 U.S.C. §151 First, and the Interstate Commerce Commission Termination Act, 49 U.S.C. §10101. NSR operates a railroad system in the Southern, Eastern, and Midwestern United States, and in the Province of Ontario, Canada.

6. Defendant Secretary, appointed by the President of the United States, is the senior officer of the United States Department of Labor ("DOL"), an agency of the United States. She is sued exclusively in her official capacity.

## EVENTS REQUIRING RELIEF

A.   **Statutory Provisions**

7.   The Railway Labor Act, 45 U.S.C. §151 *et seq.* ("RLA"), governs relations between railroads and their employees. Section 3 of the RLA, 45 U.S.C. §153, prescribes mandatory and exclusive procedures for resolving disputes between railroads and their employees over the "interpretation or application" of agreements concerning rates of pay, rules, and working conditions, including disputes over the assessment of discipline against employees pursuant to the terms of a collective bargaining agreement. These procedures include mandatory arbitration before the National Railroad Adjustment Board, 45 U.S.C. §153 First (i), or, alternatively, before a special board of adjustment created by a railroad and a labor union under RLA §3 Second, 45 U.S.C. §153 Second.

8.   Awards rendered by RLA §3 arbitration boards are "final and binding." 45 U.S.C. §153 First (m); *id.* §153 Second (second paragraph).

9.   FRSA, as amended in 2007, provides that a railroad carrier "may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee" for engaging in specified types of conduct, including undertaking "to notify . . . the railroad carrier . . . of a work-related personal injury" or "reporting, in good faith, a hazardous safety or security condition." 49 U.S.C. §20109(a)(4), §20109(b)(1)(A).

10.   A railroad employee who believes that his railroad employer has engaged in conduct made unlawful by FRSA may seek relief by filing a complaint with the Secretary. 49 U.S.C. §20109(d).

11.   The Secretary has delegated her authority to conduct an investigation of a complaint filed under §20109(d) to the Assistant Secretary for Occupational Safety and Health

("the Assistant Secretary"), the head of the Occupational Safety and Health Administration ("OSHA"), a subunit of DOL.

12.     The Assistant Secretary may determine that an investigation is not warranted and dismiss the complaint. The Assistant Secretary may instead conduct an investigation, issue findings on behalf of the Secretary, and, if he finds the employee's complaint has merit, issue a preliminary order granting relief to the employee, including reinstatement, back pay, compensatory damages, attorneys' fees, and punitive damages up to $250,000. 49 U.S.C. §20109(e); 29 C.F.R. §1982.105.

13.     Either the employee or the railroad may file objections to the Assistant Secretary's findings and seek a *de novo* hearing before a DOL Administrative Law Judge. Any preliminary order of reinstatement issued on behalf of the Assistant Secretary is not automatically stayed while the matter is pending before the Administrative Law Judge. 49 U.S.C. §20109(d)(A), §42121(b)(2); 29 C.F.R. §1982.106.

14.     A decision by an Administrative Law Judge under §20109 is subject to discretionary review by the ARB. 29 C.F.R. §1982.110. The Secretary has delegated to the ARB the authority to issue final agency decisions under §20109 on her behalf. Secretary's Order No. 1-2010, 75 Fed. Reg. 3924 ¶5(c)(15) (January 15, 2010). An order of reinstatement issued by an Administrative Law Judge continues in effect while the matter is pending before the ARB, unless the reinstatement order is specifically stayed. 29 C.F.R. §1982.110(b).

15.     A final order of the ARB is subject to review in a United States Court of Appeals. 49 U.S.C. §20109(d)(4); 29 C.F.R. §1982.112.

16.     FRSA contains an "Election of Remedies" provision, 49 U.S.C. §20109(f), which limits the Secretary's authority to investigate a complaint filed under 49 U.S.C. §20109.

Section 20109(f) provides: "Election of Remedies. An employee may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the railroad carrier."

17. FRSA also provides, in 49 U.S.C. §20109(d)(3), in pertinent part: "With respect to a complaint . . ., if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy, and which action shall, at the request of either party to such action, be tried by the court with a jury."

**B.   The Administrative Review Board's Decision Declaring §20109(f) Inapplicable To An Employee's Pursuit Of Relief Under The Railway Labor Act.**

18. Larry L. Koger, Jr. ("Koger") was employed by NSR as a conductor, and worked under a collective bargaining agreement entered into by NSR and Koger's labor union, the United Transportation Union ("UTU").

19. On July 29, 2007, Koger was working, with a locomotive engineer, on a locomotive operating in an NSR rail yard in West Virginia. Koger failed to alert the engineer to a red signal (a command to stop), in violation of NSR's operating rules. As a result, the locomotive ran through the red signal, struck a derailing device, derailed, and was damaged.

20. On August 8, 2007, NSR conducted a formal investigation, in accordance with its collective bargaining agreement with UTU, to determine Koger's responsibility in connection with his locomotive's passing a stop signal. The investigation is a hearing, conducted on the record. By letter dated August 21, 2007, NSR dismissed Koger from service for his

responsibility in allowing his locomotive to run through the red signal. (The engineer was also found at fault and was dismissed.)

21. Koger exercised the appeal rights available to him under his collective bargaining agreement and the RLA. First, Koger's union representative appealed Koger's dismissal within NSR. NSR affirmed Koger's dismissal.

22. Koger then challenged his dismissal in arbitration before Public Law Board No. 5944 ("PLB 5944"). PLB 5944 is an open, ongoing arbitration board created by NSR and UTU under RLA §3 Second (second paragraph), 45 U.S.C. §153 Second (second paragraph). PLB 5944 consists of a partisan railroad member, a partisan union member, and a neutral chairman. The neutral chairman of PLB 5944 was compensated by the National Mediation Board, a federal agency, pursuant to RLA §3 Second (second paragraph), 45 U.S.C. §153 Second (second paragraph).

23. On January 8, 2008, PLB 5944 issued an interim award, which directed that Koger be returned to service but deferred a final determination of the propriety of NSR's assessment of discipline against Koger.

24. On July 28, 2008, PLB 5944 issued a final award. The award upheld NSR's assessment of discipline, but modified the extent of the discipline by reducing it from a dismissal to a lengthy, unpaid suspension from service.

25. On the day after the derailment, Koger had notified NSR that he had been injured in the derailment. In February 2008, while his RLA §3 arbitration case was pending, Koger filed a complaint under 49 U.S.C. §20109. Koger alleged that he had been terminated for reporting a work-related personal injury to NSR, in violation of FRSA.

26. On June 3, 2008, following an investigation, the Regional Administrator for OSHA, Region III, exercising authority delegated by the Assistant Secretary, determined that there was no reasonable cause to believe that NSR had retaliated against Koger in violation of FRSA. The Regional Administrator did not rule on NSR's argument that §20109(f) barred Koger from pursuing a complaint under §20109.

27. Koger appealed the Regional Administrator's determination to a DOL Administrative Law Judge. The Administrative Law Judge held, in *Koger v. Norfolk Southern Ry.*, Case No. 2008-FRSA-0003 (May 29, 2009), that §20109(f) barred Koger's FRSA complaint, because Koger had elected to challenge his dismissal from employment in arbitration under RLA §3.

28. Koger petitioned the ARB for review of the Administrative Law Judge's decision.

29. The ARB consolidated Koger's petition with a petition to review the decision of a different Administrative Law Judge in a case involving an employee of Union Pacific Railroad Company, who had also been dismissed and had challenged his dismissal in arbitration under RLA §3, *Mercier v. Union Pacific R.R.*, Case No. 2008-FRSA-0004 (June 3, 2009) (Exhibit A hereto).

30. On September 29, 2011, the ARB issued a decision in the consolidated cases, *Mercier v. Union Pacific R.R.*, ARB Case No. 09-121, and *Koger v. Norfolk Southern Ry.*, ARB Case No. 09-101 ("September 29, 2011 decision"). The ARB ruled that, as a matter of law, an employee's pursuit of RLA arbitration does not constitute an election of remedies under 49 U.S.C. §20109(f). Applying this interpretation of §20109(f), the ARB concluded that Koger was

not barred from challenging his dismissal pursuant to §20109 even though he had challenged it in arbitration under RLA §3.

31. Following the amendment to FRSA in 2007, OSHA officials, acting as delegates of the Assistant Secretary, had ruled that §20109(f) does bar an employee who has sought relief in RLA §3 arbitration from pursuing a complaint under §20109. During the pendency of the *Koger* appeal, the Assistant Secretary changed course, adopting a view of §20109(f) that is the same as the one contained in the ARB's September 29, 2011 decision.

32. The ARB's September 29, 2011 decision remanded the *Koger* and *Mercier* cases to the administrative law judges, for further proceedings on the merits of each employee's challenge to his dismissal under FRSA. The September 29, 2011 decision was not appealable to a court of appeals under 49 U.S.C. §20109(d)(4), because it was not a final order of the Secretary.

**C. The Administrative Review Board's Interpretation Of 49 U.S.C. §20109(f) Is Wrong As A Matter Of Law.**

33. The September 29, 2011 decision's interpretation of §20109(f) is contrary to the plain language of the statute and is wrong as a matter of law.

34. Section 20109(f) imposes three conditions for its application: (1) that an employee "seek protection," (2) under both §20109 and "another provision of law," (3) for "the same allegedly unlawful act" of the railroad.

35. Section 3 of the RLA, 45 U.S.C. §153, a statute, is a "provision of law" within the plain meaning of §20109(f).

36. An employee who has challenged his dismissal from employment before an arbitration board created under RLA §3 that issues an award made final and binding by RLA

§3 has sought protection under "another provision of law" within the plain meaning of §20109(f).

37. RLA §3 provides the exclusive scheme for pursuing a remedy for violation of the terms of a railroad collective bargaining agreement, culminating in final and binding arbitration. An employee who challenges his dismissal or other discipline in arbitration under RLA §3 "seeks protection" under another provision of law within the plain meaning of §20109(f).

38. An employee who challenges his dismissal from employment, or other discipline, in arbitration under RLA §3 and also in a DOL complaint proceeding under 49 U.S.C. §20109 is seeking, in the two proceedings, protection "for the same allegedly unlawful act" of the railroad within the plain meaning of §20109(f). The "act" being challenged is the dismissal or other discipline that gives rise to a legal claim. There is only a single act, whether the employee claims that the act gives him a right to relief under the RLA or under FRSA.

39. NSR engaged in a single adverse act with respect to Koger: it dismissed him from employment. Koger sought protection against that single act under "another provision of law" -- arbitration pursuant to RLA §3 -- as well as under FRSA, 49 U.S.C. §20109.

40. In its September 29, 2011 decision, the ARB advanced several arguments in support of the its reading of §20109(f), but each argument clearly fails.

41. The ARB's decision states that a railroad employee who pursues RLA arbitration is not seeking relief under "another provision of law" because the claim presented in arbitration is that a collective bargaining agreement has been violated, and a collective bargaining agreement is a contract, not a provision of law. In this respect, the ARB decision is flatly contrary to *Norfolk & Western Ry. v. American Train Dispatchers Ass'n*, 499 U.S. 117

(1991), which holds that a railroad employee who seeks relief under his collective bargaining agreement is seeking relief under the statute that gives legal force to the agreement, the RLA.

42. The ARB's decision is wrongly premised on the notion that RLA arbitration is a merely a function of a collective bargaining agreement. In fact, RLA arbitration is statutory. RLA §3 mandates arbitration as the exclusive remedy for resolving disputes such as Koger's challenge to his dismissal. Koger's arbitration was conducted under RLA §3, not his collective bargaining agreement. The arbitration board that resolved Koger's challenge to his dismissal was created under authority of RLA §3; its neutral chairman was compensated by the National Mediation Board pursuant to RLA §3; and its award was made final and binding by RLA §3.

43. The ARB's decision also reasons that because the RLA does not dictate the substantive terms of a collective bargaining agreement, an employee who pursues RLA arbitration is not seeking to enforce a "right created under a provision of law," and therefore is not covered by §20109(f). In this respect, the ARB decision adds requirements to §20109(f) that the statute does not contain. Koger sought protection for his dismissal by pursuing binding statutory arbitration, the remedy made available, and mandated, by RLA §3. Section 20109(f) does not require that the protection sought be for a "right created under a provision of law."

44. The ARB's decision further states that subsections (g) and (h) of 49 U.S.C. §20109 "anticipate and permit" an employee's concurrent pursuit of arbitration under RLA §3 and a complaint under §20109. Section 20109(g) provides: "No preemption: Nothing in this section preempts or diminishes any other safeguards against discrimination, . . . discharge, . . . or any other manner of discrimination provided by Federal or State law." Section 20109(h) provides: "Rights Retained by Employee: Nothing in this section shall be deemed to diminish

the rights, privileges, or remedies of any employee under any Federal or State law or under any collective bargaining agreement. . . ."

45. The ARB's decision in this regard has no foundation in the language of subsections (g) and (h), and wrongly denies the effect of §20109(f) as regards the RLA.

46. By their plain terms, subsections (g) and (h) of §20109, by providing that §20109 does not itself preempt potential claims an employee may have under state or federal law or preclude an employee from pursuing claims under a collective bargaining agreement, ensure that §20109 does not take any choices away from an employee.

47. But Section 20109(f), by its own plain terms, imposes consequences if an employee, as guaranteed by §20109(g) and (h), chooses to pursue relief for his discipline under "another provision of law," whether the RLA or state law. Section 20109(f) bars the employee who has made such a choice from also seeking relief for the same discipline under §20109. Nothing in the language of either subsection (g) or subsection (h) modifies or limits the reach of §20109(f), or removes the RLA from that provision's scope.

48. The ARB's decision also states that its conclusion is supported by *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), which held that that an employee was not precluded from challenging his discharge under Title VII of the Civil Rights Act of 1964, as amended, by virtue of having previously challenged the discharge in arbitration pursuant to his collective bargaining agreement. But the ARB's reliance on *Alexander* is entirely misplaced. *Alexander* concerns the limits of judge-made election of remedies (and waiver) rules in connection with a statute that does not contain an election of remedies provision; the case has no bearing on the interpretation of an explicit statutory election of remedies provision, like §20109(f).

**D. NSR Will Not Have A Meaningful Opportunity To Obtain Relief From The ARB's Misinterpretation Of 49 U.S.C. §20109(f) Unless NSR Can Challenge The September 29, 2011 Decision In This Civil Action.**

49. The September 29, 2011 decision is functioning as an interpretive rule stating that an employee's pursuit of RLA arbitration can never trigger application of §20109(f). This rule is currently guiding DOL's handling of all other FRSA cases brought by employees under 49 U.S.C. §20109 against NSR and other railroads.

50. On information and belief, there are hundreds of §20109 cases currently at various stages in the DOL investigatory and adjudicatory process. On information and belief, many of those cases should be, and would be dismissed administratively by DOL, by reason of §20109(f), if not for the ARB's September 29, 2011 decision announcing that an employee's pursuit of relief under the RLA can never trigger that provision.

51. Section 20109(f) is a limit on the Secretary's authority to investigate a complaint filed under 49 U.S.C. §20109. Section 20109 investigations that are not dismissed administratively by reason of §20109(f) because of the ARB's September 29, 2011 decision are *ultra vires*.

52. On information and belief, in the course of such ongoing *ultra vires* FRSA investigations, NSR, like all railroads, potentially could be faced with orders that burdensomely and unlawfully seek to force it to provide interim relief to employees, including reinstatement, and with final orders affording the full range of §20109 remedies.

53. The ARB's September 29, 2011 decision, by permitting employees to pursue FRSA claims at DOL when they have also pursued RLA arbitration, is destructive of the long established RLA §3 process. The decision has the effect of undermining the finality of RLA §3 arbitration and creates a certainty that there will be inconsistent and incompatible results between RLA arbitration awards and DOL decisions under FRSA. The decision also inhibits the

ability of NSR and labor unions to resolve disputes over discharges and other discipline and enter into settlements of claims for reinstatement and back pay through the RLA process.

54. Section 20109(f) is intended to protect railroads from having to go through the §20109 investigation and adjudicatory process when an employee has elected to challenge his dismissal or other discipline in arbitration under RLA §3.

55. The *ultra vires* regime of FRSA investigations resulting from the September 29, 2011 decision denies NSR the protection intended by §20109(f).

56. NSR will effectively lose the protection afforded by §20109(f) if, as a result of the remand ordered by the ARB, it must complete the §20109 process and obtain a final decision on the merits of Koger's claim before NSR will have the opportunity to challenge the ARB's September 29, 2011 decision by eventually seeking review of a final administrative order in a court of appeals pursuant to 49 U.S.C. §20109(d)(4).

57. NSR cannot be assured that it will ever have an opportunity to obtain court of appeals review of the September 29, 2011 decision, because NSR may prevail on the merits of Koger's §20109 claim, either before an administrative law judge or in further proceedings before the ARB, and Koger may not appeal; or because Koger may simply drop his complaint.

58. NSR also cannot be assured that it will have an opportunity to obtain court of appeals review of the September 29, 2011 decision, because Koger has the unqualified right, under 49 U.S.C. §20109(d)(3), to withdraw his case from DOL and bring a *de novo* civil action against NSR in district court. If Koger exercises that right, the DOL administrative process will never be completed.

59. A *de novo* civil action in district court initiated by Koger pursuant to §20109(d)(3) would not assure NSR of a meaningful opportunity to obtain relief from the ARB's

September 29, 2011 decision. Such a civil action would not constitute a direct review of the ARB decision. Indeed, the Secretary would not be a party to such a civil action. There can be no assurance that the district court hearing such an action would address the interpretation of §20109(f) announced by the ARB. The district court might decide the case on grounds other than the question of election of remedies; or the court might conclude that Koger's particular claim is barred, without reaching the broader interpretation of §20109(f) adopted by the ARB. Even if the district court were to reach the considerations addressed by the ARB, NSR could not expect, in a civil action in which the Secretary is not a party, to bind the Secretary to a correct interpretation of §20109(f).

## **CLAIM FOR RELIEF**

60. This civil action falls within the rule that a district court has authority to review a non-final agency action that is in "excess of its delegated powers and contrary to a specific prohibition [that] is clear and mandatory," when there is no other meaningful and adequate means for the aggrieved party to vindicate its statutory right. *Leedom v. Kyne*, 358 U.S. 184, 188 (1958).

61. The September 29, 2011 decision's ruling that an employee's pursuit of RLA arbitration does not constitute an election of remedies, for purposes of §20109(f), is in excess of the Secretary's delegated powers and contrary to the specific, clear and mandatory restriction on her authority imposed by 49 U.S.C. §20109(f).

62. Unless NSR can challenge the September 29, 2011 decision in this civil action, it will not have a meaningful and adequate opportunity to obtain relief from the Secretary's decision improperly limiting the effect of §20109(f).

63. NSR is entitled to a judgment vacating and setting aside the ARB's September 29, 2011 decision; declaring that the decision interpreting §20109(f) is of no force or effect; directing the Secretary to dismiss Koger's §20109 complaint; and enjoining the Secretary and her delegates from applying, in other FRSA proceedings, the interpretation of §20109(f) contained in the ARB decision.

WHEREFORE, plaintiff Norfolk Southern Railway Company demands judgment in its favor and against defendant Secretary of Labor, and respectfully prays that the Court:

(1) Enter a final judgment:

   (a) vacating and setting aside the September 29, 2011 decision of the Secretary, issued through her delegate the Administrative Review Board; and

   (b) declaring that the Secretary may not rely on the September 29, 2011 decision in any other proceedings under 49 U.S.C. §20109; and

   (c) directing the Secretary to dismiss the complaint filed by Larry L. Koger, Jr., under 49 U.S.C. §20109; and

   (d) enjoining the Secretary and her delegates from applying the interpretation of 49 U.S.C. §20109(f) set forth in the September 29, 2011 decision in any other proceedings under 49 U.S.C. §20109; and

(2) Award NSR its costs and expenses, including attorneys' fees, incurred in this proceeding; and

(3) Grant such other and further relief as the Court deems appropriate.

- 16 -

Respectfully submitted,

*[signature: Jeffrey S. Berlin]*

Jeffrey S. Berlin (D.C. Bar No. 200048)
Mark E. Martin (D.C. Bar No. 373445)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8178
Fax (202) 736-8711

Mark D. Perreault
General Solicitor
Norfolk Southern Corporation
3 Commercial Place
Norfolk, VA 23510
(757) 629-2751

*Attorneys for Plaintiff Norfolk Southern Railway Company*