IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                         )
NORFOLK SOUTHERN RAILWAY          )
COMPANY,                                            )
                                                         )
                        Plaintiff,                     )
                                                         )
            v.                                          )          Civil Action No. 12-cv-00306 (RWR)
                                                         )
HILDA L. SOLIS, Secretary of Labor,       )
                                                         )
                                                         )
                        Defendant.                   )
_____)


**<u>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

    A)    Statutory History ............................................................................. 2

        1)    Railway Labor Act ............................................................... 2

        2)    Federal Railroad Safety Act ................................................ 3

    B)    Factual and Procedural Background ................................................ 6

    C)    Plaintiff's Allegations .................................................................... 8

LEGAL STANDARD ......................................................................................... 9

ARGUMENT ...................................................................................................... 10

I.    THE COURT DOES NOT HAVE JURISDICTION UNDER FRSA TO
REVIEW THE ARB ORDER. ................................................................ 10

II.    THE COURT DOES NOT HAVE JURISDICTION UNDER LEEDOM
BECAUSE THE SECRETARY HAS NOT VIOLATED A "CLEAR AND
MANDATORY" PROHIBITION IN FRSA, PLAINTIFF HAS NO CLEAR
STATUTORY RIGHT TO VINDICATE UNDER FRSA, AND PLAINTIFF
CAN OBTAIN APPROPRIATE RELIEF IN THE COURT OF APPEALS.
IN ADDITION, THIS CASE SHOULD BE DISMISSED ON THE MERITS
BECAUSE § 20109(f) CONFERS NO RIGHT ON PLAINTIFF TO BE
FREE FROM INVESTIGATION OF RETALIATION CLAIMS
UNDER FRSA. ....................................................................................... 12

    A)    The Secretary Has Not Violated A "Clear And Mandatory"
Statutory Prohibition. ..................................................................... 14

    B)    Section 20109(f) Confers No Right Upon Plaintiff And, In The
Alternative, Plaintiff Can Seek Relief In The Court
Of Appeals. ..................................................................................... 29

CONCLUSION ................................................................................................... 34

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Gardner-Denver Co.*,
   415 U.S. 36 (1974) .......................................................................................... passim

*American Airlines v. Wolens*,
   513 U.S. 219 (1955) ............................................................................................. 26

*Ass'n of Civilian Technicians v. Fed. Labor Relations Auth.*,
   283 F.3d 339 (D.C. Cir. 2002) ............................................................... 13, 16, 17, 27

*Atchinson, Topeka & Santa Fe Ry. Co. v. Buell*,
   480 U.S. 557 (1987) .......................................................................................... 3, 30

*BP West Coast Products, LLC v. Fed. Energy Regulatory Comm'n.*,
   374 F.3d 1263 (D.C. Cir. 2004) .............................................................................. 28

*Barrentine v. Arkansas-Best Freight Sys, Inc.*,
   450 U.S. 728 (1981) .......................................................................................... 19, 30

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 9

*Bd. of Governors, Fed. Reserve Sys. v. MCorp Fin., Inc.*,
   502 U.S. 32 (2006) ..................................................................... 13, 14, 29, 31

*Borg-Warner Protective Services Corp. v. E.E.O.C.*,
    81 F. Supp. 2d 20, 24 (D.D.C. 2000) .............................................................. 17, 27

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
   467 U.S. 837 (1984) ............................................................................................. 28

*Commodity Futures Trading Comm'n v. Schor*,
   478 U.S. 833 1986) ............................................................................................. 28

*Conroy v. Aniskoff*,
   507 U.S. 511 (1993) ............................................................................................. 26

*Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*,
   491 U.S. 299 (1989) .......................................................................................... 2, 22

*Consol. Rail Corp. v. United Transp. Union*,
   947 F. Supp. 168 (E.D. Pa. 1996) ....................................................................... 3, 29

*Davis v. Mich. Dep't of Treasury*,
489 U.S. 803 (1989)................................................................................25

*Detroit Newspaper Agency v. Nat'l Labor Relations Bd.*,
286 F.3d 391 (6th Cir. 2002)……………………………………...……………..31, 33

*Dominguez v. UAL Corp.*,
666 F.3d 1359 (D.C. Cir. 2012)…………………………………………………….32

*Firestone Tire & Rubber Co. v. Risjord*,
449 U.S. 368, 374 (1981)……………………………….………………………...32

*Five Flags Pipe Line Co. v. Dep't of Transp.*,
854 F.2d 1438 (D.C. Cir. 1988)....................................................................11, 12

*\*Gonero v. Union Pacific R.R. Co., No. Civ. 2:09-2009*,
2009 WL 3378981 (E.D. Cal. Oct. 19, 2009)......................................................19, 20

*Grand Lodge of Fraternal Order of Police v. Ashcroft*,
185 F.Supp.2d 9 (D.D.C. 2001)…………………………………………………….9

*Graf v. Elgin, Joliet, and Eastern Railway Co.*,
697 F.2d 771 (7th Cir. 1983) ....................................................................19

*\*Griffith v. Fed. Labor Relations Auth.*,
842 F.2d 487 (D.C. Cir. 1988) ........................................................................passim

*Hanauer v. Reich*,
82 F.3d 1304 (4th Cir. 1996) ....................................................................17

*Hawaiian Airlines, Inc. v. Norris*,
512 U.S. 246 (1994)....................................................................3, 23, 30

*Intercollegiate Broadcast System, Inc. v. Copyright Royalty Bd.*,
574 F.3d 748 (D.C. Cir. 2009) ....................................................................25

*\*Jordan Hospital v. Leavitt*,
571 F.Supp.2d 108 (D.D.C. 2008) ..........................................................9, 10, 17, 32

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
131 S.Ct. 1325 (2011)....................................................................28

*Kowal v. MCI Commc'ns Corp.*,
16 F.3d 1271 (D.C. Cir. 1994) ....................................................................9

*Kowalski v. Tesmer*,

543 U.S. 125 (2004) ............................................................................................... 33

*Leedom v. Kyne*,
  358 U.S. 184 (1958) .................................................................................... passim

*Long Term Care Partners, LLC v. United States*,
  516 F.3d 225 (4th Cir. 2008) ................................................................................ 17

*McDonald v. City of West Branch, Mich.*,
  466 U.S. 284 (1984) ............................................................................................. 19

*Meredith v. Fed. Mine Safety and Health Review Comm'n*,
  177 F.3d 1042 (D.C. Cir. 1999) ............................................................................ 25

*Mississippi Power & Light Co. v. Mississippi*,
  487 U.S. 354 (1981) ............................................................................................. 28

*Molton, Allen & Williams, Inc. v. Harris*,
  436 F.Supp. 853 (D.D.C. 1997) ........................................................................... 10

*Montana Power Co. v. Fed. Power Comm'n*,
  445 F.2d 739 (D.C. Cir. 1970) ............................................................................. 16

*Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*,
  472 U.S. 237 (1985) ............................................................................................. 15

*Myers v. Bethlehem Shipbuilding Corp.*,
  303 U.S. 41 (1938) ............................................................................................... 33

*NLRB v. City Disposal Systems, Inc.*,
  465 U.S. 822 (1984) ............................................................................................. 28

*NYUNT v. Chairman, Broadcasting Bd. of Governors*,
  589 F.3d 445 (D.C. Cir. 2009) ............................................................... 12, 13, 14, 17

*National Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*,
  437 F.3d 1256 (D.C. Cir. 2006) ....................................................................... passim

*National Labor Relations Bd. v. American Nat'l Ins. Co.*,
  343 U.S. 395 (1952) ............................................................................................. 21

*Norfolk & Western Ry. Co. v. Am. Train Dispatchers Ass'n*,
  499 U.S. 117 (1991) ....................................................................................... 24, 26

*Norman v. Mo. Pac. R.R.*,
  414 F.2d 73 (8th Cir. 1969) ............................................................................. passim

*Oglala Sioux Tribe v. U.S. Army Corp of Eng'rs*,
    537 F. Supp. 2d 161 (D.D.C. 2008). " ......................................................................9

*\*Physicians Nat'l House Staff Ass'n v. Fanning*,
    642 F.2d 492 (D.C. Cir. 1981) ...............................................13, 14, 17, 33

*Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin*,
    489 F.3d 1279 (D.C. Cir. 2007) ...............................................................12

*Public Citizen v. Office of the U.S. Trade Representatives*,
    970 F.2d 916 (D.C. Cir. 1992) .................................................................29

*Sprietsma v. Mercury Marine*,
    537 U.S. 51 (2002) ...................................................................................25

*\*Sturm, Ruger & Co. v. Chao*,
    300 F.3d 867 (D.C. Cir. 2002) .................................................11, 31, 33

*Terminal R. Ass'n of St. Louis v. Bhd. of R.R. Trainmen*,
    318 U.S. 1 (1934) .....................................................................................21

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994) ...........................................................................10, 31

*U.S. Dep't of Justice v. Fed. Labor Relations Auth.*,
    981 F.2d 1339 (D.C. Cir. 1993) ...............................................................14

*Union Pac. R.R. Co. v. Bhd. Of Locomotive Eng'rs & Trainmen*,
    130 S.Ct. 584 (2009)...................................................................................2

*United Food and Commercial Workers, Local 400 v. NLRB*,
    694 F.2d 276 (D.C. Cir. 1982) .................................................................14

*United States v. Mead Corp.*, 533 U.S. 218, 229 (2001)………………………..28

*Watts v. Securities and Exchange Comm'n*,
    482 F.3d 501 (D.C. Cir. 2007) .........................................................10, 11

*Welch v. Chao*, 536 F.3d 269, 276 n.2 (4th Cir. 2008)…………………………28

## STATUTES AND REGULATIONS

29 U.S.C. § 159.........................................................................................12, 14

29 U.S.C § 660...............................................................................................20

42 U.S.C. § 1983 ................................................................................................ 19

45 U.S.C. § 151 .................................................................................................. 2

45 U.S.C. § 152 .................................................................................................. 2

45 U.S.C. § 153 .............................................................................................. 2, 3

45 U.S.C. § 411 .................................................................................................. 4

*49 U.S.C. § 20109 ...........................................................……………….passim

*49 U.S.C. § 42121……………………………………………………….passim

Federal Railroad Safety Authorization Act of 1980, Pub. L. No. 96-423,
      94 Stat. 1811 ......................................................................... 3, 4, 21, 29

Pub. L. No. 103-272, 108 Stat. 867 (1994)……………………………………....4

Implementing Recommendations of the 9/11 Commission Act of 2007,
      Pub. L. No. 110-53, 121 Stat. 266 ................................................ 4, 5, 30

29 C.F.R. § 1982.104…………………………………………………………..5

29 C.F.R. § 1982.106…………………………………………………………..5

29 C.F.R. § 1982.110…………………………………………………………..5

29 C.F.R. § 1982.112…………………………………………………………..6

29 C.F.R. § 1982.114…………………………………………………………..6

75 Fed. Reg. 3924-01 (Jan. 15, 2010)…………………………………………..5

73 Fed. Reg. 8455 (2008) ......................................................................... 20, 31

## LEGISLATIVE MATERIALS

H.R. Rep. No. 96-1025 (1980) ......................................................................... 26

H.R. Rep. No. 110-259 (2007) ............................................................. 5, 26, 30

126 Cong. Rec. 26532 (1980) ......................................................................... 20

**ADMINISTRATIVE DECISIONS**

NRAB Third Div. Award No. 24348 (April 27, 1983)……………………………….23

NRAB First Div. Award No. 24913 (June 15, 1998)…………………………… 23, 30

NRAB First Division Award, No. 24912 (June 15, 1998)……………………………30

NRAB First Division Award, No. 24910 (June 5, 1998)…………………………… 30

NRAB First Division Award, No. 24909 (June 15, 1998)………………………… 30

NRAB First Division Award, No. 24847 (Sept. 24, 1997)………………………… 30

## INTRODUCTION

When Congress establishes a specific procedure for the adjudication of a particular dispute requiring an administrative agency to decide the matter and only authorizing judicial review of a final administrative decision in an appellate court, district courts do not have jurisdiction over such a dispute.  In the face of this obvious proposition, Plaintiff here challenges an interlocutory administrative ruling.  Recognizing that Congress did not authorize this Court to review such a decision, Plaintiff invokes jurisdiction under the extremely limited doctrine of *Leedom v. Kyne*, 358 U.S. 184 (1958).  Because *Leedom* does not apply and because, in any event, Plaintiff's claim is substantively without merit, the Complaint should be dismissed.

Congress enacted the Federal Railroad Safety Act, 49 U.S.C. § 20101 *et seq.* ("FRSA"), in 1970 to promote safety in railroad operations.  Section 20109(d)(1) of FRSA gives rail employees who allege discrimination or retaliation for reporting safety violations or work-related personal injuries the right to file a complaint with the Secretary of Labor ("Secretary").  In this case, Larry Koger, an employee of Plaintiff Norfolk Southern Railway Company, did just that.  His complaint is pending before the United States Department of Labor ("DOL").  Plaintiff brought this lawsuit seeking an order that would prohibit DOL from continuing to consider that complaint.  Plaintiff erroneously alleges that, under § 20109(f) (which bars an employee from seeking protection under both FRSA and "another provision of law" for the same unlawful act of the employer), Koger is precluded from filing a FRSA complaint because he also initiated an arbitration proceeding stemming from the same operative facts under his union's Collective Bargaining Agreement ("CBA").  In doing so, Plaintiff mistakenly characterizes Koger's pursuit of arbitration under the CBA as seeking protection under the Railway Labor Act ("RLA"), "another provision of law."  As DOL's interloculory ruling explains, an employee who challenges an adverse employment action under a CBA in arbitration is not seeking protection

1

under the RLA even though the RLA provides for the formation of CBAs.  In any case,

Plaintiff's disagreement with DOL's interpretation of FRSA is not a legitimate basis to invoke

*Leedom* jurisdiction because that doctrine does not apply where, as here, the agency has not

violated a "clear and mandatory" statutory prohibition, the agency has articulated a plausible

statutory interpretation, and judicial review is available in the Court of Appeals.  Therefore, the

case should be dismissed.

## BACKGROUND

### A) Statutory History

#### 1) Railway Labor Act

In 1926, Congress enacted the RLA to establish a process for the prompt and orderly

resolution of disputes between rail carriers and their employees without interrupting commerce

or rail carrier operations.  45 U.S.C. § 151a.  The RLA requires the formation of CBAs – which

are, of course, private agreements – concerning rates of pay, rules, and working conditions.  45

U.S.C. § 152 First.[1]  *See Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 310

(1989).  All disputes requiring the application or interpretation of a CBA must first be handled

according to the grievance procedures specified in the CBA.  *Union Pac. R.R. Co. v. Bhd. of*

*Locomotive Eng'rs & Trainmen*, 130 S.Ct. 584, 591 (2009) (citing 45 U.S.C. § 153 First (i)).

Once this grievance process is completed, the employee or the carrier may pursue further

remedies in arbitration before the National Railroad Adjustment Board ("NRAB") or a Public

Law Board established by the railroad carrier and the union.  *See* 45 U.S.C. 153 First (i).[2]

However, claims that are independent of a CBA and that do not require the interpretation or

---

[1] Subsections in this statute are named rather than being numbered.
[2] Congress established the NRAB to resolve labor disputes in the railway industry.  45 U.S.C. § 153 First.  However, railroads and their employees can establish other entities, such as Public Law Boards, to resolve disputes otherwise referable to the NRAB.  45 U.S.C. § 153 Second.

application of a CBA are not preempted by the RLA and may be brought in other forums.  *See,*

*e.g.*, *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 256-59, 266 (1994) (claims under state law

are independent of a CBA and thus not preempted by the RLA); *Atchinson, Topeka & Santa Fe*

*Ry. Co. v. Buell*, 480 U.S. 557, 564-65 (1987) (Federal Employers' Liability Act ("FELA") claim

was not preempted by the RLA because FELA provides substantive protections independent of a

CBA).

### 2) Federal Railroad Safety Act

In 1970, Congress enacted FRSA to promote safety in railroad operations.  49 U.S.C. §

20101.  After FRSA's passage, Congress noted that rail employees "who complained about

safety conditions often suffered harassment, retaliation, and even dismissal."  *Consol. Rail Corp.*

*v. United Transp. Union*, 947 F.Supp. 168, 171 (E.D. Pa. 1996) (citing Federal Railroad Safety

Authorization Act of 1980, Pub. L. No. 96-423, *reprinted in* 1980 U.S.C.C.A.N. 3830, 3832).

To protect these employees, Congress amended FRSA in 1980.  *Id.*  The 1980 amendments

added a section to FRSA explicitly prohibiting railroad carriers from retaliating and

discriminating against employees who, among other things, provided information about

violations of federal railroad safety laws or refused to work under hazardous conditions.  *See*

Federal Railroad Safety Authorization Act of 1980, Pub. L. No. 96-423, § 10, 94 Stat. 1811.

Disputes, grievances, and claims arising under FRSA were made "subject to resolution in

accordance with the procedures set forth in section 3 of the Railway Labor Act (45 U.S.C. 153)."

*Id.* at sec. 10, § 12(c)(1), 94 stat. 1811 (amended 2007).  The amendments also included a

provision stating:

> Whenever an employee of a railroad is afforded protection under this section and under
> any other provision of law in connection with the same allegedly unlawful act of an
> employer, if such employee seeks protection he must elect either to seek relief pursuant
> to this section or pursuant to such other provision of law.

*Id.* at sec. 10, § 12(d), 94 stat. 1811 (amended 2007).  In 1994, FRSA was re-designated from 45 U.S.C. § 411 to 49 U.S.C § 20109, and the language in the election of remedies provision was modified slightly, but this modification was not intended as a substantive change.  *See* Pub. L. No. 103-272, 108 Stat. 867 (1994).  The current election of remedies provision reads:

> ELECTION OF REMEDIES.—An employee may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the railroad carrier.

49 U.S.C. § 20109(f).

In 2007, Congress again amended FRSA to bolster the protections of employees.  First, the amendments expanded the protected acts of employees by, among other things, prohibiting discrimination or retaliation for an employee's notification to "the railroad carrier or the Secretary of Transportation of a work-related personal injury or work-related illness of an employee[.]"  *See* Implementing Recommendations of the 9/11 Commission Act of 2007, Pub. L. No. 110-53, § 1521(a)(4), 121 Stat. 266 (codified at 49 U.S.C. § 20109(a)(4)).  Second, Congress eliminated the requirement of subjecting FRSA complaints to the resolution procedures of the RLA and instead transferred authority to investigate and adjudicate these complaints to the Secretary of Labor.  *Id.* at §1521(c)(1) (codified at 49 U.S.C. § 20109(d)(1)).  Third, Congress specified that nothing in § 20109 of FRSA preempted or diminished other rights of employees and that the rights provided by FRSA could not be waived:

> NO PREEMPTION.—Nothing in this section preempts or diminishes any other safeguards against discrimination, demotion, discharge, suspension, threats, harassment, reprimand, retaliation, or any other manner of discrimination provided by Federal or State law.

> RIGHTS RETAINED BY EMPLOYEE.—Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law or under any collective bargaining agreement. The rights and remedies in this section may not be waived by any agreement, policy, form, or condition of employment.

4

*Id.* at § 1521(f), (g) (currently codified at 49 U.S.C. §§ 20109 (g), (h)).  The 2007 amendments

were an attempt to "enhance[] administrative and civil remedies for employees" and "to ensure

that employees can report their concerns without the fear of possible retaliation or discrimination

from employers."  H.R. REP. NO. 110-259, at 348 (2007) (Conf. Rep.).

      The Secretary has delegated responsibility for handling FRSA complaints to the Assistant

Secretary of Labor for Occupational Safety and Health ("OSHA").  29 C.F.R. § 1982.104 (2010).

The Assistant Secretary must dismiss a complaint if it does not contain a prima facie showing

that any protected activity was a contributing factor in the adverse employment action alleged in

the complaint.  *See* 49 U.S.C. § 20109(d)(2)(A), *incorporating* 49 U.S.C. § 42121(b)(2)(B)(i); 29

C.F.R. at § 1982.104(e)(1) (2010).  Otherwise, the Assistant Secretary is required to conduct an

investigation and to issue findings and determinations.  49 U.S.C. § 20109(d)(2)(A),

*incorporating* 49 U.S.C. § 42121(b)(2)(A); 29 C.F.R. § 1982.105 (2010).  Either the employee or

the railroad carrier may file objections to the findings and determinations and seek a hearing

before a DOL Administrative Law Judge ("ALJ").  49 U.S.C. § 20109(d)(2)(A), *incorporating*

49 U.S.C. § 42121(b)(2)(A); 29 C.F.R. § 1982.106(a) (2010).  The Secretary has delegated

authority to DOL's Administrative Review Board ("ARB") to act on her behalf "in review or on

appeal of …. [d]ecisions and recommendations by ALJs as provided for or pursuant to … [the]

Federal Railroad Safety Act, 49 U.S.C. 20109."  Secretary's Order No. 1-2010, 75 Fed. Reg.

3924-01 ¶5(c)(15) (January 15, 2010).  The ARB also has authority to issue final decisions on

behalf of the Secretary.  *Id.* at ¶ 5.  A party seeking review, including judicial review, of an ALJ

decision must file a petition with the ARB.  29 C.F.R. § 1982.110(a) (2010).

      Final orders of the Secretary are subject to judicial review only in the Courts of Appeals.

49 U.S.C. § 20109(d)(4); 29 C.F.R. § 1982.112(a), (b) (2010).  District courts, however, have

jurisdiction over § 20109 cases in only two limited circumstances.  First, if the Secretary has not

issued a final decision within 210 days of the filing of an administrative complaint and the delay

is not due to the bad faith of the employee, the employee may bring an action in district court for

*de novo* review of the complaint.  49 U.S.C. § 20109(d)(3).  The employee must notify the

Department of Labor 15 days in advance of filing such action.  29 C.F.R. § 1982.114(b) (2010).

Second, the Secretary may bring an action in district court to require compliance with an order

issued pursuant to the procedures in 49 U.S.C. § 42121(b).  49 U.S.C. § 20109(d)(2)(A)(iii).

### B)  Factual and Procedural Background[3]

Plaintiff employed Larry L. Koger as a locomotive conductor.  Compl. ¶ 18.  On July 29,

2007, Koger was involved in the accidental derailment of a locomotive in a rail yard in West

Virginia.  *Id.* ¶ 19.  The following day, Koger notified Plaintiff that he had sustained injuries

during the derailment.  *Id.* ¶ 25.  Plaintiff conducted an investigation of the accident and

determined that Koger was partly responsible for the accident because he failed to alert the

locomotive engineer to a red signal, in violation of Plaintiff's operating rules.  *Id.* ¶¶ 19-20.  As a

result, Plaintiff dismissed Koger from service on August 21, 2007.  *Id.* ¶ 20.

Koger challenged his dismissal by filing a grievance and pursuing arbitration

under his CBA.  *Id.* ¶ 21.  In February 2008, while the arbitration was pending, Koger

filed a complaint under FRSA with the Secretary alleging that Plaintiff terminated him

for reporting a personal work-related injury.  *Id.* ¶ 25.  On July 28, 2008, the arbitration

panel issued a final award determining that Koger's dismissal was unwarranted and

instead imposing an unpaid suspension of service.  *Id.* ¶ 24.

On June 3, 2008, following an investigation, the Regional Administrator for

OSHA, Region III, determined that Plaintiff did not violate FRSA in dismissing Koger.

---

[3] For purposes of this motion to dismiss, Defendant assumes the correctness of the facts alleged in the Complaint.

*Id.* ¶ 26.  Koger appealed this determination to an ALJ.  *Id.* ¶ 27.  The ALJ dismissed

Koger's complaint, ruling that the election of remedies provision in FRSA, § 20109(f),

barred Koger from filing the FRSA complaint because he challenged his dismissal by

pursuing the grievance and arbitration procedures established in the RLA.  *Id.* ¶ 27

(*Koger v. Norfolk Southern Ry.*, Case No. 2008-FRSA-003 (May 29, 2009)).  According

to the ALJ, Koger sought protection under the RLA, which was "another provision of

law" under § 20109(f), for the "same unlawful act," his dismissal.  Compl. Exh. A at 4.

Koger appealed the ALJ's decision to the ARB.  *Id.* ¶ 28.  The ARB consolidated

Koger's appeal with the appeal in another case, *Mercier v. Union Pacific R.R.*, Case No.

2008-FRSA-0004 (June 3, 2009), where a different ALJ had determined that § 20109(f)

did not preclude another employee who had challenged his termination in arbitration

from filing a claim under FRSA because "the contractual agreement or collective

bargaining agreement under which Mercier had proceeded in his grievance/arbitration

action is not a provision of law in itself although it is enforceable through provisions of

law such as the RLA."  Compl. Exh. A at 3.  This conclusion, the ALJ in *Mercier*

observed, was supported by § 20109(g), which provided that nothing in § 20109

"preempts" or "diminishes any other safeguards against discrimination," and by §

20109(h), which made clear that employees retained rights and remedies "under any

Federal or State law or under any collective bargaining agreement" and that the rights and

remedies provided by FRSA "may not be waived."  *Id.*

On September 29, 2011, the ARB, agreeing with the interpretation of the ALJ in

*Mercier*, ruled that § 20109(f) does not preclude an employee who challenges an adverse

employment action in arbitration from filing a complaint under FRSA ("ARB Order").

Compl. Exh. A at 6-9.  The ARB affirmed the ALJ's order in *Mercier*, reversed the dismissal of Koger's FRSA complaint, and remanded both cases for further proceedings consistent with its opinion.  *Id.* at 9.

### C)  Plaintiff's Allegations

Despite the fact that FRSA does not authorize this Court to review the ARB Order, Plaintiff alleges that this Court has jurisdiction to strike it down because it is in "excess of the Secretary's delegated powers and contrary to the specific, clear and mandatory restriction on her authority imposed by 49 U.S.C. § 20109(f)," and because, barring this Court's review of the ARB Order, Plaintiff believes that it will not have "a meaningful and adequate opportunity to obtain relief …."  Compl. ¶¶ 61-62.  According to Plaintiff, § 20109(f) precludes an employee who has challenged his dismissal in arbitration from filing a complaint under FRSA.  *Id.* ¶¶ 36, 47.  Furthermore, Plaintiff asserts that § 20109(f) "is a limit on the Secretary's authority to investigate a complaint filed under 49 U.S.C. § 20109."  *Id.* ¶ 51.  Indeed, Plaintiff claims a right under § 20109(f) to be free "from having to go through the § 20109 investigation and adjudicatory process when an employee has challenged his dismissal or other discipline in arbitration under RLA § 3."  *Id.* ¶ 54.  Accordingly, Plaintiff requests an order (1) vacating and setting aside the ARB Order; (2) declaring that the ARB Order is of no force and effect; (3) directing the Secretary to dismiss Koger's FRSA complaint, and (4) enjoining the Secretary from applying the interpretation of § 20109(f) contained in the ARB Order in other proceedings.  *Id.* at ¶ 63.  The Secretary seeks dismissal of this action on the ground that the Court is precluded from exercising jurisdiction and that Plaintiff does not state a claim upon which relief could be granted.

## LEGAL STANDARD

"Under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction." *Jordan Hospital v. Leavitt*, 571 F. Supp. 2d 108, 113 (D.D.C. 2008) (Bates, J.) (citing *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001)).  Under Fed. R. Civ. P. 12(b)(6), "dismissal of a complaint is appropriate if plaintiff's factual allegations are insufficient to 'raise a right of relief above the speculative level.' " *El Paso Natural Gas Co. v. United States*, 774 F. Supp. 2d 40, 45 (D.D.C. 2011) (Leon, J.) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  When considering a motion to dismiss under Rule 12(b)(1) or 12(b)(6), the Court must accept as true the factual allegations in the complaint and afford plaintiff "the benefit of all favorable inferences that can be drawn from the alleged facts." *Jordan Hosp.*, 571 F. Supp. 2d at 113; *El Paso Natural Gas*, 774 F.Supp.2d at 45.  The Court, however, need not accept inferences if they are not supported by the allegations in the complaint, nor accept legal conclusions cast in the form of factual allegations.  *Id.*; *Jordan Hosp.,* 571 F.Supp.2d at 113 (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  Because the plaintiff bears the burden of establishing subject-matter jurisdiction, plaintiff's factual allegations in a complaint will "bear closer scrutiny" when resolving a motion under Rule 12(b)(1) than under Rule 12(b)(6).  *Id.* (citations omitted); *Oglala Sioux Tribe v. U.S. Army Corp of Eng'rs*, 537 F. Supp. 2d 161, 167 (D.D.C. 2008).  "A court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case." *Jordan Hosp.*, 571 F.Supp.2d at 113 n.1 (citations omitted).

**ARGUMENT**

I.     **THE COURT DOES NOT HAVE JURISDICTION UNDER FRSA TO REVIEW THE ARB ORDER.**

FRSA does not provide for judicial review of the ARB Order in this Court.  Instead, Congress only explicitly authorized judicial review of final orders of the Secretary in the Courts of Appeals.  49 U.S.C. § 20109(d)(4).  When such "a direct-review statute specifically gives the court of appeals subject-matter jurisdiction to directly review agency action[,]" district courts do not have federal question jurisdiction.  *Watts v. Securities and Exchange Comm'n*, 482 F.3d 501, 505 (D.C. Cir. 2007). [4]

Congress' explicit grant of jurisdiction to district courts in specified FRSA actions that do not include Plaintiff's claim further shows this Court's lack of jurisdiction.  First, Congress authorized an employee to request *de novo* review in district court of FRSA complaints when the Secretary has not issued a final order within 210 days.  49 U.S.C. § 20109(d)(3).  Second, Congress authorized the Secretary to bring an action in district court to require compliance with an order issued pursuant to the procedures in 49 U.S.C. § 42121(b).  49 U.S.C. § 20109(d)(2)(A)(iii).  But Congress did not authorize railroad carriers such as Plaintiff to seek review of the Secretary's non-final orders in district court.  Under these circumstances, this Court lacks jurisdiction under FRSA to review the ARB Order.  *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 208 (1994) (district court did not have jurisdiction over an action by mine operators challenging an administrative order because the statute only expressly authorized district court jurisdiction in actions by the Secretary and provided for judicial review in the court of appeals); *Sturm, Ruger & Co. v. Chao*, 300 F.3d 867, 873 (D.C. Cir. 2002) (dismissing action

---

[4] For the same reason, there is no jurisdiction under 28 U.S.C. § 1337, which generally provides district courts with jurisdiction over cases involving the regulation of commerce and antitrust.  *See Molton, Allen & Williams, Inc. v. Harris*, 436 F.Supp. 853, 857 n.3 (D.D.C. 1997) (stating that analysis of jurisdiction under § 1331 applies to § 1337).  Therefore, Plaintiff wrongly asserts that this Court has jurisdiction under that provision.  *See* Compl. ¶ 1.

claiming that Secretary lacked statutory authority to conduct a survey because the action was not

one of those over which district courts had jurisdiction under the statute and statute provided for

judicial review of agency action in the court of appeals); *Griffith v. Fed. Labor Relations Auth.*,

842 F.2d 487, 491 (D.C. Cir. 1988) (district court did not have jurisdiction because, while the

statute explicitly authorized district court review of some types of actions, it did not authorize

review of the particular action at issue and judicial review was available in the court of appeals).

Plaintiff's Complaint is an impermissible attempt to make an end run around the process

that Congress has established for adjudicating FRSA complaints and reviewing orders of the

Secretary.  *See Sturm*, 300 F.3d at 876.  The plaintiff in *Sturm* similarly challenged the authority

of the Secretary to conduct a survey and sought to "end the [administrative] process altogether"

by seeking an injunction terminating "the proceeding currently pending" and "permanently

barring the Secretary from pursuing further enforcement proceedings[.]"  300 F.3d at 876.  *Cf.*

Compl. ¶ 63 (seeking to end administrative adjudication of Koger's FRSA complaint and to limit

the Secretary's authority to enforce FRSA).  This type of claim requires the interpretation of the

parties' rights and duties under a statute and its regulations. *Sturm*, 300 F.3d at 874.  As the

Court of Appeals explained in *Sturm*, the Court's "obligation to respect the review process

established by Congress" prevents it from "short-circuit[ing]" the administrative process by

exercising jurisdiction.  *Id.* at 876 (citing *National Mining Ass'n v. Dep't of Labor*, 292 F.3d 849,

856-57 (D.C. Cir. 2002)).  Indeed, "Congress is free to 'choose the court in which judicial review

of agency decisions may occur.' " *Watts*, 482 F.3d at 505 (citing *Five Flags Pipe Line Co. v.*

*Dep't of Transp.,* 854 F.2d 1438, 1439 (D.C. Cir. 1988) (internal quotation marks and alteration

omitted)).  "[T]his Court simply is not at liberty to displace, or to improve upon, the

jurisdictional choices of Congress." *Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin*,

489 F.3d 1279, 1287 (D.C. Cir. 2007) (citing *Five Flags Pipe Line Co.*, 854 F.2d at 1441).

Because Congress has not authorized this Court to review the ARB Order, the Court should

dismiss the Complaint.

II.     **THE COURT DOES NOT HAVE JURISDICTION UNDER <u>LEEDOM</u> BECAUSE
        THE SECRETARY HAS NOT VIOLATED A "CLEAR AND MANDATORY"
        PROHIBITION IN FRSA, PLAINTIFF HAS NO CLEAR STATUTORY RIGHT
        TO VINDICATE UNDER FRSA, AND PLAINTIFF CAN OBTAIN
        APPROPRIATE RELIEF IN THE COURT OF APPEALS.  IN ADDITION, THIS
        CASE SHOULD BE DISMISSED ON THE MERITS BECAUSE § 20109(f)
        CONFERS NO RIGHT ON PLAINTIFF TO BE FREE FROM INVESTIGATION
        OF RETALIATION CLAIMS UNDER FRSA.**

        Recognizing that this Court does not have jurisdiction under FRSA, Plaintiff invokes

jurisdiction under *Leedom v. Kyne*, 358 U.S.184 (1958).  In *Leedom*, the Supreme Court

established an extremely narrow exception to statutes that impliedly preclude district court

review of administrative action.  *See NYUNT v. Chairman, Broadcasting Bd. of Governors*, 589

F.3d 445, 449 (D.C. Cir. 2009) (citations omitted).  The petitioners in *Leedom* challenged a

decision of the National Labor Relations Board ("NLRB" or "Board") to certify a bargaining unit

without allowing the professional employees of the unit to vote.  358 U.S. at 185.  This decision

directly violated the clear and mandatory provision of the National Labor Relations Act

("NLRA") establishing that "the Board <u>shall not</u> (1) decide that any unit is appropriate for such

purposes if such unit includes both professional employees and employees who are not

professional employees unless a majority of such professional employees vote for inclusion in

such unit."  *Id.* (quoting 29 U.S.C.A. 159(b)(1) (emphasis added)).  The Board did not contest

that it "had acted in excess of its powers and had thereby worked injury to the statutory rights of

the professional employees."  *Id.* at 187.  The NLRA, however, did not expressly authorize any

judicial review of the Board's determination.  *Id.* at 187-188.  *See Bd. of Governors, Fed.*

*Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 42 (1991).  Nevertheless, the Supreme Court held

that the district court had jurisdiction to afford petitioners a remedy because the suit was not one

to review a decision of the Board made within its jurisdiction, but "[r]ather it is one to strike

down an order of the Board made in excess of its delegated powers and contrary to a specific

prohibition in the Act." *Leedom*, 358 U.S. at 188.  The Court reasoned that the provision in the

NLRA requiring a vote among professional employees before certifying a unit for collective

bargaining purposes was "clear and mandatory" and that, in failing to abide by this provision, the

Board "deprived the professional employees of a 'right' assured to them by Congress" and

attempted to exercise "power that had been specifically withheld." *Id.* at 188-89.  In addition,

the Court explained that, but for the jurisdiction of the district courts, professional employees

would not have had other means to protect and enforce the statutory right that Congress

explicitly gave them.  *Id.* at 190.

It is well-settled that the *Leedom* exception is highly limited in scope.  *Boire v.

Greyhound Corp.*, 376 U.S. 473, 481 (1964) (stating that the *Leedom* exception has

"painstakingly delineated procedural boundaries" and is a "narrow one"); *Nat'l Air Traffic

Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1258 (D.C. Cir. 2006)

("*Leedom* provides an extremely limited exception to the nonreviewability of FSIP orders.");

*Ass'n of Civilian Technicians v. Fed. Labor Relations Auth.*, 283 F.3d 339, 344 (D.C. Cir. 2002)

("The invocation of *Leedom* jurisdiction … is extraordinary ….") (citations omitted); *Griffith*,

842 F.2d at 493 ("The *Leedom v. Kyne* exception is intended to be of extremely limited scope.");

*Physicians Nat'l House Staff Ass'n v. Fanning*, 642 F.2d 492, 495 (D.C. Cir. 1981) (the Court in

*Leedom* "clearly delineated the narrow scope of its holding").  Indeed, the *Leedom* exception is

so narrow that the Court of Appeals has described it as "a Hail Mary pass… [that] in court as in

football … rarely succeeds."  *NYUNT*, 589 F.3d at 449.

For *Leedom* jurisdiction to be justified, "a plaintiff must show, *first,* that the agency has acted 'in excess of its delegated powers and contrary to a specific prohibition' which 'is clear and mandatory, and, *second*, that barring review by the district court 'would wholly deprive [the party] of a meaningful and adequate means of vindicating its statutory rights[.]" *Nat'l Air Traffic Controllers Ass'n*, 437 F.3d at 1263 (quoting *Leedom*, 358 U.S. at 188; *MCorp*, 502 U.S. at 43 (emphasis in original)).  These stringent requirements are not met in this case.

**A)**   **The Secretary Has Not Violated A "Clear And Mandatory" Statutory Prohibition.**

For the *Leedom* exception to apply, an agency's decision must be "in excess of its delegated powers" and "contrary to a specific prohibition" in a statute that is "clear and mandatory."  *Fanning*, 642 F.2d at 496 (citations omitted); *Nat'l Air Traffic Controllers Ass'n*, 437 F.3d at 1263.  *See United Food and Commercial Workers, Local 400 v. NLRB*, 694 F.2d 276, 278 (D.C. Cir. 1982) (an agency must have disregarded a specific and unambiguous statutory directive for *Leedom* to apply); *U.S. Dep't of Justice v. Fed. Labor Relations Auth.*, 981 F.2d 1339, 1343 (D.C. Cir. 1993) (same).  This is a "very stringent standard" that "requires that the agency error be 'so extreme that one may view it as jurisdictional or nearly so.' " *NYUNT*, 589 F.3d at 449 (citing *Griffith*, 842 F.2d at 493).

There is no specific, clear, and mandatory statutory prohibition in this case.  In *Leedom*, a statute explicitly prohibited the Board from making the particular decision it took.  358 U.S. at 185 ("[T]he Board <u>shall not</u> (1) decide that any unit is appropriate for such purposes … unless a majority of such professional employees vote for inclusion in such unit." (quoting 29 U.S.C.A. 159(b)(1)) (emphasis added)).  In stark contrast to the *Leedom* statute, § 20109(f) does not even mention the Secretary nor is it a specific and unambiguous statutory directive limiting the

Secretary's authority.  Rather, § 20109(f) is plainly directed at rail employees and, together with §§ 20109 (g) and (h), describes the types of actions available to employees under § 20109.

Had Congress intended § 20109(f) to limit the Secretary's authority in any way, Congress would have explicitly said so in the statute.  Indeed, Congress included provisions explicitly limiting the Secretary's authority in 49 U.S.C. § 42121(b), which establishes the rules and procedures that govern actions under FRSA, *see* § 49 U.S.C. § 20109(d)(2)(A).  Examples abound.  *See*, *e.g.*, 49 U.S.C. § 20109(d)(2)(A), *incorporating* 49 U.S.C. § 42121(b)(2)(B)(i) ("The Secretary of Labor <u>shall</u> dismiss a complaint filed under this subsection and <u>shall not</u> conduct an investigation … unless the complainant makes a prima facie showing that any behavior described in paragraphs (1) through (4) of subsection (a) was a contributing factor in the unfavorable personnel action alleged in the complaint.") (emphasis added); 49 U.S.C. § 42121(b)(1) ("the Secretary of Labor <u>shall</u> notify, in writing, the person named in the complaint ….") (emphasis added).  Similarly, Congress included provisions in § 20109 explicitly limiting the authority of other Executive Branch officials.  *See*, *e.g.*, 49 U.S.C. § 20109 (i)(1) ("[T]he Secretary of Transportation or the Secretary of Homeland Security may not disclose the name of an employee of a railroad carrier who has provided information about an alleged violation of this part …."); 49 U.S.C. § 20109(i)(2) ("The Secretary of Transportation or the Secretary of Homeland Security shall disclose to the Attorney General the name of an employee described in paragraph (1) if the matter is referred to the Attorney General for enforcement.").  But Congress did not explicitly limit the Secretary's authority in § 20109(f).  It is highly unlikely that Congress intended other provisions in FRSA that do not even mention the Secretary, such as 20109(f), to limit the Secretary's authority.  *See Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 250 (1985) (when Congress authorizes a procedure with precise language in a statutory

provision, it is unlikely that it intended to authorize the procedure in other provisions that do not

contain such language); *Montana Power Co. v. Fed. Power Comm'n*, 445 F.2d 739, 746 (D.C.

Cir. 1970) (courts discern legislative intent by starting from areas where the intent is readily

discernible and projecting fair and reasonable corollaries of that intent).  Since there is not even a

remote resemblance between the statutory provision in *Leedom* and § 20109(f), there is simply

no plausible *Leedom* argument in this case.

Since § 20109(f) does not explicitly limit the Secretary's authority, the ARB's allegedly

erroneous interpretation of this provision "differs both in kind and in severity from the

essentially jurisdictional error asserted in [*Leedom v.*] *Kyne*."  *Griffith*, 842 F.2d at 494.  *See*

*Ass'n of Civilian Technicians*, 283 F.3d at 344 (rejecting *Leedom* argument because there was no

"clear violation of an unambiguous statutory provision," but merely a "disagreement with the

agency's ruling.").  As long as an agency provides a plausible interpretation of the relevant

statute, there is no *Leedom* jurisdiction.  The Court of Appeals in *Griffith* rejected the argument

that the Federal Labor Relations Authority's ("FLRA") erroneous construction of the Back Pay

Act justified *Leedom* jurisdiction because, while the FLRA's interpretation of that statute was not

the only possible interpretation, it was "surely a colorable one."  842 F.2d at 494.[5]  Similarly, in

*National Air Traffic Controllers Association*, the Court of Appeals rejected plaintiffs' *Leedom*

argument because both parties had "raised compelling arguments regarding the proper

interpretation of the disputed statutory provisions.  It is precisely because of this that we cannot

conclude that the [agency's] decisions in this case contravened a clear and specific statutory

mandate, as required by *Leedom*."  437 F.3d at 1264.  *See Jordan Hosp.*, 571 F.Supp.2d at 117

---

[5] The Court of Appeals also rejected plaintiff's claim because it would "turn *every* error of law into a basis for review, effectively repealing hundreds of finality provisions."  *Griffith*, 842 F.2d at 494 (emphasis in original). Similarly, the finality provision in FRSA would be implicated if Plaintiff is allowed to challenge the ARB Order in this Court.

(quoting *Nat'l Air Traffic Controllers Ass'n*, 437 F.3d at 1263)); *Borg-Warner Protective Services Corp. v. E.E.O.C.*, 81 F. Supp. 2d 20, 24 (D.D.C. 2000) (*Leedom* jurisdiction is not justified when the dispute is simply over statutory interpretation). *See also Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 234 (4th Cir. 2008) ("If the agency offered a 'plausible' interpretation of the relevant statute, we will find that it did not 'violate a clear statutory mandate,' and *Leedom* jurisdiction will not lie." (citing *Hanauer v. Reich*, 82 F.3d 1304, 1311 (4th Cir. 1996); *Nat'l Air Traffic Controllers Ass'n*, 437 F.3d at 1264)).

The mere possibility that an agency's interpretation of a statute is erroneous is not sufficient to support *Leedom* jurisdiction. *Fanning*, 642 F.2d at 496 n.4. *See Boire*, 376 U.S. at 481 (the *Leedom* exception is "not to be extended to permit plenary district court review of [agency] orders … whenever it can be said that an erroneous assessment … has led [the agency] to a conclusion which does not comport with the law."); *NYUNT*, 589 F.3d at 449; *Ass'n of Civilian Technicians*, 283 F.3d at 344. It must be clear that the agency exceeded its authority. *Fanning*, 642 F.2d at 496 n.4; *NYUNT*, 589 F.3d at 449; *Ass'n of Civilian Technicians*, 283 F.3d at 344. This is highly unlikely to be the case when the alleged error is in the agency's interpretation of a statute other than its organic act. *Griffith*, 842 F.2d at 494.

In light of these stringent requirements, for *Leedom* to apply in this case Plaintiff must demonstrate that § 20109(f), which is not part of the ARB's organic statute, can <u>only</u> be interpreted as "limit[ing] … the Secretary's authority to investigate a complaint filed under" § 20109 when an employee challenges his dismissal in arbitration. *See* Compl. ¶ 51. Plaintiff absolutely cannot make this showing. First, here two ALJs interpreted § 20109(f) differently. Second, after evaluating the ALJs' conflicting opinions and conducting a comprehensive analysis of § 20109(f), other relevant statutory provisions, legislative history, and case law, the ARB

articulated the correct interpretation of the statute.  At a minimum, the ARB's statutory

interpretation is plausible.  Therefore, there is absolutely no basis for Plaintiff to invoke *Leedom*

jurisdiction.

The ARB was faced with two conflicting interpretations of § 20109(f).  In Koger's case,

the ALJ determined that § 20109(f) barred the FRSA complaint because "Koger had pursued a

grievance and arbitration under the RLA, which constituted 'another provision of law.' "  Compl.

Ex. A at 3-4.  However, the ARB noted that the ALJ in *Mercier* reached the opposite conclusion:

> The ALJ observed that 49 U.S.C.A. § 20109(g) state[d] that nothing in the section
> "preempts" or "diminishes any other safeguards against discrimination," and that under
> 49 U.S.C.A. § 20109(h), employees retained rights and remedies "under any Federal or
> State law or under any collective bargaining agreement" and that these rights and
> remedies "may not be waived."  The ALJ noted that "Union Pacific had made no attempt
> to reconcile subsections (g) and (h) with subsection (f), and concluded that subsections
> (g) and (h) do not prevent an individual who has filed a grievance pursuant to a collective
> bargaining agreement from pursuing a FRSA complaint.  The ALJ noted that subsection
> (f) prohibits an employee from seeking protection under "both this section and another
> provision of law" and concluded that the contractual agreement or collective bargaining
> agreement under which Mercier had proceeded in his grievance/arbitration action is not a
> provision of law in itself although it is enforceable through provisions of law such as the
> RLA.

Compl. Ex. A at 3.  The parties in both cases sought interlocutory review of the ALJs' rulings,

and the ARB consolidated the cases.  *Id.* at 2.  After a careful analysis, the ARB concluded that

the ALJ in Koger's case misinterpreted the statute, reversed the dismissal of Koger's complaint,

affirmed the opinion of the ALJ in *Mercier*, and remanded both cases for further proceedings

consistent with its opinion.  *Id.* at 9.

In reaching its conclusion, the ARB noted that the text of § 20109(f) itself "expressly

state[d] that an 'employee may not seek protection under both this section and *another provision*

*of law* for the same allegedly unlawful act …"  *Id.* at 6 (citing 49 U.S.C. § 20109(f)).  According

to the ARB, Koger had not sought protection under "another provision of law" because he

challenged his dismissal under a CBA, which was not a statute but rather a contractual

agreement.  *Id.*  This conclusion was supported by § 20109(h), which distinguishes a CBA from

federal or state laws.  *Id.*   That a CBA is established pursuant to the RLA, the ARB explained,

"is not the same as a right created under a provision of law."  *Id.* (citing *Graf v. Elgin, Joliet, and*

*Eastern Railway Co.*, 697 F.2d 771, 776 (7th Cir. 1983) ("Nor does the fact that an activity is

regulated by a federal statute, as collective bargaining in the railroad industry is regulated by the

Railway Labor Act, mean that disputes between private parties engaged in that activity arise

under the statute.").

Sections 20109(g) and (h) support the ARB's interpretation of § 20109(f).  These

provisions, which establish that nothing in § 20109 preempts or diminishes other rights and

remedies under federal and state laws or a CBA, reflect that Congress "anticipate[d] and

permit[ted] a concurrent whistleblower complaint and arbitration provided for in a collective

bargaining agreement and enforceable under the RLA."  *Id.* at 7.  The ARB explained that this

congressional intent was consistent with case law holding that federal statutory claims, including

claims under § 20109, are not precluded by other claims.  *Id.* (citing *Gonero v. Union Pacific*

*R.R. Co.*, No. Civ. 2:09-2009, 2009 WL 3378981, at *2-6 (E.D. Cal. Oct. 19, 2009) (section

20109(f) does not preclude employee from pursuing multiple claims, including under state law);

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 (1974) ("[A] contractual right to submit a

claim to arbitration is not displaced simply because Congress also has provided a statutory right

against discrimination."); *McDonald v. City of West Branch, Mich.*, 466 U.S. 284, 288-289

(1984) (arbitration does not foreclose separate complaint under 42 U.S.C. § 1983); *Barrentine v.*

*Arkansas-Best Freight Sys, Inc.*, 450 U.S. 728, 737-738 (1981) (arbitration award does not

preclude a subsequent suit based on the same underlying facts alleging violation of Fair Labor

Standards Act)).

Legislative history supported the ARB's conclusion that, in enacting § 20109(f),

Congress did not intend to bar the filing of concurrent whistleblower complaints and claims in

arbitration, but rather to prevent double recovery under FRSA and the Occupational Safety and

Health Act of 1970, 29 U.S.C. § 660(c)(1), which also protects employees from discrimination

for refusing to work under hazardous conditions.  Compl. Ex. A. at 4 (citing 126 Cong. Rec.

26532 (1980) (statement of Rep. Florio).  *See also id.* at 9 ("The election of remedies provision is

intended to prevent, for example, an employee from getting double the backpay, compensatory

damages, and punitive damages the employee is entitled to by seeking protection under both the

Occupational Safety and Health Act of 1970, 29 U.S.C [§] 660(c), and Section 20109." (citing 73

Fed. Reg. 8455 (2008))).  *See Gonero*, 2009 WL 3378987, at *3-*6 (section 20109(f) does not

bar an employee from filing both a FRSA complaint and state common law claims related to

unlawful dismissal from employment, but it rather bars duplicative recovery).  Because FRSA

affords employees relief that may not be available in arbitration, this concern would not be

applicable in a situation such as the present one where an employee is seeking a statutory remedy

and a different remedy under a CBA.  *Id.* at 8.  In addition, the ARB noted that the 2007

Amendments to § 20109 "transferred authority for rail employees' whistleblower claims from

the National Railroad Adjustment Board to the Labor Department's Occupational Safety and

Health Administration and created new rights, remedies, and procedures."  *Id.* at 5.  Thus, the

amendments reflected congressional intent that FRSA complaints be investigated and

adjudicated by the Secretary, not according to the grievance and arbitration procedures in the RLA.[6]

The ample support for the ARB's interpretation of § 20109(f) shows its reasonableness. The ARB's core conclusion was that an employee does not "seek protection" under "another provision of law," the RLA, when contesting an adverse employment action in arbitration. Instead, an employee "seeks protection" under a contract, the CBA, because it is the CBA, not the RLA, which provides the employee the substantive right that he or she can seek to vindicate in arbitration. Indeed, the Supreme Court has explained that while the RLA establishes a process to form CBAs and to resolve disputes regarding the terms in a CBA, the statute does not provide specific substantive rights to employees:

> The Railway Labor Act, like the National Labor Relations Act, does not undertake governmental regulation of wages, hours, or working conditions. Instead, it seeks to provide a means by which agreement may be reached with respect to them. The national interest expressed by those Acts is not primarily in the working conditions as such. So far as the Act itself is concerned these conditions may be as bad as the employees will tolerate or be made as good as they can bargain for. The Act does not fix and does not authorize anyone to fix generally applicable standards for working conditions.

*Terminal R. Ass'n of St. Louis v. Bhd. of R.R. Trainmen*, 318 U.S. 1, 6 (1943).  *See National Labor Relations Bd. v. American Nat'l Ins. Co.*, 343 U.S. 395, 402 (1952) ("The [National Labor Relations] Act does not compel any agreement whatsoever between employees and employers. Nor does the Act regulate the substantive terms governing wages, hours and working conditions which are incorporated in an agreement.") (citing *Terminal R. Ass'n*, 318 U.S. at 6).  *See also Norman v. Mo. Pac. R.R.*, 414 F.2d 73, 82-83 (8th Cir. 1969) (distinguishing the RLA, which establishes a "detailed and elaborate procedure" for the resolution of disputes related to a CBA,

---

[6] In addition, when Congress originally enacted the "election of remedies" provision of FRSA in 1980, it could not have intended to bar employees arbitrating their dismissals to submit claims under FRSA because FRSA complaints were resolved in accordance with the procedures in the RLA, which required arbitration.  *See* Pub. L. No. 96-423, §10, § 12(c)(1), 94 Stat. 1811.  Accordingly, the RLA could not have originally constituted "another provision of law" under the election of remedies provision.

from Title VII, which "prohibits racial and other discrimination in employment").  Accordingly,

arbitrators only decide whether an adverse employment action is justified under a contract, not

whether laws are violated.  *See, e.g., Alexander*, 415 U.S. at 53-54 ("the arbitrator has authority

to resolve only questions of contractual rights"); *Consol. Rail Corp.*, 491 U.S. at 307 (the issue in

arbitration is whether a party has a contractual right to take an action under the terms of a CBA).

Because an employee or an employer engaged in a grievance/arbitration process can only

enforce contractual rights in the context of that process, that party seeks protection under a

contract, not a statute.  *Alexander*, 415 U.S. at 49-50 ("In submitting his grievance to arbitration,

an employee seeks to vindicate his contractual right under a collective-bargaining agreement.  By

contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights

accorded by Congress.").[7]

  The significant differences between contractual CBA claims and statutory FRSA claims

led Congress in 2007 to take FRSA complaints out of arbitration and to entrust the Secretary

with their investigation and adjudication.  First, despite relating to a common factual occurrence,

the inquiry in a FRSA claim is different from that in a CBA claim.  *See id.* at 50 ("The distinctly

separate nature of these contractual and statutory rights is not vitiated merely because both were

violated as a result of the same factual occurrence.").  For example, in this case, the issue in

arbitration was whether Koger broke an operating rule, but the issue in the FRSA proceeding is

whether Plaintiff retaliated against Koger for reporting a work-related personal injury.  *See*

Compl. at ¶¶ 19, 20, 21.  As a matter of logic, it is possible that Plaintiff's dismissal of Koger

---

[7] Plaintiff unsuccessfully attempts to distinguish *Alexander* on the basis that the case dealt with "judge-made election of remedies (and waiver) rules," not a statutory election of remedies provision.  Compl. at ¶ 48.  This distinction does not alter the conclusions of the Supreme Court in *Alexander* that an employee who pursues arbitration only "seeks to vindicate his contractual rights under a collective-bargaining agreement," 415 U.S. at 49, and that arbitrators have "authority to resolve only questions of contractual rights," *id*. at 53-54.  These conclusions support the ARB's ruling that Koger did not seek protection under "another provision of law" in arbitration, but rather sought protection under a contract, because he could only enforce rights in a CBA in the arbitration context.

was motivated in part by retaliation, and thus may have violated FRSA, while also possibly being consistent with the terms of the CBA because Koger may have, in fact, broken a rule. Thus, the distinct nature of the inquiries in arbitration and in a FRSA proceeding justify separate forums. *See Hawaiian Airlines*, 512 U.S. at 266 (distinguishing claims that required interpretation of a CBA from state tort law claims that "require[d] only the purely factual inquiry into any retaliatory motive of the employer."); *Norman*, 414 F.2d at 82 (arbitration pursuant to the RLA was not the proper forum to adjudicate a racial discrimination claim under Title VII); NRAB Third Div. Award No. 24348 (April 27, 1983) (Adjustment Board had no jurisdiction to consider Title VII discrimination claim because it was not related to the interpretation or application of a CBA).[8]

Second, FRSA can provide relief that is unavailable under a CBA. Compl. Ex. A at 8 ("FRSA … [d]amages may include reinstatement, backpay, compensatory damages, and punitive damages not to exceed $250,000 ... These damages are distinct to [sic] his complaint under 49 U.S.C.A. § 20109 that may not be available to him under the collective bargaining agreement.") (citing 49 U.S.C.A. § 20109(e)(2), (3)).  *See* NRAB First Div. Award No. 24913 (June 15, 1998) (rejecting union's claims for punitive damages rooted in state tort law because Adjustment Board had no authority to consider state tort law or to award punitive damages).  In this case, Koger could not, and did not, obtain punitive damages in arbitration, but such damages are available under FRSA.  *See* Compl. ¶ 24 (stating that the final award in arbitration modified the extent of Koger's "discipline by reducing it from a dismissal to a lengthy, unpaid suspension of service."); Compl. Ex. A at 8.

---

[8] This and the other decisions of the National Railroad Adjustment Board cited in this motion can be found on the website of the National Mediation Board at http://www.nmb.gov/arbitration/amenu.html, follow "Arbitration Awards" tab,  and search by decision number.

And third, the grievance/arbitration process may be ill-suited to promoting railroad safety, which is the ultimate purpose of FRSA.  *See Alexander*, 415 U.S. at 50-51 ("There, as here, the relationship between the forums is complementary since consideration of the claim by both forums may promote policies underlying each."); *Kelley v. Norfolk & Southern Ry. Co.*, 80 F. Supp. 2d 587, 591-593 (S.D. West Va. 1999) (while the purpose of FELA is to compensate an employee for the personal injuries that he suffered, the purpose of FRSA is to protect employees who report safety violations).

Given these significant differences, Plaintiff's allegation that allowing employees to pursue both arbitration and a FRSA complaint "creates a certainty that there will be inconsistent and incompatible results," *see* Compl. ¶ 53, is meritless.  *See Alexander*, 415 U.S. at 50 ("And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.").  And this is certainly not an allegation that can support *Leedom* jurisdiction.

Plaintiff also erroneously alleges that the ARB Order is contrary to *Norfolk & Western Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117 (1991).  *See* Compl.¶ 41.  But that case and this one do not deal with the same statutory language and differ in context.  In *Dispatchers*, the Court held that a statute exempting railroad carriers from "the antitrust laws and from *all other law*" when the Interstate Commerce Commission ("ICC") approved a railroad consolidation was "broad enough to include laws that govern the obligations imposed by a contract."  499 U.S. at 129 (emphasis added).  In contrast, in this case, § 20109(f) provides that "an employee may not seek protection under both this section and *another provision of law* for the same allegedly unlawful act of the railroad carrier."  49 U.S.C. § 20109(f) (emphasis added). While the term "all other law" in *Dispatchers* was broad and precluded a distinction "between

positive enactments and common law rules of liability" such as contractual obligations, 499 U.S. at 128, the term "another provision of law" is not broad and requires such a distinction.  The term "another provision of law" encompasses only positive law such as statutes, and not contractual obligations enforceable under common law principles.  Thus, the term "another provision of law" is comparable to "a law or regulation."  The Supreme Court has held that the latter term refers only to positive enactments and not to the common law, relying in significant part on the consideration that "the article 'a' before 'law or regulation' implies a discreteness-which is embodied in statutes and regulations-that is not present in the common law."  *Sprietsma v. Mercury Marine*, 537 U.S. 51, 63 (2002).  So, too, the word "another" as used in FRSA to modify "provision of law" means that the CBA under which Koger challenged his dismissal is not included within the scope of the phrase.

And § 20901(f) would not even bar Koger from seeking relief under FRSA for retaliation related to whistleblowing activities and under the RLA for other unlawful actions of Plaintiff specifically prohibited by the RLA.  The term "another provision of law" in § 20109(f) necessarily derives its meaning from the comparison in the sentence to "this section," and is further limited by the terms "seek protection" and "same allegedly unlawful act."  The sentence suggests that "another provision of law" must refer to statutory provisions like § 20109 protecting whistleblowers, which the RLA does not do.  *See Intercollegiate Broadcast System, Inc. v. Copyright Royalty Bd.* 574 F.3d 748, 771, (D.C. Cir. 2009) (a "fundamental canon of statutory construction [is] that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme[.]" (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809, (1989))); *Meredith v. Fed. Mine Safety and Health Review Comm'n*, 177 F.3d

1042, 1054 (D.C. Cir. 1999) (statute is read as a whole "since the meaning of statutory language, plain or not, depends on context." (quoting *Conroy v. Aniskoff*, 507 U.S. 511, 515 (1993))).

Even assuming that the statutory language at issue here and in *Dispatchers* is comparable, the context of these cases is not.  The Court in *Dispatchers* interpreted the terms "all other law" in light of the national policy promoting railroad carrier consolidation following World War I. 499 U.S. at 119.  The Court stated that its interpretation was necessary given the statutory scheme requiring that "any obstacle imposed by law" give way to a railroad carrier consolidation when the ICC determined that it was in the public interest.  *Id.* at 133.  Indeed, the Supreme Court subsequently recognized in *Am. Airlines v. Wolens*, 513 U.S. 219 (1955), that the interpretation of "all other law" in *Dispatchers* was limited to the context of the specific national policy promoting railroad carrier consolidation, *see id.* at 229 n.6, and that it did not apply to the interpretation of similar terms in an action to enforce a contract because a contract contains no "state-imposed obligations" but rather "self-imposed undertakings," *id.* at 228-29.  In this case, unlike in *Dispatchers*, there is no statutory policy promoting railroad carrier consolidation that can inform the interpretation of § 20109(f).  Instead, the national policy that informs the interpretation of § 20109(f) is that articulated by Congress in enacting FRSA and amending it in 2007: to provide "essential protection for the rights of railroad employees," H.R. Rep. No. 96-1025 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3830, 3832, 1980 WL 13014, at *8, and to "enhance[] administrative and civil remedies for employees …. [and] ensure that employees can report their concerns without the fear of possible retaliation or discrimination from employers," H.R. REP. NO. 110-259, at 348 (2007) (Conf. Rep.).  Interpreting § 20109(f) in light of this policy and the statute as a whole, as the Court in *Dispatchers* did with the relevant statute there, supports the ARB's interpretation, not that of Plaintiff.  *Cf. Wolens*, 513 U.S. at 229 n.6 ("[O]ur

reading of the statutory formulation accords with that of the superintending agency, here, the

DOT, and is necessary to make sense of the statute as a whole.").  Thus, the ARB's decision is

consistent with, not contrary to, *Dispatchers*.

Plaintiff further contends that the ARB's statutory interpretation is wrong because §

20109(f) "does not require that the protection sought be for a 'right created under a provision of

law," but rather "under another provision of law."  Compl. at ¶ 43.  This is a distinction without a

difference.  An employee cannot "seek protection" under a law if the law does not give the

employee any right to vindicate.  An employee might possibly be considered to "seek protection"

under the RLA if a railroad refused to subject to arbitration and the employee sought to compel

arbitration on the basis that the RLA requires arbitration.  This is not, however, what Koger

seeks in this case.  *Cf. Norman*, 414 F.2d at 83 ("The plaintiffs here are not attempting to require

that the parties bargain in good faith to implement the statutory policy embodied in the Railway

Labor Act but are seeking immediate determination of practices made unlawful by Title VII.").

In any event, Plaintiff's disagreement with the ARB's interpretation of § 20109(f) "falls

well short of the requirements for *Leedom* jurisdiction."  *Ass'n of Civilian Technicians*, 283 F.3d

at 344.  *See Borg-Warner Protective Services Corp.*, 81 F. Supp. 2d at 24.  Even assuming that

Plaintiff's interpretation of § 20109(f) is not totally without merit, the ARB, at most, has erred in

interpreting a statute that it has the authority to interpret.  Because the ARB's interpretation of §

20109(f) is reasonable or, at a minimum, colorable, the ARB's allegedly erroneous decision

based on that interpretation "—if error it be—is plainly not judicially correctable under *Leedom

v. Kyne*."  *Griffith*, 842 F.2d. at 493-94.

As explained above, § 20109(f) clearly does not preclude the Secretary from

investigating a FRSA complaint filed by an employee who has pursued arbitration to challenge

an adverse employment action.  Assuming, however, that the Court finds an ambiguity in the statute, Plaintiff has failed to establish the "clear and mandatory" element to support *Leedom* jurisdiction and the case should be dismissed.  Pursuant to FRSA's review structure, only the Court of Appeals can review the Secretary's interpretation of FRSA.  And this interpretation would have to be upheld not only because it is correct, but also because it would be entitled to deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).  *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325, 1335 (2011) (deferring to DOL's and the Equal Employment Opportunity Commission's interpretation of a statute given "Congress' delegation of enforcement powers to [these] federal agencies"); *BP West Coast Products, LLC v. Fed. Energy Regulatory Comm'n.*, 374 F.3d 1263, 1272 (D.C. Cir. 2004) ("When Congress authorizes an agency to adjudicate complaints arising under a statute, the agency's interpretations of that statute announced in the adjudications are generally entitled to *Chevron* deference.") (citing *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001)); *Welch v. Chao*,  536 F.3d 269, 276 n.2 (4th Cir. 2008) (granting *Chevron* deference to ARB's interpretations through adjudication of the Sarbanes-Oxley Act's whistleblower protection provision); *Mississippi Power & Light Co. v. Mississippi*, 487 U.S. 354, 381 (1981) (Scalia, J. concurring) ("it is settled law that the rule of deference applies even to an agency's interpretation of its own statutory authority or jurisdiction.") (citing *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 844-45 (1986); *NLRB v. City Disposal Systems, Inc.*, 465 U.S. 822, 830 (1984)).  Plaintiff should not be able to evade deferential *Chevron* review by invoking *Leedom* in this Court.

**B)**     **Section 20109(f) Confers No Right Upon Plaintiff And, In The Alternative, Plaintiff Can Seek Relief In The Court Of Appeals.**

Assuming that the ARB has acted "in excess of its delegated powers" and "contrary to a specific prohibition" which "is clear and mandatory," *Leedom* would still not apply unless Plaintiff can show that "barring review by the district court 'would wholly deprive [it] of a meaningful and adequate means of vindicating its statutory rights.' " *Nat'l Air Traffic Controllers Ass'n*, 437 F.3d at 1263 (quoting *MCorp Fin, Inc.*, 502 U.S. at 43).  Just as a statutory prohibition must be clear for *Leedom* jusrisdiction to lie, the alleged statutory right that a plaintiff claims to have been violated must also be clear.  *See Public Citizen v. Office of the U.S. Trade Representatives*, 970 F.2d 916, 922 (D.C. Cir. 1992) (declining to exercise *Leedom* jurisdiction because "plaintiff did not even suggest that there is any outright violation of a clear right.").  Here, the supposed right that the statute gives to Plaintiff, as opposed to Plaintiff's employee, is not even unclear; it is nonexistent.

Unlike the statutory provision in *Leedom*, which unambiguously granted professional employees the right to "vote for inclusion in such unit," § 20109(f) does not even mention railroad carriers, let alone explicitly give them any right.  This is not surprising because § 20109 was not enacted for the benefit of railroad carriers, but rather to protect rail employees from discrimination and retaliation by railroad carriers.  *See Kelley*, 80 F. Supp.2d at 591; *Consol. Rail Corp.,* 947 F. Supp. at 170 (citing Federal Railroad Safety Authorization Act of 1980, Pub. L. No. 96-423, *reprinted in* 1980 U.S.C.C.A.N. 3830, 3832)).  This is why the title of § 20109 is "Employee Protections" and why it contains explicit prohibitions directed at railroad carriers. *See* 49 U.S.C. §§ 20109(a), (b), and (c).  For this reason, reading § 20109(f) as conferring a right on Plaintiff would be inconsistent with the overall legislative intent of § 20109.

The right that Plaintiff claims it has under § 20109(f) – the right to be free from the Secretary's investigation and adjudication of a FRSA complaint when the employee has challenged his dismissal in arbitration, *see* Compl. ¶ 54 –  would thwart the administrative process that Congress established to promote railroad safety and to protect rail employees.  In 2007, Congress took FRSA complaints out of arbitration and entrusted the Secretary with the investigation and adjudication of these complaints to enhance the protections of rail employees. *See* Pub. L. No. 110-53, § 1521(a)(4), 121 Stat. 266 (2007); H.R. Rep. No. 110-259, at 348 (2007) (Conf. Rep.).  Accepting Plaintiff's claim would reverse that mandate and leave employees who contest an adverse employment action in arbitration without a forum in which to file FRSA complaints, eviscerating their federal statutory rights.  *See Buell*, 480 U.S. at 564-65 (availability of arbitration does not preclude employees from vindicating federal statutory rights in federal court because these rights are designed to provide minimum substantive guarantees to employees) (citing *Barrentine*, 450 U.S. at 737)).  Employees would not be able to pursue their FRSA claims in arbitration because, under the RLA, the Adjustment Board's jurisdiction is limited to interpreting and applying CBAs, and retaliation claims do not require the application or interpretation of a CBA.  *See, e.g. Hawaiian Airlines*, 512 U.S. at 257-59, 266; *Norman*, 414 F.2d at 82 (the RLA is not set up to remedy racial discrimination and thus does not preempt Title VII claims in federal court).  *See also* NRAB First Division Award, Nos. 24913 (1998), 24912 (1998), 24910 (1998), 24909 (1998), 24847 (1997).[9]  Because Congress established an independent administrative system to investigate and adjudicate FRSA complaints in order to enhance the rights of employees, § 20109(f) should not be read as providing railroad carriers a

---

[9] In these cases, the union sought punitive damages for what the union argued was retaliatory discipline against employees for filing FELA lawsuits.  The Adjustment Board stated that the employees' claims for punitive damages were essentially claims for retaliatory discharge under state tort law, and the Adjustment Board had no authority to consider state tort law or to award punitive damages.

right to evade this system.[10]  *Cf. Norman*, 414 F.2d at 83 ("[W]e do not think that Congress

intended to render the railroads immune from the efforts of their employees to pursue their

statutory rights under Title VII.  The railroads should not be allowed to escape the provisions of

§ 703 calling for the elimination of discriminatory employment practices by relying upon the

provisions of the Railway Labor Act ….").  Accordingly, § 20109(f) cannot serve as a basis for

Plaintiff to invoke the *Leedom* exception.

Even assuming that railroad carriers such as Plaintiff have a clear statutory right under §

20109(f), the fact that Plaintiff can seek judicial review in the Court of Appeals means that it is

not "wholly deprived" of an opportunity to vindicate its alleged statutory right.  *Nat'l Air Traffic

Controllers Ass'n*, 437 F.3d at 1263 (citing *MCorp Fin, Inc.*, 502 U.S. at 43).  "If and when the

[ARB] finds that [Plaintiff] has violated [FRSA, Plaintiff] will have, in the Court of Appeals, an

unquestioned right to review both the [ruling] and its application."  *MCorp Fin.*, 502 U.S. at 44.

*See Sturm*, 300 F.3d at 875 (plaintiff was not deprived of an opportunity to obtain relief because

he could follow the review procedure that ultimately ends up in a court of appeals) (citing

*Thunder Basin Coal Co.*, 510 U.S. at 216).  *See also Detroit Newspaper Agency v. Nat'l Labor

Relations Bd.*, 286 F.3d 391, 399-400 (6th Cir. 2002) (finding no *Leedom* jurisdiction because

plaintiffs had an unquestionable statutory right to judicial review of the agency's interpretation

and application of a statutory provision in the court of appeals after the issuance of a final order).

Because once the ARB Order is final Plaintiff can raise in the Court of Appeals "all claims of

errors related to the administrative proceeding" if Plaintiff has any errors that it wants to raise at

---

[10] The Federal Railway Administration has interpreted § 20109(f) as protecting "an employer from having to pay the same types of damages to an employee multiple times just because there are multiple statutory provisions upon which an employee could file a complaint or suit."  Compl. Ex. A at 9 (quoting 73 Fed. Reg. 8455 (2008)). Protecting an employer from having to pay duplicative damages, however, is different from the protection Plaintiff seeks here – protection "from having to go through the § 20109 investigation and adjudicatory process" when an employee challenges an adverse employment decision in arbitration.  Compl. at ¶ 54.  In this case, when the FRSA complaint is fully adjudicated, Plaintiff will be able to argue that § 20109(f) protects it from duplicative recovery if Koger prevails and seeks such duplicative relief.

that point, there is no *Leedom* jurisdiction in this case.  *Jordan Hosp.*, 571 F.Supp. at 117 (citing

*Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981)).

Plaintiff alleges that it may never have an opportunity to obtain court of appeals review

of the ARB order because it "may prevail on the merits … Koger may not appeal; or … Koger

may simply drop his complaint."  Compl. ¶ 57.  In addition, Plaintiff argues that it may not

obtain review of the ARB Order if Koger brings a *de novo* civil action in district court under §

20109(d)(3).  *Id.* ¶ 58.  Plaintiff further alleges that the ARB Order is preventing the proper

dismissal of many § 20109 complaints currently at various stages in the investigatory and

adjudicatory process.  *Id.* ¶ 50.  According to Plaintiff, the Court must step in to set aside the

ARB Order because otherwise Plaintiff "potentially could be faced with orders that

burdensomely and unlawfully seek to force it to provide interim relief to employees …."  *Id.* ¶

52.

None of these speculative injuries and concerns justifies the extraordinary measure of

exercising *Leedom* jurisdiction.  Plaintiff's contention that it should be allowed to sue now

because it could eventually win simply makes no sense.  If Plaintiff ultimately prevails, it would

have no legitimate reason to have sued.  *See Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 -

1362 (D.C. Cir. 2012) (federal courts lack jurisdiction if plaintiff's injuries are speculative

because there would be no "case or controversy" as constitutionally required).  Plaintiff's

potential victory on the merits in the FRSA adjudication does not preclude it from arguing that it

is still "adversely affected or aggrieved" by the ARB Order and seeking review in the Court of

Appeals, if it really is so affected or aggrieved.  49 U.S.C. § 20109(d)(4) ("Any person adversely

affected or aggrieved by an order ... may obtain review of the order in the United States court of

appeals … not later than 60 days after the date of the issuance of the final order ….").  The Court

of Appeals may decline to grant Plaintiff relief for a number of reasons – including the fact that a

decision by the ARB to construe a statute in a particular fashion would not provide Plaintiff with

a justiciable grievance once Plaintiff prevails on the merits – but the possibility that the Court of

Appeals might someday properly dismiss a claim by Plaintiff on jurisdictional grounds does not

justify this Court improperly exercising *Leedom* jurisdiction.  *See Sturm*, 300 F.3d at 875 n. 7.

Furthermore, the assertion that following the prescribed administrative process is burdensome

cannot be a basis to preclude an agency from fully adjudicating a complaint in the first instance.

*See Detroit Newspaper Agency*, 286 F.3d at 400-01 (citing *Myers v. Bethlehem Shipbuilding

Corp.*, 303 U.S. 41, 43 (1938)).  And the proposition that the ARB Order allows other railroad

employees to file FRSA complaints against other employers, *see* Compl. ¶ 50, does not give

Plaintiff standing to maintain this case.  *See Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004)

(party many not ordinarily base standing on assertions of the rights of third parties).

        Even if a dismissal of this case were to deprive Plaintiff of a remedy, the Court would

still have no jurisdiction.  The unavailability of a remedy alone does not trigger the *Leedom*

exception.  *Fanning*, 642 F.2d at 499 (citing *Cihacek v. NLRB*, 464 F. Supp. 940, 944 (D. Neb.

1979)).  Here, "[t]he fact remains that [Plaintiff has] an opportunity to raise [its] arguments in the

court of appeals under § [20109(d)(4)], and because of this fact, *Leedom* does not confer

jurisdiction on the district court."  *Detroit Newspaper Agency*, 286 F.3d at 401 (emphasis added).

And if Koger brings a *de novo* action in district court, Plaintiff will have an opportunity to argue

there that the suit is precluded by § 20109(f).  Under these circumstances, exercising *Leedom*

jurisdiction would be an impermissible extension of this extremely limited doctrine.

## CONCLUSION

For the foregoing reasons, the Court lacks jurisdiction over this matter and should dismiss Plaintiff's Complaint under Rule 12(b)(1).  For essentially the same reasons, Plaintiff has failed to state a claim upon which relief may be granted.  Consequently, and alternatively, the case should be dismissed under Rule 12(b)(6).

Dated: April 30, 2012                         Respectfully submitted,

                                              STUART F. DELERY
                                              Acting Assistant Attorney General

                                              JUDRY L. SUBAR
                                              Assistant Branch Director

                                              */s/ Héctor G. Bladuell*
                                              HECTOR G. BLADUELL
                                              Trial Attorney (D.C. Bar No. 503277)
                                              United States Department of Justice
                                              Civil Division, Federal Programs Branch
                                              20 Massachusetts Avenue NW
                                              Washington, D.C. 20530
                                              Tel: (202) 514-4470
                                              Fax:  (202) 616-8470

                                              *Counsel for Defendant*