**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____ )
NORFOLK SOUTHERN RAILWAY )
COMPANY, )
 )
 *Plaintiff,* )
 )
 v. )   **Civil Action No. 1:12-cv-00306-RWR**
 )
HILDA L. SOLIS, Secretary of Labor, )
 )
 *Defendant.* )
_____ )

<u>**MEMORANDUM OF PLAINTIFF NORFOLK SOUTHERN RAILWAY COMPANY**</u>
<u>**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**</u>

Jeffrey S. Berlin
(D.C. Bar No. 200048)
Mark E. Martin
(D.C. Bar No. 373445)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8178
Fax: (202) 736-8711

Thomas A. Shumaker
General Solicitor
Norfolk Southern Corporation
3 Commercial Place
Norfolk, VA 23510
(757) 629-2728

*Attorneys for Plaintiff Norfolk Southern*
*Railway Company*

## TABLE OF CONTENTS

                                                                                                                              **Page**

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION AND SUMMARY ................................................................................... 1

STATEMENT OF THE CASE ............................................................................................. 6

      A.     Statutory Provisions and History ............................................................................ 6

             1.     The Railway Labor Act ................................................................................ 6

             2.     The Federal Railroad Safety Act ................................................................. 8

      B.     The Administrative Review Board's Decision Declaring §20109(f)
            Inapplicable To An Employee's Pursuit Of Statutory Arbitration
            Under The Railway Labor Act ............................................................................ 12

ARGUMENT:

THE COURT HAS JURISDICTION OVER THIS CIVIL ACTION UNDER
     *LEEDOM v. KYNE* ................................................................................................ 15

I.     Under *Leedom v. Kyne*, A District Court Has Jurisdiction To Review Agency
     Action That Is In Excess Of The Agency's Delegated Powers And Contrary To
     A Specific Statutory Prohibition That Is Clear And Mandatory, When There Is
     No Other Meaningful And Adequate Means For The Plaintiff To Vindicate Its
     Statutory Rights. ................................................................................................... 15

II.    The Administrative Review Board's Interpretation Of 49 U.S.C. §20109(f) Is
     Contrary To The Clear And Mandatory Terms Of The Statute And Is Wrong As
     A Matter Of Law .................................................................................................. 21

III.   NSR Will Not Have A "Meaningful And Adequate Means" Of Obtaining Relief
     From The ARB's Misinterpretation Of 49 U.S.C. §20109(f) Unless NSR Can
     Challenge The September 29, 2011 Decision In This Civil Action. ................... 38

CONCLUSION .................................................................................................................. 42

# TABLE OF AUTHORITIES

**Page**

<u>CASES</u>

*Alexander v. Gardner-Denver Co.*,
    415 U.S. 36 (1974)..................................................................................26, 33

*American Airlines, Inc. v. Wolens*,
    513 U.S. 219 (1995)..........................................................................................28

*American Casualty Co. of Reading Pennsylvania v. Nordic Leasing, Inc.*,
    42 F.3d 725 (2d Cir. 1994)..............................................................................11

*Andrews v. Louisville & Nashville R.R.*,
    406 U.S. 320 (1972)......................................................................................... 7

*Baker v. McCollan*,
    443 U.S. 137 (1979)..........................................................................................25

*Ball, Ball & Brosamer, Inc. v. Reich*,
    24 F.3d 1447 (D.C. Cir. 1994) .......................................................................37

*Board of Governors of Federal Reserve v. MCorp Financial, Inc.*,
    502 U.S. 32 (1991)....................................................................................15, 38

*Bonfiglio v. New York Presbyterian Hospital*,
    2011 U.S. Dist. LEXIS 63794 (S.D.N.Y. June 16, 2011)................................21, 30

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994)..........................................................................................36

*Chelette v. Harris*,
    229 F.3d 684 (8th Cir. 2000) ..........................................................................11

*Chevron U.S.A. Inc. v. NRDC, Inc.*,
    467 U.S. 837 (1984)..................................................................................... 37-38

*Costello v. United States Railroad Retirement Board*,
    780 F.2d 1352 (8th Cir. 1985) ........................................................................12

*Cuatle v. Torres*,
    2011 U.S.Dist. LEXIS 75335 (S.D. Ind. July 12, 2011)........................................26

*Employees Protective Ass'n v. Norfolk & Western Ry.*,
    511 F.2d 1040 (4th Cir. 1975) .........................................................................7

## TABLE OF AUTHORITIES (Cont'd)

**Page**

CASES (Cont'd)

*Engine Manufacturer's Association v. EPA*,
    88 F.3d 1075 (D.C. Cir. 1996) ............................................................37

*Friends of the Earth, Inc. v. EPA*,
    446 F.3d 140 (D.C. Cir. 2006) ............................................................37

*FTC v. Miller*,
    549 F.2d 452 (7th Cir. 1977) ..............................................................40

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ..............................................................................33

*Gonero v. Union Pacific R.R.*,
    2009 WL 3378987 (E.D. Cal. October 19, 2009) .........................29, 36

\* *Gracey v. International Brotherhood of Electrical Workers*,
    868 F.2d 671 (4th Cir. 1989) ......................................................... 18-19

*Graf v. Elgin, Joliet & Eastern Ry*,
    697 F.2d 771 (7th Cir. 1983) ..............................................................27

*Guerro v. Cuomo*,
    176 F.3d 547 (D.C. Cir. 1999) ...........................................................30

*Henriquez v. Starwood Hotels Resorts Worldwide, Inc.*,
    2011 U.S. Dist. LEXIS 111520 (S.D.N.Y. September 29, 2011) ...........37

*Hunt v. Smith*,
    67 F. Supp.2d 675 (E.D. Texas 1999) ................................................25

*Jeffers v. Chao*,
    2006 U.S. Dist. LEXIS 661 (D.D.C. January 3, 2006) .......................21

\* *Leedom v. Kyne*,
    358 U.S. 184 (1958) ..................................................................... passim

*Maine v. Thiboutot*,
    448 U.S. 1 (1980) ................................................................................24

*Moodie v. Federal Reserve Bank of New York*,
    58 F.3d 879 (2d Cir. 1995) .................................................................21

## TABLE OF AUTHORITIES (Cont'd)

**Page**

CASES (Cont'd)

*National Air Traffic Controllers Ass'n v. Federal Service Impasse Panel*,
    437 F.3d 1256 (D.C. Cir. 2006) ..................................................................3, 15

\* *Norfolk & Western Ry. v. American Train Dispatchers Ass'n*,
    499 U.S. 117 (1991) ......................................................................... 26, 27, 28

*Pinter v. Dahl*,
    486 U.S. 622 (1988) ...................................................................................36

\* *Railway Labor Executives Ass'n v. National Mediation Board*,
    29 F.3d 655 (D.C. Cir.) (en banc), *amended*,
    38 F.3d 1224 (D.C. Cir. 1994) ...................................................... 17, 19, 20, 38

*Rayner v. Smirl*,
    873 F.2d 60 (4th Cir. 1989) ........................................................................35

*Roddy v. McBride*,
    1995 U.S. App. LEXIS 15764 (7th Cir. April 26, 1995) ..........................................25

*Roswell v. Wood*,
    357 F. Supp.2d 123 (D.D.C. 2004) ...............................................................30

*Samuels v. District of Columbia*,
    770 F.2d 184 (D.C. Cir. 1985) .....................................................................25

\* *Sereda v. Burlington Northern Santa Fe R.R.*,
    2005 U.S. District LEXIS 5598 (S.D. Iowa March 17, 2005) ............................ 23, 29-30, 35

*Shamrock Farms Co. v. Veneman*,
    146 F.3d 1177 (9th Cir. 1998) .....................................................................28

*Sprietsma v. Mercury Marine*,
    537 U.S. 51 (2002) ....................................................................................28

*Transportation-Communication Employees Union v. Union Pacific R.R.*,
    385 U.S. 157 (1966) ..................................................................................28

*Union Pacific R.R. v. Sheehan*,
    439 U.S. 89 (1978) .................................................................................7, 32

*United States v. Kubrick*,
    44 U.S. 111 (1979) ...................................................................................41

**TABLE OF AUTHORITIES (Cont'd)**

**Page**

<u>CASES (Cont'd)</u>

*United Transportation Union v. Indiana Harbor Belt R.R.*,
540 F.2d 861 (7th Cir. 1976) ...................................................................7

*Village of Barrington, Illinois v. STB*,
636 F.3d 650 (D.C. Cir. 2011) ...............................................................38

*Wilson v. Thompson*,
638 F.2d 799 (5th Cir. 1981) ..................................................................25


<u>STATUTES</u>

Federal Railroad Safety Act, 49 U.S.C. §20101 *et seq.* (amended as of 2008):

    49 U.S.C. §20109................................................................... passim

    49 U.S.C. §20109(a)(4).........................................................................8

    49 U.S.C. §20109(d)............................................................................8

    49 U.S.C. §20109(d)(2)(A)..................................................................9

    49 U.S.C. §20109(d)(2)(A)(ii)............................................................41

\*   49 U.S.C. §20109(d)(3) .........................................................5, 9, 38, 39

    49 U.S.C. §20109(d)(4) .........................................................3, 9, 15, 39

    49 U.S.C. §20109(e) ............................................................................8

    49 U.S.C. §20109(e)(3).......................................................................42

\*   49 U.S.C. §20109(f).............................................................. passim

    49 U.S.C. §20109(g) .............................................................30, 34, 35, 36

    49 U.S.C. §20109(h) .............................................................30, 34, 35, 36

- v -

### TABLE OF AUTHORITIES (Cont'd)

**Page**

**STATUTES (Cont'd)**

Federal Railroad Safety Act (former):

    45 U.S.C. §441(d)...........................................................................................10

    49 U.S.C. §20109(d) ...............................................................................11, 29

    49 U.S.C. §20109(e) .......................................................................................30

Implementing Recommendations of the 9/11 Commission Act of 2007,
    Pub. L. No. 110-53, 1221 Stat. 266, 444 (2007)........................................8

Interstate Commerce Act, 49 U.S.C. §11341(a) (former)........................ 26-27

Rail Safety Improvement Act of 2008, Pub. L. No. 110-432,
    122 Stat. 4848 (2008).................................................................................11

Railway Labor Act, 45 U.S.C. §151 *et seq*.:

    45 U.S.C. §152 Ninth...............................................................17, 18, 20, 21

    45 U.S.C. §153 First (i)..................................................................6, 7, 12

    45 U.S.C. §153 First (m)..................................................................7, 32

    45 U.S.C. §153 First (q)..........................................................................7

    45 U.S.C. §153 Second.....................................................................7, 12

    45 U.S.C. §153 Second (second paragraph) ............................7, 13, 32

Title VII of the Civil Rights Act of 1964,
    29 U.S.C. §2000e *et seq*............................................................................32

Pub. L. No. 91-458, 84 Stat. 971 (1970).........................................................8

Pub. L. No. 96-423, 94 Stat. 1815 (1980)............................................8, 10, 11

Pub. L. No. 103-272, 108 Stat. 745, 867-68 (1994) .....................................11

28 U.S.C. §1441(a) .......................................................................................27

41 U.S.C. §353(c) ....................................................................................18, 19

**TABLE OF AUTHORITIES (Cont'd)**

**Page**

**STATUTES (Cont'd)**

42 U.S.C. §1983 .................................................................................................. 25, 26

49 U.S.C. §42121(b)(2) ...........................................................................................9


**LEGISLATIVE MATERIALS**

S. Rep. No. 103-265, 103d Cong. 2d Sess. 5 (1994) ...................................................11

126 Cong. Rec. 26532 (Sept. 22, 1980) .............................................. 11, 20-21, 31-32


**REGULATIONS**

29 C.F.R. §1982.105 ................................................................................................9

29 C.F.R. §1982.106 ................................................................................................9

29 C.F.R. §1982.110(b) ............................................................................................9

29 C.F.R. §1982.112 ................................................................................................9


**RULES**

Rule 12(b)(1), Fed. R. Civ. P. ....................................................................................15

Rule 12(b)(6), Fed. R. Civ. P. ....................................................................................15


**ADMINISTRATIVE MATERIALS**

Secretary's Order No. 1-2010, 75 Fed. Reg. 3924 (January 15, 2010) .........................9

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
**NORFOLK SOUTHERN RAILWAY**          )
**COMPANY,**                                       )
                                                    )
                *Plaintiff,*                      )
                                                    )
       **v.**                                     )    **Civil Action No. 1:12-cv-00306-RWR**
                                                    )
**HILDA L. SOLIS, Secretary of Labor,**     )
                                                    )
               *Defendant.*                    )
_____ )

## MEMORANDUM OF PLAINTIFF NORFOLK SOUTHERN RAILWAY COMPANY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION AND SUMMARY

In this civil action, Norfolk Southern Railway Company ("NSR") seeks direct review of a September 29, 2011 decision of the United States Department of Labor's Administrative Review Board ("ARB"), delegate of defendant Secretary of Labor (the "Secretary"). This Court has jurisdiction to grant the relief requested under the doctrine of *Leedom v. Kyne*, 358 U.S. 184 (1958) ("*Leedom*"), because the ARB decision is in excess of the Secretary's own delegated powers and contrary to a specific statutory prohibition that is clear and mandatory, and NSR has no other meaningful and adequate means of vindicating its statutory rights.

The Secretary's motion to dismiss challenges NSR's claim to *Leedom* jurisdiction. The motion is ill-founded and should be denied.

This case arises from NSR's August 21, 2007 dismissal of an employee, Larry L. Koger, Jr. ("Koger"), who, while working as a freight train conductor, allowed his engineer to

operate their locomotive through a stop signal in an NSR rail yard.  Koger challenged his dismissal in statutory arbitration under section 3 of the Railway Labor Act ("RLA"), 45 U.S.C. §153.  The RLA arbitration board upheld NSR's assessment of discipline, but modified the dismissal to a lengthy, unpaid suspension from service.

Koger also filed a complaint with the Department of Labor ("DOL") under the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. §20109, alleging that NSR dismissed him in retaliation for having reported a work-related injury.  FRSA, *inter alia,* makes it unlawful for a railroad to retaliate against an employee for engaging in certain kinds of conduct -- for example, reporting a work-related injury -- and establishes a complaint procedure through which employee claims of retaliation are to be investigated and resolved by the Secretary.  The Secretary's authority is, however, limited by FRSA's "Election of Remedies" provision, 49 U.S.C. §20109(f), which provides:  "An employee may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the railroad carrier."

A DOL administrative law judge dismissed Koger's complaint on the ground that it was barred by §20109(f), because Koger had elected to challenge his dismissal in RLA §3 arbitration.

Koger appealed to the ARB, which consolidated his case with an appeal from an administrative law judge's decision in another FRSA complaint case involving a different railroad.  In its September 29, 2011 decision in the consolidated cases, the ARB ruled that, as a matter of law, a railroad employee's pursuit of RLA §3 arbitration can never constitute an election of remedies under §20109(f).  Applying this interpretation, the ARB concluded that Koger was not barred from challenging his dismissal pursuant to §20109 even though he had already challenged the dismissal (with partial success) in RLA arbitration.

Because the ARB remanded the two cases to administrative law judges for further proceedings on the merits, the September 29, 2011 decision is not subject to immediate direct review in a court of appeals under FRSA's judicial review provision, 49 U.S.C. §20109(d)(4). NSR therefore brought this civil action, invoking *Leedom* jurisdiction, to set aside the decision and enjoin the Secretary from applying the decision's ruling as to the applicability of §20109(f).

NSR satisfies the two "predicates" to *Leedom* jurisdiction, *see National Air Traffic Controllers Ass'n v. Federal Service Impasse Panel*, 437 F.3d 1256, 1257, 1263 (D.C. Cir. 2006), and is entitled to the relief it seeks.

The Complaint alleges, and NSR can show, that this case satisfies the first jurisdictional predicate, in that the Secretary, through her delegate, has acted in disregard of §20109(f)'s clear and mandatory command, which bars the consideration of a FRSA complaint filed by an employee who has sought protection under another provision of law for the same allegedly unlawful act of the railroad carrier. An employee who takes his discipline to RLA §3 arbitration has done just that:

1.  The employee certainly "seek[s] protection"; he is asking the arbitration board to vacate the discipline -- and, as in Koger's case, to send him back to work.

2.  The employee is seeking protection "under another provision of law." RLA §3 mandates arbitration as the exclusive, final and binding means of resolving disputes as to whether a railroad's assessment of discipline against an employee violates the terms of the employee's collective bargaining agreement. This does not make arbitration a matter of contract; to the contrary, RLA §3 is a statutory mechanism.

3.  The employee who challenges his discipline in arbitration under RLA §3, and also in a DOL complaint proceeding under §20109, is seeking protection in the two

proceedings "for the same allegedly unlawful act." The "act" being challenged is the imposition of discipline. This single act by the railroad is the same whether the employee claims that the act gives him a right to relief in arbitration under the RLA or a right to a remedy under FRSA.

The Secretary, in her memorandum in support of the motion to dismiss (Memorandum In Support Of Defendant's Motion To Dismiss (Doc. 7-2) ("Mem." or "Sec. Mem.")), provides no plausible defense of the September 29, 2011 decision. She ignores the plain language of §20109(f) and, instead, persistently reads that subsection as though it contains words and requirements that it does not, and denies the effect of the language that Congress actually adopted.

As we will explain in detail, this untenable approach infects all of the contentions made by the ARB and the Secretary. By way of example, the Secretary's assertion that *Leedom* cannot apply here because §20109(f) supposedly does not contain any "prohibition" on the Secretary's authority is contrary to §20109(f)'s clear direction that an employee who has elected to seek protection under another provision of law "may not" pursue a FRSA claim at DOL, a functional restriction on the Secretary's authority to consider a §20109 complaint.

The same is true of the Secretary's assertions that §20109(f) does not apply to statutory RLA arbitration because in the arbitration proceeding an employee is seeking protection for substantive rights founded in his collective bargaining agreement, and because RLA §3 does not by its own terms prohibit retaliation against employees for engaging in conduct (such as "whistleblowing") that FRSA expressly protects. It simply does not matter, under the plain terms of §20109(f), that the RLA does not prescribe the substantive terms of railroad

collective bargaining agreements; and nothing in the words of §20109(f) somehow changes the plain meaning of "another provision of law" to "another whistleblower statute."

Lacking any foundation for the ARB's decision in the text of §20109(f), the Secretary adopts the approach of contending, in substance, that as a matter of public policy §20109(f) should be construed to allow a railroad employee who challenges his discipline in RLA arbitration also to seek relief under §20109 because, as the Secretary sees it, this would better serve FRSA's remedial purposes.  But it is axiomatic that the agency's policy preferences cannot override Congress' intent as expressed in §20109(f)'s plain language.  Section 20109(f) is an integral part of the statutory scheme; it must be given the full effect dictated by its clear and mandatory terms.

It is equally clear that NSR satisfies the second *Leedom* predicate, in that NSR has no "meaningful and adequate means," other than this civil action, for vindicating its statutory rights.  Contrary to the assertions in the Secretary's memorandum, NSR cannot be assured that it will have an opportunity to obtain court of appeals review of the ARB's September 29, 2011 decision at the end of the FRSA administrative process, because that process may never be completed.  Under FRSA, 49 U.S.C. §20109(d)(3), an employee has the unqualified right (after sufficient time has passed without a final decision by the Secretary) to withdraw his case from DOL and bring a *de novo* civil action against the railroad in district court.  Koger has had this right for more than three years; if he exercises it, he will unilaterally deprive NSR of the ability to obtain direct court of appeals review of the ARB's decision.  Such a *de novo* district court action would not provide NSR with an adequate means of vindicating its right to obtain a proper interpretation of §20109(f), as a district court hearing a *de novo* civil action would not be engaging in direct review of the ARB's decision.  Rather, that decision would remain in effect

and the Secretary could be expected to continue to treat it, in all current and future FRSA proceedings, as controlling on the question of the application of §20109(f) to RLA arbitration.

Against this, the Secretary contends that NSR cannot satisfy the second *Leedom* predicate because §20109(f) does not give a railroad any rights that it has a cognizable interest in vindicating, in that §20109 was enacted only to protect railroad employees against retaliation. As we will show, the Secretary is certainly wrong.  The rights that §20109 affords to employees as complainants are conditioned in certain respects, in ways that serve to protect the interests of railroads as respondents.  Section 20109(f) is one such condition:  it gives a railroad the right not to be subjected to a DOL investigation when the complainant has elected to seek protection under another provision of law.  The September 29, 2011 decision denies NSR that right when the other provision of law is RLA §3.

## STATEMENT OF THE CASE

**A.**      **Statutory Provisions and History**

      **1.**      **The Railway Labor Act**

Enacted in 1926, the Railway Labor Act, 45 U.S.C. §151 *et seq*. ("RLA"), governs relations between railroads and their employees and provides the legal structure that gives force to railroad collective bargaining agreements.  In particular, RLA §3, 45 U.S.C. §153, establishes a comprehensive framework for resolving disputes between railroads and their employees over the "interpretation or application of agreements concerning rates of pay, rules, or working conditions," 45 U.S.C. §153 First (i), including disputes over the assessment of discipline against employees pursuant to the terms of a collective bargaining agreement.

The RLA process culminates in mandatory arbitration of such contract disputes. Arbitration under the RLA is statutory:  it occurs either before the National Railroad Adjustment

Board ("NRAB"), which is a permanent arbitration board created by the RLA itself, 45 U.S.C. §153 First (i), or, alternatively, before a special board of adjustment created by agreement of a railroad and a labor union, under the authority of the National Mediation Board ("NMB"), a federal agency, in accordance with RLA §3 Second, 45 U.S.C. §153 Second. The railroad industry is distinctive in that the "compulsory character" of arbitration "stems not from any contractual undertaking between the parties but from the [Railway Labor] Act itself." *Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 323 (1972). An award rendered by an RLA §3 arbitration board is made "final and binding" by the statute. 45 U.S.C. §153 First (m); *id.* §153 Second (second paragraph).[1]

The mandatory arbitration of disputes over the interpretation or application of railroad labor agreements is a cornerstone of the RLA, crucial to Congress' purpose of promoting "stability in labor-management relations" and avoiding interruptions to commerce. *Union Pacific R.R. v. Sheehan*, 439 U.S. 89, 94 (1978) (per curiam). Because the statutory arbitration process is so important to the smooth functioning of railroad labor relations, the RLA §3 scheme, when applicable, is exclusive and extinguishes any other remedies for alleged violations of a railroad labor agreement. *E.g., Andrews v. Louisville & Nashville R.R.*, 406 U.S. at 322-26.

---

[1]    The jurisdiction of a special board of adjustment is coextensive with that of the NRAB, and an award of a special board of adjustment has the same binding effect, and is subject to the same standard of review under RLA §3 First (q), 45 U.S.C. §153 First(q), as an award of the NRAB. *See, e.g., United Transportation Union v. Indiana Harbor Belt R.R.*, 540 F.2d 861, 862-64 (7th Cir. 1976); *Employees Protective Ass'n v. Norfolk & Western Ry.*, 511 F.2d 1040, 1043 (4th Cir. 1975). Judicial review of an RLA §3 arbitration board award is "among the narrowest known to the law." *Union Pacific R.R. v. Sheehan*, 439 U.S. 89, 91 (1978) (per curiam) (internal quotes and citation omitted).

2.      **The Federal Railroad Safety Act**

The Federal Railroad Safety Act ("FRSA") was originally enacted in 1970.[2]  In 1980, Congress amended FRSA to make it unlawful for a railroad employer to discipline an employee in retaliation for the employee's engaging in conduct protected by FRSA -- for example, filing a complaint under federal railroad safety laws.  The 1980 amendments provided that an employee could seek relief for such discipline, on the ground that it violated FRSA, through the arbitration procedures of RLA §3, 45 U.S.C. §153.[3]

In 2007, Congress amended FRSA to include, among other things, additional categories of FRSA-protected conduct.[4]  As currently in effect, FRSA provides, in pertinent part, that a railroad carrier "may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee" for (among other things) undertaking "to notify . . . the railroad carrier . . . of a work-related personal injury."  49 U.S.C. §20109(a)(4).

The 2007 amendments to FRSA also adopted a new DOL complaint procedure through which employee claims of unlawful retaliation in violation of FRSA are to be investigated and resolved.  A railroad employee who believes he or she has been retaliated against in violation of FRSA may seek relief by filing a complaint with the Secretary.  49 U.S.C. §20109(d).  The Secretary has delegated her authority to investigate such a complaint to the Assistant Secretary for Occupational Safety and Health ("the Assistant Secretary"), who oversees the Occupational Safety and Health Administration ("OSHA").  The Assistant Secretary may

---

[2]      Pub. L. No. 91-458, 84 Stat. 971, *et seq*. (1970) (codified at 45 U.S.C. §421 *et seq*.).

[3]      Pub. L. No. 96-423, 94 Stat. 1815 (1980).

[4]      Implementing Recommendations of the 9/11 Commission Act of 2007, Pub. L. No. 110-53, 1221 Stat. 266, 444 (2007).

determine that an investigation is not warranted and dismiss the complaint.  The Assistant Secretary may instead conduct an investigation, issue findings on behalf of the Secretary, and, if he finds the employee's complaint has merit, issue a preliminary order granting relief to the employee, including reinstatement, back pay, compensatory damages, attorneys' fees, and punitive damages up to $250,000.  29 C.F.R. §1982.105.

Either the employee or the railroad may file objections to the Assistant Secretary's findings and seek a *de novo* hearing before a DOL administrative law judge.  A preliminary order of reinstatement issued on behalf of the Assistant Secretary remains in effect unless specifically stayed.  49 U.S.C. §20109(d)(2)(A), §42121(b)(2); 29 C.F.R. §1982.106.

A decision by an administrative law judge under §20109 is subject to discretionary review by the ARB, 29 C.F.R. §1982.110, to which the Secretary has delegated the authority to issue final agency decisions under §20109, Secretary's Order No. 1-2010, 75 Fed. Reg. 3924 ¶5(c)(15) (January 15, 2010).  (The members of the ARB are appointed by the Secretary and serve at her pleasure.  *Id.* ¶¶6(a), 7(b).)  An order of reinstatement issued by an administrative law judge continues in effect while the matter is pending before the ARB, unless the reinstatement order is specifically stayed.  29 C.F.R. §1982.110(b).

A final order of the ARB is subject to review in a United States Court of Appeals. 49 U.S.C. §20109(d)(4); 29 C.F.R. §1982.112.

In addition, FRSA also gives an employee the unfettered right (after a sufficient time has passed without a final decision by the Secretary) to withdraw his case from the DOL process entirely and instead bring a *de novo* action in district court.  FRSA provides (49 U.S.C. §20109(d)(3)):

> With respect to a complaint . . ., if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the

delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy, and which action shall, at the request of either party to such action, be tried by the court with a jury.

FRSA, however, also contains an "Election of Remedies" provision, which limits the Secretary's authority to investigate a complaint.  This provision was originally adopted in 1980, along with the provision that made it unlawful for a railroad to retaliate against an employee for engaging in FRSA-protected conduct.  Congress understood that some railroad employees already had the right to pursue other federal statutory remedies in such cases -- for example, remedies established under the Occupational Safety and Health Act.  Congress, however, adopted a broadly worded Election of Remedies provision, applicable not only to the Occupational Safety and Health Act but to "any other provision of law" that could be used to challenge the same act of the railroad:  "Whenever an employee of a railroad is afforded protection under this section and under any other provision of law in connection with the same allegedly unlawful act of an employer, if such employee seeks protection he must elect either to seek relief pursuant to this section or pursuant to such other provision of law."[5]  Congressman Florio, manager of the 1980 bill in the House of Representatives, explained the purpose of the Election of Remedies provision:

> We also agreed to a provision clarifying the relationship between the remedy provided here and a possible separate remedy under OSHA. Certain railroad employees, such as employees working in shops, could qualify for both the new remedy provided in this legislation, or an existing remedy under OSHA.  It is our intention that pursuit of one remedy should

---

[5]    Pub. L. No. 96-423, 94 Stat. 1815 (originally codified at 45 U.S.C. §441(d)).

bar the other, so as to avoid resort to two separate remedies, which would only result in unneeded litigation and inconsistent results.[6]

The language of the Election of Remedies provision was revised in 1994, when it was enacted into positive law and recodified at 49 U.S.C. §20109(d); as the Secretary acknowledges (Mem. at 4), the rewording did not make a substantive change in the law.[7]

The 2007 amendment of FRSA left the longstanding Election of Remedies provision intact. Congress retained the language of the Election of Remedies provision as it had been enacted in 1994 (with only a trivial simplification), and in 2008 renumbered the provision as §20109(f).[8] As currently in effect, the Election of Remedies provision provides:

> **Election of Remedies**. An employee may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the railroad carrier.

49 U.S.C. §20109(f). It is not disputed that the meaning of the provision has remained constant throughout its history.[9]

---

[6]     126 Cong. Rec. 26532 (September 22, 1980). Congressman Florio was explaining a provision of H.R. 7104, which the House substituted for the entire text of S. 2730 as previously passed by the Senate. On September 24, 1980, the Senate adopted S. 2730 as revised by the House, and the bill was signed into law as Pub. L. No. 96-423, 94 Stat. 1815 (1980).

[7]     Pub. L. No. 103-272, 108 Stat. 745, 867-68 (1994). *See* S. Rep. No. 103-265, 103d Cong, 2d Sess., at 5 (1994) ("As in other codification bills enacting titles of the United States Code into positive law, this bill makes no substantive change in the law."). As enacted in 1994, the election of remedies provision read: "An employee of a railroad carrier may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the carrier."

[8]     Rail Safety Improvement Act of 2008, Pub. L. No. 110-432, 122 Stat. 4848, 4893 (2008).

[9]     It is well understood that "[w]here sections of a statute have been amended but certain provisions have been left unchanged, we must generally assume that the legislature intended to leave the untouched provisions' original meaning intact." *American Casualty Co. of Reading Pennsylvania v. Nordic Leasing, Inc.*, 42 F.3d 725, 732 n.7 (2d Cir. 1994). *Accord Chelette v. Harris*, 229 F.3d 684, 686 (8th Cir. 2000) ("When Congress repeatedly amends only some portions of a statute, we infer that it intends no change to the law of unamended portions.");
(continued … )

- 11 -

**B.      The Administrative Review Board's Decision Declaring §20109(f) Inapplicable To An Employee's Pursuit Of Statutory Arbitration Under The Railway Labor Act.**

Koger was employed by NSR as a freight train conductor, and worked under a collective bargaining agreement entered into by NSR and the United Transportation Union ("UTU").[10]  On July 29, 2007, Koger was working, with a locomotive engineer, on a locomotive operating in an NSR rail yard in Iaeger, West Virginia.  Koger failed to alert his engineer to a red signal (a command to stop), in violation of NSR's operating rules.  As a result, the locomotive ran through the red signal, struck a derailing device, derailed, and was damaged.  Koger reported to NSR the next day that he had been injured in the incident.

On August 8, 2007, NSR conducted a formal investigation, in accordance with its collective bargaining agreement with UTU, to determine Koger's responsibility in connection with his locomotive's passing a stop signal.  The investigation is a hearing, conducted on the record.  By letter dated August 21, 2007, NSR dismissed Koger from service for his responsi-bility in allowing his locomotive to run through the red signal.  (The engineer also was found at fault and was dismissed.)

Koger exercised the appeal rights available to him under his collective bargaining agreement and the RLA.  First, Koger's union representative appealed Koger's dismissal within NSR, in accordance with RLA §3 First (i), 45 U.S.C. §153 First (i).  NSR affirmed Koger's dismissal.

---

( … continued)
*Costello v. United States Railroad Retirement Board*, 780 F.2d 1352, 1355 (8th Cir. 1985) (amendment of certain subsections of a statute evidences congressional intent to leave meaning of unamended portions of the same subsection intact).

[10]      The facts described in this section are set forth in paragraphs 18 through 32 of the Complaint and for purposes of the motion to dismiss are not disputed by the Secretary (Mem. at 6 n.3).

Koger then challenged his dismissal in arbitration before Public Law Board No. 5944 ("PLB 5944").  PLB 5944 is an ongoing special board of adjustment (arbitration board) created by an agreement between NSR and UTU pursuant to RLA §3 Second (second paragraph), 45 U.S.C. §153 Second (second paragraph).  PLB 5944 consists of a partisan railroad member, a partisan union member, and a neutral chairman.  The chairman of PLB 5944 was compensated by the NMB.  *Id.*

On January 8, 2008, PLB 5944 issued an interim award, directing that Koger be returned to service but deferring a final determination as to the propriety of NSR's assessment of discipline.  The board's final award, rendered on July 28, 2008, upheld NSR's assessment of discipline, but modified the extent of the discipline by reducing it from a dismissal to a lengthy, unpaid suspension from service.

In February 2008, Koger filed a complaint with DOL-OSHA under 49 U.S.C. §20109, alleging that he had been terminated in retaliation for reporting a work-related personal injury to NSR, in violation of FRSA.  NSR disputed the complaint's allegations and also argued that §20109(f) (then numbered §20109(e)) barred Koger from pursuing it, because he had sought protection in RLA arbitration.

On June 3, 2008, following an investigation, the Regional Administrator for OSHA, Region III, exercising authority delegated by the Assistant Secretary, determined that there was no reasonable cause to believe that NSR had retaliated against Koger in violation of FRSA.  The Regional Administrator did not rule on NSR's §20109(f) argument.

Koger sought a *de novo* hearing before a DOL administrative law judge. The ALJ dismissed Koger's FRSA complaint, holding that it was barred by §20109(f) because Koger had elected to challenge his dismissal from employment in arbitration under RLA §3.[11]

Koger petitioned the ARB for review of the administrative law judge's decision. The ARB consolidated Koger's petition with a petition to review the decision of a different ALJ in a case involving Michael L. Mercier, an employee of Union Pacific Railroad Company, who had also been dismissed and had also challenged his dismissal in arbitration under RLA §3.[12] The ALJ in that case had rejected the railroad's argument that the employee's complaint was barred by §20109(f), and the ARB accepted an interlocutory appeal.

On September 29, 2011, the ARB issued its decision in the consolidated cases, *Mercier v. Union Pacific R.R.*, ARB Case No. 09-121, and *Koger v. Norfolk Southern Ry.*, ARB Case No. 09-101 (a copy of the decision is attached as Exhibit A to NSR's Complaint). The ARB ruled that, as a matter of law, an employee's pursuit of arbitration under RLA §3 *does not* constitute an election of remedies for purposes of 49 U.S.C. §20109(f), stating (Decision at 9): "we hold that by pursuing arbitration Mercier did not waive any rights or remedies that FRSA affords him, including the right to pursue a whistleblower complaint under its provisions." Applying this interpretation of §20109(f), the ARB concluded that Koger was not barred from challenging his dismissal pursuant to §20109 even though he had already challenged the dismissal (with partial success) in arbitration under RLA §3.

---

[11]     *Koger v. Norfolk Southern Ry.*, Case No. 2008-FRSA-0003 (May 29, 2009).

[12]     *Mercier v. Union Pacific R.R.*, Case No. 2008-FRSA-0004 (June 3, 2009).

The ARB's decision remanded the *Koger* and *Mercier* cases to the administrative law judges, for further proceedings on the merits of each employee's challenge to his dismissal under FRSA.  Consequently, the decision was not appealable to a court of appeals under FRSA, 49 U.S.C. §20109(d)(4), because it was not a final order of the Secretary.

NSR therefore brought this civil action, under the doctrine of *Leedom v. Kyne*, to set aside the September 29, 2011 decision and enjoin the Secretary from applying the decision's ruling that §20109(f) does not apply to RLA §3 arbitration.

## ARGUMENT

### THE COURT HAS JURISDICTION OVER THIS CIVIL ACTION UNDER *LEEDOM v. KYNE*.

**I.      Under *Leedom v. Kyne*, A District Court Has Jurisdiction To Review Agency Action That Is In Excess Of The Agency's Delegated Powers And Contrary To  A Specific Statutory Prohibition That Is Clear And Mandatory, When There Is No Other Meaningful And Adequate Means For The Plaintiff To Vindicate Its Statutory Rights.**

As we will show, this civil action satisfies all of the requirements for *Leedom v. Kyne* jurisdiction.   Under the *Leedom* rule, a district court has jurisdiction to engage in nonstatutory review of an action by an administrative agency that is in "excess of its delegated powers and contrary to a specific prohibition . . . [that] is clear and mandatory," *Leedom,* 358 U.S. at 188, when the failure to exercise jurisdiction would "wholly deprive [the plaintiff] of a meaningful and adequate means of vindicating its statutory rights," *Board of Governors of Federal Reserve v. MCorp Financial, Inc.*, 502 U.S. 32, 43 (1991).  *Accord National Air Traffic Controllers Ass'n v. Federal Service Impasse Panel*, 437 F.3d at 1257, 1263.[13]

---

[13]       Although the Secretary has moved to dismiss this civil action under both Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., all of the Secretary's arguments are directed toward the question whether there is jurisdiction under the *Leedom* rule.  We agree that the question of *Leedom*
(continued … )

As the Secretary observes (Mem. at 12-13), *Leedom* jurisdiction is narrow in scope and its successful invocation is an exceptional occurrence. It is understandable that this is true, for it is not a common occurrence for an agency to act in derogation of a clear statutory constraint on its authority, and in a context in which its action is not immediately reviewable under the agency's organic statute or the Administrative Procedure Act. But the fact that agencies do not often act in such a manner does not mean that a district court lacks power to review and set aside an agency's action when one does.

The Secretary contends (Mem. at 14-16, 17-18) that NSR should not even be allowed to proceed with a *Leedom* analysis for two threshold reasons: First, NSR cannot possibly sustain its overall burden of showing that the ARB's interpretation of §20109(f) is not "plausible," because two administrative law judges interpreted that provision differently and the ARB reached its conclusion after a supposedly "careful analysis" of the provision in light of the conflicting ALJ decisions. Second, it is inappropriate to apply *Leedom* to §20109(f) because the provision assertedly does not contain any "prohibition" against action by the Secretary.

As to the first point, NSR will show that, in the words of the Secretary (Mem. at 17), the ARB's interpretation of §20109(f) is itself not "plausible," in that the provision "can *only* be interpreted as 'limiting' . . . the Secretary's authority to investigate a complaint filed under' §20109 when an employee challenges his dismissal in arbitration" under RLA §3. The ARB's contrary conclusion is wholly implausible because it is flatly at odds with the plain, clear

---

( … continued)

jurisdiction is determinative (and that NSR, as plaintiff, has the burden of establishing jurisdiction). If NSR has successfully invoked the Court's *Leedom* jurisdiction, as we contend, then NSR's Complaint unquestionably states a claim for relief under *Leedom*. Further, given the nature of the *Leedom* doctrine, a determination that the Court has jurisdiction under *Leedom* (and it does) is tantamount to a determination that NSR must prevail on the merits of its claim.

and mandatory language of the statute; the ARB's decision does not gain any plausibility merely because it takes on the form of a statutory interpretation.   And the mere fact that different administrative law judges reached different conclusions as to the meaning of §20109(f) does not demonstrate that both are "plausible" interpretations of the statute or that §20109(f) is not sufficiently "clear and mandatory" for purposes of establishing *Leedom* jurisdiction.

The *en banc* decision of the D.C. Circuit in *Railway Labor Executives Ass'n v. National Mediation Board*, 29 F.3d 655 (D.C. Cir.) (en banc) ("*RLEA v. NMB*"), *amended*, 38 F.3d 1224 (D.C. Cir. 1994), establishes the rule.   In that case, the Court of Appeals, by a 5-4 vote, held that the district court had *Leedom* jurisdiction over a challenge to an NMB rule, known as the Merger Procedures, brought by numerous rail labor unions.   Section 2 Ninth of the RLA, 45 U.S.C. §152 Ninth, gives the NMB exclusive authority to investigate and resolve disputes over the representation of railroad employees for purposes of collective bargaining.   The NMB's Merger Procedures permitted a rail carrier or the NMB, as well as rail employees, to initiate a representation proceeding in the wake of a railroad merger or acquisition (as such transactions were likely to create uncertainty as to who was the proper representative of the employees).   The Court of Appeals majority, conducting a standard statutory analysis looking at language, legislative history, and purpose, found that RLA §2 Ninth clearly permits a representation dispute to be initiated only by employees, and therefore bars the NMB from adopting the Merger Procedures.   29 F.3d at 664-70.[14]

---

[14]     Section 2 Ninth provides, in relevant part:

If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties, in writing, within thirty days after the receipt of the invocation of its

(continued … )

The five judges in the majority concluded that *Leedom* jurisdiction existed even though four dissenting judges, using the very same tools of statutory analysis, found that RLA §2 Ninth did *not* clearly preclude the NMB from adopting a rule that permitted the NMB or a rail carrier to initiate a representation proceeding, *id*. at 677-81 (Williams, J., dissenting).  The mere fact that four judges could formulate an interpretation of RLA §2 Ninth contrary to the majority's did *not* demonstrate that the statute was insufficiently "clear and mandatory" to establish *Leedom* jurisdiction.

To the same effect is *Gracey v. International Brotherhood of Electrical Workers*, 868 F.2d 671 (4th Cir. 1989).  The two judges in the majority, using standard tools of statutory analysis, found that the Secretary of Labor would exceed the limits of his authority under the relevant provision in the Service Contract Act if he held a hearing to determine whether wage rates in a new labor agreement were at variance with the prevailing rates in the locality.  The appeals court therefore held that the district court had *Leedom* jurisdiction to enjoin the Secretary from holding a variance hearing.  *Id.* at 674-77.  The majority concluded that *Leedom* jurisdiction existed even though the dissenting judge, using the same tools of statutory analysis, interpreted the statutory provision to have a meaning contrary to the one found by the majority, under which the Secretary did have the authority to convene the variance hearing, *id.* at 678-83 (Phillips, J., dissenting).[15]

---

( … continued)

        services, the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier.

[15]    The relevant Service Contract Act provision, 41 U.S.C. §353(c), stated:

        No contractor or subcontractor under a contract, which succeeds a contract subject to this chapter and under which substantially the same services are furnished,

(continued … )

Ultimately, the question under *Leedom*, as in any statutory interpretation case, is what does the statute actually provide.   In *Leedom* itself, the meaning of the statute was self-evident, as the NLRB acknowledged that its determination that it was appropriate to create a bargaining unit containing both professional and nonprofessional employees was in direct violation of a provision in the National Labor Relations Act (the issue being whether the district court had jurisdiction to correct the NLRB's conceded statutory transgression).   But *RLEA v. NMB* and *Gracey v. IBEW* establish that, contrary to the impression the Secretary seeks to create (Mem. at 16-17), a statute can be "clear and mandatory" even if its meaning is not as self-evident as was the case in *Leedom* itself.   As long as the words of a statute (and other tools of statutory

---

( … continued)

> shall pay any service employee under such contract less than the wages and fringe benefits, including accrued wages and fringe benefits, and any prospective increases in wages and fringe benefits provided for in a collective-bargaining agreement as a result of arm's-length negotiations, to which such service employees would have been entitled if they were employed under the predecessor contract:  Provided, That in any of the foregoing circumstances such obligations shall not apply if the Secretary finds after a hearing in accordance with regulations adopted by the Secretary that such wages and fringe benefits are substantially at variance with those which prevail for services of a character similar in the locality.

In *Gracey*, the employer party to a new labor agreement sued to enjoin the Secretary from proceeding with a variance hearing.  The court majority found that §353(c) did not give the Secretary the authority to set aside wages and benefits in a new labor agreement that were below the prevailing rate, as long as those wages and benefits were equal to the ones in the predecessor agreement.  The majority, that is, did not interpret the proviso in §353(c) as imposing an obligation to pay the prevailing rate.  Because the wages and benefits in the union's new contract with the employer did exceed those of the predecessor contract, the contract was in compliance with the Service Contract Act whether or not the rates were equivalent to the local prevailing rates, and the Secretary therefore had no authority to hold a variance hearing.  868 F.2d at 674-77.

The dissenting judge, by contrast, interpreted the §353(c) proviso as authorizing the Secretary to order rate adjustments in any case in which he finds that wages set by a labor agreement are "substantially at variance" with those prevailing in the local community -- and that the Secretary therefore had authority to proceed with the variance hearing.  *Id.* at 683.

analysis) lead to only one conclusion, and exclude alternative interpretations as implausible, *Leedom* is satisfied.  As we will show, §20109(f) fits exactly within that rule.

The Secretary's second threshold contention (Mem. at 14-16) -- that *Leedom* cannot apply here because §20109(f) supposedly does not contain any "prohibition" on the Secretary's authority -- fares no better.  In saying this, the Secretary is necessarily contending that *even if* §20109(f) is a "clear and mandatory" direction that an employee who has pursued RLA §3 arbitration cannot proceed under FRSA (which it is), there still could not be *Leedom* jurisdiction -- apparently because §20109(f) does not specifically refer to the Secretary.

That contention is foreclosed by *RLEA v. NMB*, where the D.C. Circuit rejected an analogous argument that *Leedom* could not apply because RLA §2 Ninth does not contain the same sort of words of "prohibition" as did the statute involved in *Leedom* itself (the "Board shall not . . .").  As the court explained (29 F.3d at 661-62):

> Although *Leedom v. Kyne* itself dealt with a 'shall not' statutory command, its application is not so narrowly limited. . . .  Thus, it is of no moment that Section 2, Ninth does not state that 'the Board shall not conduct an investigation except on the request of an employee,' so long as we may conclude (as we do) that Section 2, Ninth imposes a clear and mandatory obligation upon the NMB to investigate representation disputes only at the behest of the affected employees.

The Court of Appeals held that there was jurisdiction under *Leedom* to set aside the NMB's Merger Procedures because the NMB was barred from considering a representation application received from a railroad, or conducting a representation proceeding *sua sponte*, as RLA §2 Ninth did not allow for those events.  Here, §20109(f) explicitly directs that an employee who has elected to seek protection under another provision of law "may not" pursue a FRSA claim at DOL.  A complaint filed with DOL by an employee who has made such an election is not cognizable and must be dismissed; the remedies are mutually exclusive and a main purpose of §20109(f) is to avoid "unneeded litigation," 126 Cong. Rec. 26532 (September

22, 1980) (remarks of Congressman Florio).  The effect of §20109(f), therefore, is to restrict the Secretary's authority to undertake an investigation of alleged retaliation in violation of FRSA, and potentially order relief against a railroad, in response to a complaint filed by an employee who has elected a different remedy.[16]  It does not matter that §20109(f) does not explicitly say that the Secretary "shall not" undertake an investigation in such a circumstance, any more than it mattered in *RLEA v. NMB* that RLA §2 Ninth did not say that the NMB "shall not" conduct an investigation over representation except on the request of an employee.  The Secretary's failure to dismiss a FRSA complaint filed by an employee who has elected a different remedy is an "attempted exercise of power that had been specifically withheld," *Leedom*, 358 U.S. at 188-89.

## II.    The Administrative Review Board's Interpretation Of 49 U.S.C. §20109(f) Is Contrary To The Clear And Mandatory Terms Of The Statute And Is Wrong As A Matter Of Law.

The meaning of §20109(f) is plain on the face of the statute.  The ARB's conclusion that an employee who has challenged his dismissal in RLA §3 arbitration has not

---

[16]     In this respect, the operation of §20109(f) is similar to other statutory election of remedies provisions.  *See, e.g., Moodie v. Federal Reserve Bank of New York,* 58 F.3d 879, 884 (2d Cir. 1995) (under the election of remedies provision in the New York State Human Rights Law -- which specifies that "a person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such a person has filed a complaint" with a state or local human rights commission -- administrative and judicial remedies are "intended to be mutually exclusive"; once an employee elects an administrative forum, that is the "sole avenue of relief" and a subsequent judicial action challenging the same underlying conduct "is generally barred" for lack of jurisdiction) (internal quotes and citation omitted); *Bonfiglio v. New York Presbyterian Hospital*, 2011 U.S. Dist. LEXIS 63794, at *9 (S.D.N.Y. June 16, 2011) (same); *Jeffers v. Chao*, 2006 U.S. Dist. LEXIS 661, at *8-11 (D.D.C. January 3, 2006) (under the election of remedies provision in the Civil Service Reform Act of 1978 -- which provides that an employee alleging discrimination "may raise the matter under a statutory procedure or the negotiated [collective bargaining grievance] procedure, but not both" -- once an employee elects to pursue a grievance, a subsequent court action relating to the same matter is barred for lack of jurisdiction).

made an election of remedies under §20109(f) contradicts the statute's clear and mandatory language and is wrong as a matter of law.

Section 20109(f) imposes three conditions for its application: (1) that an employee "seek protection," (2) under both §20109 and "another provision of law," (3) for "the same allegedly unlawful act" of the railroad. An employee who has challenged his discipline in arbitration under RLA §3 and also in a DOL complaint proceeding under §20109, as Koger (and Mercier) did, satisfies all three conditions and is therefore barred from pursuing his DOL complaint.

First, an employee certainly "seek[s] protection" within the plain meaning of §20109(f) when he pursues redress for his discipline -- in this case, reinstatement and back pay -- through the RLA arbitration process.

Second, an employee seeks protection "under another provision of law" within the plain meaning of §20109(f) when he challenges the discipline in RLA §3 arbitration. Arbitration under RLA §3 is statutory. RLA §3, a statute, is a "provision of law" within the plain meaning of §20109(f). RLA §3 compelled Koger to go to arbitration if he wished to challenge his dismissal as assertedly in violation of his labor agreement; and the arbitration was conducted under the statute, not under the terms of Koger's labor agreement. The arbitration board that resolved Koger's challenge to his dismissal was created under authority of RLA §3; its neutral chairman was compensated by the NMB pursuant to RLA §3; and its award was made final and binding by RLA §3.

Third, an employee who challenges his discipline in arbitration under RLA §3 and also in a DOL complaint proceeding under §20109 is seeking protection, in the two proceedings, "for the same allegedly unlawful act" of the railroad within the plain meaning of §20109(f). The

"act" being challenged is the imposition of discipline.  It is immaterial that the employee may be relying on different legal theories, or may advance different characterizations of the railroad's supposed violation, or may potentially have different remedies, in the two proceedings.  The single act by the railroad is the same whether the employee claims that the act gives him a right to relief in arbitration under the RLA or a right to a remedy under FRSA.  *See Sereda v. Burlington Northern Santa Fe R.R.*, 2005 U.S. District LEXIS 5598, at *13 (S.D. Iowa March 17, 2005)  (the phrase "the same allegedly unlawful act" in the Election of Remedies provision is "addressed not to the character or motivation of the employer's allegedly unlawful act, but to the act itself").[17]

NSR engaged in a single adverse act with respect to Koger:  it dismissed him from employment.  Koger sought "protection" against that single act under "another provision of law" -- arbitration pursuant to RLA §3 -- as well as under FRSA, 49 U.S.C. §20109.  By doing so, he made an election of remedies within the meaning of §20109(f) that bars him from pursuing his DOL complaint.

The Secretary and the ARB can reach their contrary conclusion only by casting aside this straightforward reading of plain statutory language.  The Secretary's defense of the ARB's decision goes wrong from the outset and never waivers from its ill-conceived path.  The ARB described the case (Decision at 4) as involving an employee's pursuit of "a grievance and arbitration provided for in his union's collective bargaining agreement" and considered the application of §20109(f) as if a railroad employee were simply vindicating a contractual remedy

---

[17]     In RLA arbitration challenging a dismissal, an employee ordinarily seeks relief that includes reinstatement to service with benefits and seniority unimpaired, back pay, and the expunging of the discipline from his employment records.  It is the discipline imposed, however, that provides the basis for the employee's initiation of arbitration.

when he takes his claim to arbitration.  That approach is insupportable, because the RLA §3 arbitration pursued by Koger (and Mercier) is statutory in nature, not merely contractual as the ARB supposed.

      The Secretary now evidently acknowledges that this case concerns arbitration, not an employee's submission of a grievance to the railroad, and that RLA §3 arbitration is statutory, not "provided for" in a collective bargaining agreement.  But the Secretary nevertheless still adheres to what she calls (Mem. at 21) the ARB's "core conclusion" that an employee does not "'seek protection' under 'another provision of law', the RLA" when he challenges his dismissal in RLA §3 arbitration.  Rather, he supposedly "'seeks protection' under a contract, the CBA, because it is the CBA, not the RLA, which provides the employee the substantive right that he or she can seek to vindicate in arbitration."  Sec. Mem. at 21; see *id*. at 19, 22.  This purported interpretation has no foundation in the language of §20109(f).

      First, and most fundamentally, the Secretary and ARB (Decision at 6-7) add words to §20109(f) that the statute does not contain.  Section 20109(f) provides that an employee "may not seek protection under . . . another provision of law . . . ."  It does not require, as the Secretary and ARB would have it, that an employee "seek protection . . . under another provision of law *that provides the substantive right the employee seeks to vindicate*."

      The Secretary contends (Mem. at 27) that §20109(f) must be read as if it contains this additional requirement because an "employee cannot 'seek protection' under a law if the law does not give the employee any right to vindicate."  This assertion is obviously wrong.

      The RLA provides the legal structure that gives force to railroad collective bargaining agreements.  In particular, RLA §3 mandates arbitration as the exclusive remedy for alleged violations of the promises contained in a collective bargaining agreement.  As a matter of

common English, when an employee pursues the remedy afforded under a statute, he plainly "seeks protection" under the statute that affords the remedy, even if the substance of the right the employee seeks to vindicate has another source (such as a labor agreement).

This is a familiar idea, and a ready analogy proves the elementary point. Section 1983 of Title 42, U.S. Code, "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979); *accord Maine v. Thiboutot*, 448 U.S. 1 (1980); *Samuels v. District of Columbia*, 770 F.2d 184, 193 (D.C. Cir. 1985) ("By its terms, of course, [§1983] does not create substantive rights; instead it provides an express federal remedy against state officials for deprivations of rights established elsewhere in federal law."). When a person sues to obtain relief under §1983, no one would doubt for a moment that he "seeks protection" under that statute, even though §1983 is not the source of the substantive right that the plaintiff seeks to vindicate. And courts see it just that way. *See, e.g.*, *Wilson v. Thompson*, 638 F.2d 799, 800 (5th Cir. 1981) (appellants had sought "federal injunctive protection, pursuant to 42 U.S.C. 1983, against their prosecution in the belief that appellee had violated" their rights under the First Amendment); *Hunt v. Smith*, 67 F. Supp.2d 675, 681-82 (E.D. Texas 1999) (dismissing plaintiff's claim for damages for alleged violations of the Fifth and Fourteenth amendments because she "never once cites to, or seeks the protection of 42 U.S.C. §1983"; there is no cause of action against state officials directly under the Constitution; "since no attempt has been made to invoke the protection of 42 U.S.C. §1983, relief cannot be granted with respect to Plaintiff's federal Constitutional claims"); *Roddy v. McBride*, 1995 U.S. App. LEXIS 15764, at *4 (7th Cir. April 26, 1995) (to "invoke the protection established under 42 U.S.C. §1983, a litigant must first establish the existence of a

liberty or property interest"); *Cuatle v. Torres*, 2011 U.S.Dist. LEXIS 75335, at *15 (S.D. Ind. July 12, 2011) (plaintiff "invokes the constitutional protections of 42 U.S.C. §1983 and asserts false arrest and malicious prosecution claims" against defendants).

The Secretary (Mem. at 22 & n.7) and ARB (Decision at 7) mistakenly rely on the Supreme Court's observation in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49-50 (1974), that "in submitting his grievance to arbitration, an employee seeks to vindicate his contractual rights under a collective-bargaining agreement." This observation has no effect on the conclusion that §20109(f), by its plain terms, applies to RLA §3 arbitration. In particular, it does not change the facts that (i) in RLA arbitration an employee "seeks protection" -- *e.g.,* reinstatement and back pay -- for the alleged violation of his labor agreement rights; and (ii) RLA arbitration is statutory (which the arbitration involved in *Alexander* was not) -- mandated by and conducted under "another provision of law," RLA §3, not under the employee's collective bargaining agreement.

Further, the position advanced by the Secretary (Mem. at 21-22) and ARB (Decision at 6-8) -- that an employee who pursues RLA arbitration is not seeking protection under "another provision of law" because the claim in arbitration is that a collective bargaining agreement has been violated, and a collective bargaining agreement is a contract, not a provision of law -- is flatly contrary to *Norfolk & Western Ry. v. American Train Dispatchers Ass'n*, 499 U.S. 117 (1991) ("*Dispatchers*"). *Dispatchers* holds that a railroad employee who seeks relief for violation of the terms of his collective bargaining agreement *is* seeking relief under the statute that gives legal force to the agreement, the RLA. *Id.* at 128-31.[18]

---

[18]     *Dispatchers* involved a provision in the Interstate Commerce Act (then 49 U.S.C. §11341(a)) providing that a railroad that has engaged in a merger approved under that statute is

(continued … )

There is nothing to be said for the Secretary's attempt to avoid *Dispatchers* by asserting (Mem. at 26) that the decision concerns only the pro-merger policy of the Interstate Commerce Act ("ICA"). *Dispatchers* held that the exemption from "all other law" contained in the ICA operates to relieve a railroad of its obligations under its collective bargaining agreements because: "a contract has no legal force apart from the law that acknowledges its binding character," 499 U.S. at 130; the words "all other law" include "laws that govern the obligations imposed by contract," *id*. at 129; the "law that gives force to the carriers' collective-bargaining agreements, [is] the RLA," *id.* at 131; and the exemption from "all other law" overrides a railroad's legal obligation under a labor agreement "by suspending application of the law that makes the contract binding," that is, the RLA, *id.* at 130. The Court's holding fundamentally rests on the breadth of the words "all other law" and the nature of railroad labor agreements, not on the policies of the ICA.[19]

_____

( … continued)
exempt "from all other law" as necessary to implement the transaction. The issue was whether the exemption operated to relieve a railroad of its obligations under its collective bargaining agreements. The United States Court of Appeals for the D.C. Circuit had said no, because a labor agreement is not a "law." The Supreme Court rejected that reasoning and reversed, holding that §11341(a) did relieve railroads of "the obligations imposed by the terms of a collective bargaining agreement," 499 U.S. at 128, "by suspending application of the law that makes the contract binding," the RLA, *id.* at 130.

[19]    To the extent that *Graf v. Elgin, Joliet & Eastern Ry*, 697 F.2d 771 (7th Cir. 1983), relied on by the ARB (Decision at 6) and referenced by the Secretary (Mem. at 19), suggests that an employee who seeks relief for violation of his labor agreement rights is not pursuing a remedy under the RLA, it does not survive *Dispatchers* and can provide no support for the ARB's decision. Moreover, the ARB's reliance on *Graf* was misconceived on its own terms. *Graf* concerned the question whether a plaintiff's claim that a railroad violated his labor agreement rights was properly removed from state to federal court. Removal is permitted only if the claim is one over which the federal court would have had original jurisdiction. 28 U.S.C. §1441(a). Under the RLA, however, a federal court has no jurisdiction over a claim that a railroad violated an employee's labor agreement rights; the statute specifically directs that such a claim must be resolved exclusively in arbitration under RLA §3. On this basis, the court of appeals held that removal was inappropriate. 697 F.2d at 774, 776. But the fact that the employee's claim did not
(continued … )

The Secretary (Mem. at 24-25) also attempts to draw a distinction between the language at issue in *Dispatchers* ("all other law") and the substantially similar language in §20109(f) ("another provision of law"), for the avowed purpose of arguing that §20109(f) encompasses only "positive law such as statutes, and not contractual obligations enforceable under common law principles." This is a pointless exercise. It is indisputable that the "law that gives force to the carriers' collective-bargaining agreements, [is] the RLA," *Dispatchers*, 499 U.S. at 131, a statute, not the common law of contracts. *See also Transportation-Communication Employees Union v. Union Pacific R.R.*, 385 U.S. 157, 160-61 (1966) ("A collective bargaining agreement is not an ordinary contract for the purchase of goods and services, nor is it governed by the same old common law concepts which control such private contracts.") Whether §20109(f) applies to the common law is therefore immaterial.[20]

Beyond that, the Secretary also asserts (Mem. at 25-26) that the words "another provision of law" refer only to statutes that protect employees against retaliation for whistleblowing. Even the ARB did not adopt such a position in its September 29, 2011 decision,

---

( … continued)
"arise under" the RLA for purposes of establishing original federal court jurisdiction does not mean that the employee was not seeking a remedy under the RLA.

[20]   Moreover, even if the matter were of any consequence, which it is not, the phrase "another provision of law" is broad enough to encompass the common law. *See Shamrock Farms Co. v. Veneman*, 146 F.3d 1177, 1180-81 (9th Cir. 1998) (use of the phrase "any other provision of law" demonstrates Congress' intent "to encompass all law, whether it be statutory law, common law, or constitutional law"). By contrast, the statutes at issue in the cases cited by the Secretary (Mem. at 25-26) used narrower language, specifically referencing state enactment of positive law, indicating that, in those instances, Congress intended to encompass only positive enactments, and not common-law claims. *See Sprietsma v. Mercury Marine*, 537 U.S. 51, 63 (2002) ("a State . . . may not establish, continue in effect, or enforce a law or regulation establishing" performance or safety standards for recreational vehicles); *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 222-23, 228-29 & n.5 (1995) ("no state . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law . . .").

and for good reason.  The Secretary's contention is made of whole cloth; it again reads restrictions into §20109(f) that the statutory language does not contain.

The Secretary's only rationale (Mem. at 25) is that the words "another provision of law" appear in the same sentence with the words "this section," "seek protection," and the "same allegedly unlawful act."  But the Secretary does not explain why this juxtaposition narrows the plain meaning of "another provision of law," and it clearly does not.  Certainly, "seek protection" has no such effect, for the reasons we have already stated.  The words "this section" simply establish that for there to be an election of remedies, the employee must seek protection under §20109, as well as under "another provision of law"; they do not put any restriction on what that other law might be, much less limit the other law to whistleblower statutes.

As for "the same allegedly unlawful act," that phrase is defined, contrary to the Secretary's position, in case law that the Secretary never mentions.  The phrase "the same allegedly unlawful act" is "addressed not to the character or motivation of the employer's allegedly unlawful act, *but to the act itself.*"  *Sereda v. Burlington Northern Santa Fe R.R.*, 2005 U.S. District LEXIS 5598, at *13 (emphasis added).  The effect of this is that an employee may not seek protection under both FRSA, alleging he was wrongfully dismissed in retaliation for engaging in FRSA-protected conduct, and under another provision of law, alleging his dismissal was wrongful for some other reason, "as both would be predicated on the same allegedly unlawful discharge."  *Id.*; *see also Gonero v. Union Pacific R.R.*, 2009 WL 3378987 at *4 (E.D. Cal. October 19, 2009) (adopting the same understanding of §20109(f)).[21]

---

[21]     *Sereda* was construing the language of FRSA's Election of Remedies provision as it stood after codification at 49 U.S.C. §20109(d) in 1994, and before the amendments of 2007;

(continued … )

The understanding contained in the case law reflects the plain meaning of §20109(f).  NSR, like the railroad in *Sereda*, engaged in only a single "act":  it dismissed an employee.  A single "act" of dismissal can (depending on the facts) be challenged under various legal theories -- including that the dismissal was in retaliation for engaging in FRSA-protected activity or that it was in violation of labor agreement rights.  But the "allegedly unlawful act" is the employment action -- the dismissal (or other imposition of discipline) -- not the legal claim formulated to challenge it, and is therefore the *same act* whether the employee pursues a whistleblower claim under FRSA or arbitration under RLA §3.[22]

In short, the interpretation that the Secretary and ARB would impose on §20109(f) is impermissible under the statute as actually written.  It makes no difference under the

---

( … continued)

that  language is the same in every material respect as the language that was enacted in 2007 as §20109(e) and is now found in §20109(f).  *Sereda* found that the Election of Remedies provision reinforced the court's holding that the FRSA remedy preempted a railroad employee's claim under state law that he had been wrongfully dismissed for reporting a railroad's safety violations. The 2007 FRSA amendment, by enacting what are now subsections (g) and (h) of §20109 (discussed in the text below), has eliminated the basis for the *Sereda* court's preemption holding, but not the basis for holding, under FRSA as it now stands, that once another remedy has been chosen, the FRSA remedy is no longer available.

[22]    *Cf. Roswell v. Wood*, 357 F. Supp.2d 123, 129-31 (D.D.C. 2004) (under the election of remedies provision in the Civil Service Reform Act, an employee may file a grievance or an EEO complaint relating to "the same matter," but not both; employee is barred from filing an EEO complaint because he had filed a grievance relating to the same underlying government employment actions; although plaintiff's "grievance and complaint present different legal theories, they are rooted in the same factual nucleus, and therefore, concern the same matter") (applying *Guerro v. Cuomo*, 176 F.3d 547, 550 (D.C. Cir. 1999)); *Bonfliglio v. New York Presbyterian Hospital*, 2011 U.S. Dist. LEXIS 63794, at *9-10 (the effect of the election of remedies provision in the New York State Human Rights law is to bar an employee who has filed an administrative complaint from filing a civil action "based on the same underlying conduct"; the court therefore lacks jurisdiction over the plaintiff employee's retaliation claim, by virtue of the employee's having pursued an administrative complaint alleging race discrimination, because "the alleged discriminatory act and the alleged retaliatory act are the same -- termination.  The 'underlying conduct' is neither separate nor distinct."

plain language of §20109(f) that the RLA does not prescribe the substantive terms of railroad collective bargaining agreements, or that RLA §3 is not a whistleblower statute.  What matters is that the RLA is the law that gives force to railroad collective bargaining agreements; that arbitration of an employee's claim that he was dismissed in violation of his collective bargaining agreement is mandated by, and conducted under, RLA §3, which is certainly "another provision of law"; and that in statutory arbitration, the employee "seeks protection" (reinstatement and back pay) for his dismissal (or other discipline), which is the "same allegedly unlawful act" for which he seeks protection in his FRSA complaint proceeding.

Not only is the interpretation of §20109(f) advanced by the Secretary and ARB contrary to the "clear and mandatory" language of that subsection, it would also defeat the provision's purpose "to avoid resort to two separate remedies" for the same unlawful act in order to prevent "unneeded litigation and inconsistent results."  126 Cong. Rec. 26532 (Sept. 22, 1980) (remarks of Congressman Florio).[23]

---

[23]    The Secretary (Mem. at 20) and ARB (Decision at 4-5) wrongly suggest that Congress adopted the election of remedies provision in 1980 only to prevent employees from pursuing both the new FRSA remedy (which was then in arbitration under RLA §3) and existing remedies established under the Occupational Safety and Health Act (which covered some railroad employees).  They mistake one particular instance of the problem of avoiding duplicative litigation that Congress was addressing for the sum total of Congress' wider concern, as expressed in the broad, plain language of §20109(f).

There is no substance at all to the suggestion by the Secretary (Mem. at 31 n.10) and ARB (Decision at 8) that §20109(f) does not prevent an employee from challenging the same discipline in both a proceeding under "another provision of law" and a §20109 proceeding, but merely prevents the employer from having to pay duplicative damages to the employee at the conclusion of each of the two proceedings.  This contention is just made-up; it is contrary to the plain language and purpose of §20109(f).  The statute does not say that an employee may not *obtain* duplicative recovery at the end of two proceedings.  It says that an employee may not "seek protection" under both §20109 and another provision of law.  The plain meaning of those words is that an employee cannot *pursue* relief ("seek protection") in a DOL proceeding if he has challenged the same discipline in a proceeding under another provision of law.  This prohibition implements Congress' purpose "to avoid resort to two separate remedies" in order to prevent
(continued … )

If railroad employees were free to pursue both RLA arbitration and a DOL complaint seeking relief for the same act, conflicting outcomes would surely occur. This would create a massive conflict with, and do great harm to, the long-established RLA scheme for the resolution of disputes over employee discipline. That scheme is central to labor relations in the railroad industry; it is intended to be comprehensive, and, where it applies, *exclusive*; and it depends, at its heart, on an arbitration award's being, by the terms of the statute, "final and binding," 45 U.S.C. §153 First (m); §153 Second (second paragraph), subject to review only in a United States District Court, under a standard of review that is "among the narrowest known to the law," *e.g.*, *Union Pacific R.R. v. Sheehan*, 439 U.S. at 91 (internal quotes and citation omitted). For this reason, RLA arbitration awards are rarely reversed. The outcome of the DOL complaint procedure, by contrast, may be an order of DOL, subject to review in a United States Court of Appeals; or a judgment of a United States District Court, also subject to appellate review.

The consequences of allowing railroad employees to challenge their dismissal from employment both in RLA arbitration and by means of the FRSA complaint procedure would be inconsistent results, instability, and, perhaps worst of all, lack of finality. *See Union Pacific R.R. v. Sheehan*, 439 U.S. at 94 ("[t]he effectiveness of the [RLA §3 Arbitration] Board in fulfilling its task depends on the finality of its determinations.") There is a virtual certainty that a decision on the merits in the DOL process will not always be consistent with the "final and binding" RLA arbitration determination. If DOL and the RLA arbitrator were to reach different results, the consequence would be that the railroad would become subject to conflicting decisions

---

( … continued)
"unneeded litigation and inconsistent results," not just to prevent duplicative recovery.   126 Cong. Rec. 26532 (September 22, 1980) (remarks of Congressman Florio).

and conflicting obligations. The avoidance of such "inconsistent results" remains as vital a purpose of §20109(f) today as when the provision was first adopted in 1980.

The Secretary, citing to *Alexander v. Gardner-Denver*, 415 U.S. at 50, contends (Mem. at 22-24) that there could be no such inconsistent or incompatible results, because the DOL proceeding involves a claim that FRSA was violated while the RLA §3 proceeding concerns a claim of violation of a collective bargaining agreement. The ARB made a similar point (Decision at 7). This position is plainly incorrect. To take an obvious example: an RLA arbitrator might find in favor of the railroad and order no relief, while DOL could find in favor of the employee and order reinstatement, back pay, and damages.

Nothing in *Alexander* casts any doubt on our argument. *Alexander* concerns the limits of judge-made election of remedies (and waiver) rules; it has no bearing on the interpretation of an explicit statutory election of remedies provision, like §20109(f). The issue in *Alexander* was whether an employee's challenge to his dismissal in arbitration pursuant to his collective bargaining agreement precluded his later challenging the dismissal under Title VII of the Civil Rights Act of 1964, which has no election of remedies provision. The *Alexander* Court said no, declining to impose a judge-made election of remedies or waiver bar. But *Alexander*'s holding does not negate the obvious fact that an arbitration proceeding under a labor agreement and a Title VII lawsuit might actually produce inconsistent results. *Alexander* merely found that it did not fall to the courts to curtail a statutory remedy provided by Congress.[24] In FRSA, however, *Congress itself* has made the judgment that, in the interest of preventing duplicative

---

[24] Moreover, the reasoning in *Alexander* rests, in significant part, on a degree of hostility to arbitration that the Supreme Court has long since repudiated. *See*, *e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 30-32 (1991).

litigation and inconsistent results, an employee who has challenged his dismissal in RLA §3 arbitration cannot challenge the same dismissal at DOL.

The remaining points made by the Secretary and ARB are just additional ineffective attempts to deny the operation of the plain language of §20109(f).

The Secretary (Mem. at 22-24, 29-30) and ARB (Decision at 4, 8) contend that Congress' adoption of a new, supposedly more robust DOL complaint procedure in the 2007 FRSA amendment, and the importance of the protection against retaliation afforded by FRSA, somehow show that Congress meant to exclude RLA arbitration from the scope of §20109(f). But this contention collapses in the face of the dispositive fact that while Congress did revise parts of FRSA in 2007, it left the language of §20109(f) unchanged.  As we have shown, §20109(f), by its plain terms, applies to arbitration under RLA §3.  If Congress had meant to exclude RLA §3 arbitration from the scope of §20109(f), it could and would have modified the provision's language to accomplish that result.  Congress, however, did nothing of the sort.  The consequence is that the *only* permissible conclusion, in construing FRSA, is that Congress saw no conflict between the new DOL remedy and giving full effect to the language of §20109(f) as it is written.  And this makes perfect sense:  it is entirely up to the employee to choose whether to take advantage of the protections of the new DOL complaint procedure or to choose instead to seek protection under RLA §3 (or some other provision of law), as Koger (and Mercier) did.

Finally, the Secretary, echoing the ARB (Decision at 7-8), relatedly contends (Mem. at 19-20) that Congress' addition of subsections (g) and (h) to §20109 in 2007 "reflect that Congress 'anticipate[d] and permit[ted]'" an employee's "concurrent" pursuit of arbitration

under RLA §3 and a complaint under §20109 (alteration in original).[25]   This contention is

hopelessly misconceived and simply disregards the effect of §20109(f).   It fatally confuses

provisions that preserve the *right* of an employee to pursue non-FRSA claims with the

*consequences that follow* under §20109(f) if the employee elects to exercise his preserved right.

By their plain terms, subsections (g) and (h), by providing that §20109 does not

itself preempt potential claims an employee may have under state or federal law or preclude an

employee from pursuing claims under a collective bargaining agreement, ensure that §20109

does not take any choices away from an employee.[26]   But Section 20109(f), by its own plain

terms, imposes consequences if an employee, as guaranteed by §20109(g) and (h), chooses to

pursue relief for his discipline under "another provision of law," whether the RLA or other

federal law, or state law.   Section 20109(f) bars the employee who has made such a choice from

also seeking relief for the same discipline under §20109.

Under the regime Congress has created, therefore, the consequences of an

employee's pursuing different available remedies are not identical.   An employee who is

disciplined by his employer and could seek protection under §20109 is *not* barred, by reason of

the enactment or operation of FRSA, from deciding to pursue relief for the same discipline in

RLA arbitration or under some other federal or state law.   But an employee who seeks protection

---

[25]     Section 20109(g) provides:   "No Preemption: Nothing in this section preempts or
diminishes any other safeguards against discrimination, demotion, discharge, suspension, threats,
harassment, reprimand, retaliation, or any other manner of discrimination provided by Federal or
State law."   Section 20109(h) provides, in pertinent part:   "Rights Retained by Employee:
Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any
employee under any Federal or State law or under any collective bargaining agreement. . . . "

[26]     The enactment of §20109(g) overruled cases like *Rayner v. Smirl*, 873 F.2d 60 (4th Cir.
1989), and *Sereda*, which had held that FRSA preempted pursuit of a remedy under state law for
retaliatory acts by a railroad for which an employee could seek relief under §20109.

in RLA arbitration, or under some other federal or state law, is, by operation of §20109(f), precluded from pursuing a FRSA claim seeking protection for the same discipline.

There is nothing in the language of subsections (g) and (h) that removes RLA §3 from the scope of §20109(f) or exempts an employee who pursues RLA §3 arbitration from the operation of that provision.  Consequently, subsections (g) and (h) plainly do not "anticipate," as the Secretary would have it, that an employee can challenge the same dismissal concurrently in RLA §3 arbitration and in a DOL complaint proceeding.[27]

In the end, what the Secretary and ARB are really saying amounts to little more than that, as a matter of public policy, they would construe §20109(f) as allowing a railroad employee who challenges his dismissal in RLA arbitration also to seek relief under §20109 because, in their view, this would better serve FRSA's remedial purposes.  But it is axiomatic that an agency's policy preferences cannot override Congress' intent as expressed in a statute's plain language.  *See, e.g.*, *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 188 (1994) ("policy considerations cannot override . . . the text and structure of the Act . . ."); *Pinter v. Dahl*, 486 U.S. 622, 653-54 (1988) ("We must assume that Congress meant

---

[27]    *Gonero v. Union Pacific R.R.*, cited by the ARB (Decision at 7) and the Secretary (Mem. at 19-20), is not to the contrary; if anything, *Gonero* supports NSR's position.  In *Gonero*, the railroad moved to dismiss a former employee's state law claims of wrongful termination and intentional infliction of emotional distress on the ground that §20109(f) barred the employee from pursuing those claims because he had originally filed a FRSA complaint with DOL challenging his dismissal.  The court denied the motion because §§20109(g) and (h) preserve the employee's right to challenge his dismissal under state law, despite his having originally filed a FRSA complaint -- a result fully consistent with the proper operation of the statute, as we have explained.  But the court's holding does not mean that the employee could concurrently pursue to decision both his state law claims and his FRSA complaint.  By the plain terms of §20109(f), the employee, by electing to seek protection under state law, would be barred from continuing to pursue his FRSA complaint.  The question whether complainant Gonero was required to dismiss his FRSA complaint was not presented in the case and did not otherwise have occasion to arise, because Gonero had, in fact, withdrawn his FRSA complaint by the time of the court's decision.

what it said."; accordingly, there is no occasion to consider the plaintiff's policy arguments); *Friends of the Earth, Inc. v. EPA*, 446 F.3d 140, 146 (D.C. Cir. 2006) (The agency offers "a reasonable policy justification for deviating from [the] . . . statute's plain language. Our answer is . . . '[t]he most reliable guide to congressional intent is the legislation the Congress enacted.'") (citation omitted; alteration in original); *Engine Manufacturer's Ass'n v. EPA*, 88 F.3d 1075, 1089 (D.C. Cir. 1996) (an agency cannot "avoid the Congressional intent clearly expressed in the text simply by asserting that its preferred approach would be better policy"); *Ball, Ball & Brosamer, Inc. v. Reich*, 24 F.3d 1447, 1452 (D.C. Cir. 1994) (Secretary of Labor's policy argument that statute should be construed broadly to "accomplish its 'remedial purposes'" does not "offer[] any justification for ignoring the clear language of the Act").

Section 20109(f) is an integral part of the statutory scheme fashioned by Congress and must be given the full effect dictated by its clear and mandatory terms, regardless of the Secretary's and ARB's policy views. *Cf. Henriquez v. Starwood Hotels Resorts Worldwide, Inc.*, 2011 U.S. Dist. LEXIS 111520, at *9-10 (S.D.N.Y. September 29, 2011) ("The election of remedies doctrine, and the choice by Plaintiff to proceed with a complaint through administrative rather than judicial channels, is to be strictly enforced because the rights asserted by Plaintiff are self-limiting, statutorily and code-created."; dismissing plaintiff's claims for lack of jurisdiction, because barred by the election of remedies provisions in the New York State Human Rights Law and the New York City Human Rights Law).[28]

---

[28]    The Secretary suggests (Mem. at 28) that NSR brought this *Leedom* action to avoid the deference that assertedly would be due the ARB's interpretation of §20109(f) under *Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), on review of a final agency decision by the Court of Appeals pursuant to FRSA. As we explain in the next section, there is no assurance that NSR could ever obtain direct appellate review of the September 29, 2011 decision, for reasons distinctive to FRSA.

(continued … )

**III.    NSR Will Not Have A "Meaningful And Adequate Means" Of Obtaining Relief From The ARB's Misinterpretation Of 49 U.S.C. §20109(f) Unless NSR Can Challenge The September 29, 2011 Decision In This Civil Action.**

The ARB's September 29, 2011 decision permits employees who have challenged their discipline in arbitration under RLA §3 to pursue FRSA claims at DOL, in violation of the clear and mandatory language of §20109(f).   Unless NSR can challenge the decision's interpretation of §20109(f) in this civil action, NSR will not have "a meaningful and adequate means of vindicating its statutory rights," *Board of Governors of Federal Reserve v. MCorp Financial, Inc.*, 502 U.S. at 43.

Contrary to the Secretary's assertion (Mem. at 33), NSR *cannot* be assured that it will have an opportunity to obtain court of appeals review of the September 29, 2011 ARB decision at the end of the administrative process, because that process may never be completed -- as a result of circumstances beyond NSR's control.   FRSA gives an employee the unqualified right (after sufficient time has passed without a final decision by the Secretary) to withdraw his case from DOL and bring a *de novo* civil action against the railroad in district court. 49 U.S.C. §20109(d)(3).   Koger has had that right for more than three years.   If he exercises the right,

---

( … continued)

But, beyond that, the ARB's decision would never be entitled to *Chevron* deference in any forum.   Under the two-step *Chevron* framework, an agency decision is not entitled to deference when, at step one, the court, using "traditional tools of statutory construction," determines that "Congress has unambiguously foreclosed the agency's statutory interpretation," *Village of Barrington, Illinois v. STB*, 636 F.3d 650, 659 (D.C. Cir. 2011) (internal quotes and citation omitted).   Put differently, but to the same effect, when "'Congress has directly spoken to the precise question at issue' . . . there is no gap for the agency to fill" and *Chevron* deference does not "come into play."   *RLEA v. NMB*, 29 F.3d at 671 (citations omitted).   The plain language of §20109(f) speaks directly to the question whether pursuit of RLA §3 arbitration constitutes an election of remedies -- dictating an affirmative answer -- and therefore forecloses the contrary conclusion reached by the ARB in its September 29, 2011 decision.   Accordingly, *Chevron* deference would never come into play at any point.

Koger will unilaterally short-circuit the administrative process and deprive NSR of the ability to obtain direct court of appeals review.

Moreover, again contrary to the Secretary's contention (Mem. at 33), a *de novo* civil action in district court initiated by Koger pursuant to §20109(d)(3) plainly would *not* provide NSR with a meaningful and adequate means to obtain relief from the effects of the ARB's September 29, 2011 decision.  Koger's removal of the case from the DOL process would, in itself, deny NSR the opportunity eventually to obtain appellate review of the decision.  It is no answer to say, as the Secretary does (Mem. at 33), that NSR could argue in the district court proceeding that §20109(f) bars Koger's complaint.  The dispositive fact is that the district court action would not constitute a direct review of the ARB decision.  Indeed, the Secretary would not even be a party to such a civil action.  Even if the district court were to disagree with the broad interpretation of §20109(f) announced by the ARB (which is not assured), NSR could not expect, in a civil action in which the Secretary is not a party, to bind the Secretary to the correct interpretation.  Rather, the September 29, 2011 decision would remain unreviewed and still in force, and the Secretary could be expected to continue to treat it as controlling in DOL proceedings on the question of the application of §20109(f) to RLA arbitration.

NSR therefore satisfies the second predicate for *Leedom* jurisdiction for this crucial reason alone.

Beyond that, even if court of appeals review were assured at the end of the administrative process, which it is not because of §20109(d)(3), this would still not provide NSR with a meaningful and adequate opportunity to obtain relief from the September 29, 2011 decision.  Once an employee has elected to pursue arbitration under RLA §3, §20109(f) is intended to protect a railroad from having to go through the separate §20109 investigation

process.  NSR will effectively lose that protection if, as a result of the remand ordered by the ARB, it must complete the §20109 process and obtain a final decision on the merits of Koger's claim before having the opportunity to challenge the ARB's September 29, 2011 decision by eventually seeking review of a final administrative order in a court of appeals pursuant to 49 U.S.C. §20109(d)(4).  *Cf. FTC v. Miller*, 549 F.2d 452, 460 (7th Cir. 1977) ("because the right asserted is the right to be free from investigation -- and not from regulation -- it can never be effectively protected on review of a later order.  Once conducted, the investigation would be a *fait accompli* for which [the company] would have no remedy.").

NSR's inability to be assured of an opportunity to obtain appellate review of the September 29, 2011 decision takes on added significance because of the stakes involved in this case.  The ARB's decision is much more than an interim step in the adjudication of two employees' claims for individual relief.  It is functioning as an interpretive rule stating that an employee's pursuit of RLA arbitration can never trigger application of §20109(f).  This rule is binding on OSHA and DOL administrative law judges, as delegates of the Secretary, in the handling of all other FRSA cases brought by employees under §20109, with the effect that many cases that otherwise should be and would be dismissed administratively by DOL, by reason of §20109(f), are instead being investigated.  Investigations that are not dismissed administratively by reason of §20109(f) because of the September 29, 2011 decision are in excess of the Secretary's authority under §20109.  As a result,  NSR (like all railroads) is being denied the protection §20109(f) was meant to provide, and potentially could be faced with orders that burdensomely and unlawfully seek to force it to provide interim relief to employees, including reinstatement, and with final orders affording the full range of §20109 remedies.

Moreover, the September 29, 2011 decision, by permitting employees to pursue FRSA claims at DOL when they have also pursued RLA arbitration, is destructive of the long established RLA §3 process.  The decision has the effect of undermining the finality of RLA §3 arbitration and creates a certainty that there will be inconsistent and incompatible results between RLA arbitration awards and DOL decisions under FRSA.  The decision also inhibits the ability of NSR and labor unions to resolve disputes over discharges and other discipline and enter into settlements of claims for reinstatement and back pay through the RLA process.

For her part, the Secretary contends (Mem. at 29) that NSR cannot satisfy the second *Leedom* predicate because §20109(f) supposedly does not give a railroad any rights that it could vindicate, in that §20109 was enacted only to protect employees against retaliation.  The Secretary is surely wrong.  Section 20109 overall, of course, is designed to protect employees against retaliation for engaging in FRSA-protected conduct.  But the rights afforded to employees are conditioned in certain respects, in ways that serve to protect the interests of railroads as respondents.  For example, §20109(d)(2)(A)(ii) provides:  "Statute of Limitations.— An action under paragraph (1) shall be commenced not later than 180 days after the date on which the alleged violation of subsection (a), (b) or (c) of this section occurs."  If the Secretary were to adopt a rule saying that, from now on, DOL will investigate any complaint filed up to 360 days after the date on which the alleged violation of FRSA occurred, no one would doubt for a moment that such a rule would deny railroads a right guaranteed to them by FRSA:   the right of repose after 180 days.[29]

---

[29]      *See, e.g.*, *United States v. Kubrick*, 444 U.S. 111, 117 (1979) ("Statutes of limitations . . . represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.' . . . These enactments are statutes of repose;
(continued … )

Just as FRSA's statute of limitations gives a railroad the right not to be subjected to a DOL investigation when a complaint is untimely filed, §20109(f) gives a railroad the right not to be subjected to a DOL investigation when a complaint is filed by an employee who has elected to seek protection under another provision of law.  The September 29, 2011 decision denies NSR that right when an employee has sought protection in RLA §3 arbitration.

## CONCLUSION

NSR's Complaint properly invokes this Court's jurisdiction under *Leedom v. Kyne*.  The Secretary's motion to dismiss should be denied.

Respectfully submitted,

*/s/ Jeffrey S. Berlin*

_____
Jeffrey S. Berlin (D.C. Bar No. 200048)
Mark E. Martin (D.C. Bar No. 373445)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8178
Fax: (202) 736-8711

---

( … continued)
and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts . . . .") (citations omitted).

For another example of a condition on an employee's rights under §20109, §20109(e)(3) provides:  "Possible relief.—Relief in any action under sub-section (d) may include punitive damages in an amount not to exceed $250,000."  Although the provision for punitive damages affords a right to employees, that right is conditioned by the statutory cap.  A decision by the Secretary awarding punitive damages in the amount of $350,000 would plainly violate a railroad's right not to be subjected to liability for punitive damages in excess of the cap.

Thomas A. Shumaker
General Solicitor
Norfolk Southern Corporation
3 Commercial Place
Norfolk, VA 23510
(757) 629-2728

*Attorneys for Plaintiff Norfolk Southern Railway Company*