IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
NORFOLK SOUTHERN RAILWAY                   )
COMPANY,                                   )
                                          )
           Plaintiff,                      )
                                          )
       v.                                  )        Civil Action No. 12-cv-00306 (RWR)
                                          )
HILDA L. SOLIS, Secretary of Labor,        )
                                          )
                                          )
           Defendant.                      )
_____)


**REPLY MEMORANDUM**
**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.      FRSA CLEARLY PRECLUDES THIS COURT'S REVIEW OF THE ARB ORDER….2

II.     THE SECRETARY HAS NOT VIOLATED A "CLEAR AND MANDATORY"
        STATUTORY PROHIBITION. ......................................................................................... 4

        A.      Section 20109(f) Contains No "Clear And Mandatory" Prohibition Against the
                Secretary……………………………………………………………………………..4
        B.      The Secretary Has Not Exceeded Her Authority…………………………………8

III.    PLAINTIFF HAS NO CLEAR STATUTORY RIGHT TO VINDICATE, OR IN THE
        ALTERNATIVE, PLAINTIFF CAN OBTAIN RELIEF IN THE COURT OF
        APPEALS…………………………………………………………………………..22

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Adkins v. Hendrick*, 2012 WL 2178701 (D.S.C. May 29, 2012)………………………...19

*\*Alexander v. Gardner-Denver Co.*,
    415 U.S. 36 (1974)........................................................................ 12, 17, 18

*American Airlines v. Wolens*,
    513 U.S. 219 (1955)................................................................................14

*\*Ass'n of Civilian Technicians v. Fed. Labor Relations Auth.*,
    283 F.3d 339 (D.C. Cir. 2002) ....................................................................5

*Atchinson, Topeka & Santa Fe Ry. Co. v. Buell*,
    480 U.S. 557 (1987).................................................................……………..12, 18

*\*Bd. of Governors, Fed. Reserve Sys. v. MCorp Fin., Inc.*,
    502 U.S. 32 (2006)……………………………………………...........3, 24, 25

*Borg-Warner Protective Services Corp. v. E.E.O.C.*,
    81 F. Supp. 2d 20 (D.D.C. 2000)……………………………………………........6

*Buggs v. Powell*,
    293 F.Supp.2d 135 (D.D.C. 2003)……………………………………………………4

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984)........................................................................ 10, 11

*Chickasaw Nation v. United States*,
    534 U.S. 84(2001)…………………………………………………………………….5

*Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*,
    491 U.S. 299 (1989)........................................................................ 10

*Dart v. United States*,
    848 F.2d 217 (D.C. Cir. 1988)………………………………………………………….6

*Detroit Newspaper Agency v. Nat'l Labor Relations Bd.*,
    286 F.3d 391 (6th Cir. 2002)………………………………………...………………...24

*FDIC v. Bender*,
    127 F.3d 58 (D.C. Cir. 1997)…………………………………………………………...4

*FTC v. Miller*,
    549 F.2d 452 (7th Cir. 1997)…………………………………………………… 22, 25

*Gonero v. Union Pacific R.R. Co.*,
    2009 WL 3378981 (E.D. Cal. Oct. 19, 2009) ......................................... 15, 18, 20, 21

*Graf v. Elgin, Joliet, and Eastern Railway Co.*,
    697 F.2d 771 (7th Cir. 1983) ................................................................................. 12

*Griffith v. Fed. Labor Relations Auth.*,
    842 F.2d 487 (D.C. Cir. 1988) ............................................................................. 4, 9

*Hanover Bank v. Comm'r of Internal Revenue*,
    369 U.S. 672 (1962)…………………………………………………………..5

*Intercollegiate Broadcast System, Inc. v. Copyright Royalty Bd.*,
    574 F.3d 748 (D.C. Cir. 2009) ............................................................................... 10

*Jordan Hospital v. Leavitt*,
    571 F. Supp. 2d 108 (D.D.C. 2008) ......................................................................... 9

*Leedom v. Kyne*,
    358 U.S. 184 (1958).............................................................................................passim

*Long Term Care Partners, LLC v. United States*,
    516 F.3d 225 (4th Cir. 2008) ................................................................................... 9

*Meredith v. Fed. Mine Safety and Health Review Comm'n*,
    177 F.3d 1042 (D.C. Cir. 1999)…………………………………………………...10

*NYUNT v. Chairman, Broadcasting Bd. of Governors*,
    589 F.3d 445 (D.C. Cir. 2009) ............................................................................. 3, 9

*National Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*,
    437 F.3d 1256 (D.C. Cir. 2006) ............................................................................... 9

*Norfolk & Western Ry. Co. v. Am. Train Dispatchers Ass'n*,
    499 U.S. 117 (1991)........................................................................................... 12, 13

*Norman v. Mo. Pac. R.R.*,
    414 F.2d 73 (8th Cir. 1969) ................................................................................... 12

*Physicians Nat'l House Staff Ass'n v. Fanning*,
    642 F.2d 492 (D.C. Cir. 1981) ................................................................................. 8

*Public Citizen v. Office of the U.S. Trade Representatives*,
   970 F.2d 916 (D.C. Cir. 1992) .................................................................................. 22

*Railway Labor Executives' Ass'n v. Nat'l Mediation Board*,
   29 F.3d 655 (D.C. Cir. 1994)……………………………………………………… 6, 7, 8

*Shaw v. District of Columbia*,
   825 F. Supp. 2d 173 (D.D.C. 2011)……..……………………………………………4

*\*Sturm, Ruger & Co. v. Chao*,
   300 F.3d 867 (D.C. Cir. 2002) ...............................................................3, 4, 24, 25

*Terminal R. Ass'n of St. Louis v. Bhd. of R.R. Trainmen*,
   318 U.S. 1 (1934) ..................................................................................................... 11

*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994) ...................................................................................................4

*U.S. Dep't of Justice v. Fed. Labor Relations Auth.*,
   981 F.2d 1339 (D.C. Cir. 1993) .................................................................................6

*United Food and Commercial Workers, Local 400 v. NLRB*,
   694 F.2d 276 (D.C. Cir. 1982) ...............................................................................5, 6

## STATUTES AND REGULATIONS

29 U.S.C § 660 ..................................................................................................................... 15

42 U.S.C. § 1983 .................................................................................................................. 19

45 U.S.C. § 151 ......................................................................................................................6

45 U.S.C. § 152 ...................................................................................................................6, 7

*\*49 U.S.C. § 20109 ...................................................................……………..passim

*\*49 U.S.C. § 42121……………………………………………………………………5, 8

73 Fed. Reg. 8455 (2008) ....................................................................................................15

## LEGISLATIVE MATERIALS

126 Cong. Rec. 26532 (1980) ...........................................................................................16, 17

## ADMINISTRATIVE DECISIONS

*Mercier v. Union Pacific R.R.*, Case No. 2008-FRSA-0004 (June 3, 2009)……………10

## INTRODUCTION

This case stems from two separate assertions in two distinct forums, neither of which belongs in this Court, that Plaintiff violated the rights of Larry Koger, one of its employees. Plaintiff dismissed Koger because he allegedly broke a rule and caused an accident. Koger challenged this allegation by filing a grievance and pursuing arbitration under his collective bargaining agreement ("CBA"). In addition, he filed a separate complaint with the Department of Labor ("DOL") under the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109, alleging that Plaintiff retaliated against him for reporting a work-related personal injury that he sustained during the accident. The DOL's Administrative Review Board ("ARB"), acting on behalf of the Secretary, issued an interlocutory order ("ARB Order") holding that Koger's FRSA complaint was not precluded by his pursuit of a grievance and arbitration under the CBA. Plaintiff disagrees with this Order, incorrectly conflating Koger's two separate claims, and argues that this Court has jurisdiction to strike down the ARB Order and to short-circuit the FRSA administrative proceeding. Plaintiff is wrong on all counts.

Plaintiff's invocation of jurisdiction under *Leedom v. Kyne*, 358 U.S. 184 (1958), is a far-fetched attempt to evade the process that Congress has established for the Secretary to adjudicate FRSA complaints and for the courts of appeal to review the Secretary's orders. For *Leedom* to apply, Plaintiff has to show that: (1) Congress has not foreclosed district court review of the agency's order; (2) the Secretary has violated a "clear and mandatory" statutory limitation on her authority; and (3) § 20109(f) affords Plaintiff a clear right that it cannot vindicate in another forum. Plaintiff fails to show that any of these requirements are met.

First, FRSA clearly precludes this Court's review of the ARB Order. The preclusion of review is so clear that Plaintiff makes no attempt in its Opposition to show otherwise; it only attempts to show that the other two predicates of *Leedom* are met.

1

Second, the plain text of § 20109(f) contains no clear limitation on the Secretary's authority.  Unlike other FRSA provisions that clearly and unambiguously limit the Secretary's authority, § 20109(f) does not even mention the Secretary.  Even if §20109(f) contains such a clear limitation on the Secretary' authority, she has not exceeded it.  Section 20109(f) bars an employee from "seek[ing] protection under [it] and another provision of law…."  49 U.S.C. § 20109(f).  The ARB correctly concluded that this language does not bar an employee who challenges his dismissal under a CBA from pursuing a retaliation claim under FRSA.  Even if the ARB's interpretation of § 20109(f) is erroneous (which it is not), there is no *Leedom* jurisdiction because the interpretation, at a minimum, is plausible.  *Leedom* does not apply where, as here, a plaintiff simply disagrees with an agency's plausible statutory interpretation.

Finally, Plaintiff does not have a clear statutory right to vindicate under § 20109(f).  It is undeniable that Plaintiff is claiming a clear right under § 20109(f) despite the fact that there is no explicit mention of railroad carriers in this provision.  Even if § 20109(f) confers on Plaintiff a clear right, there is no *Leedom* jurisdiction because Plaintiff can seek judicial review of the ARB Order after it is final in the court of appeals.  The Supreme Court has established that *Leedom* does not apply where, as here, a statutory provision clearly allows a party allegedly aggrieved by an administrative order to seek appellate review of the order after it is final.  Accordingly, the Complaint should be dismissed.

## ARGUMENT

## I.      FRSA CLEARLY PRECLUDES THIS COURT'S REVIEW OF THE ARB ORDER.

For *Leedom* jurisdiction to be available, a case must (1) implicate the violation of a clear and mandatory statutory prohibition and (2) arise in a context where there are no alternative avenues to vindicate a clear statutory right.  Pl.'s Opp'n at 3, 15 (acknowledging these two

predicates for *Leedom* jurisdiction).  But Plaintiff ignores the third requirement for *Leedom*

jurisdiction to review a non-final administrative order: Congress must not have foreclosed

district court review of the agency's order.  Indeed, *Leedom*'s limited basis for district court

jurisdiction does not apply where statutory preclusion of such jurisdiction is express.  It is only

where such preclusion "is implied rather than express" that it might be available.  *NYUNT v.*

*Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (citing *Bd. of*

*Governors of the Fed. Reserve Sys v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991); *McBryde v.*

*Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conference of the*

*U.S.*, 264 F.3d 52, 63-64 (D.C. Cir. 2001) ("[*Leedom v.*] *Kyne* involved preclusion that had been

inferred …. )).  *See* Def.'s Mem. at 12 (*Leedom* is "an extremely narrow exception to statutes

that *impliedly* preclude district court review of administrative action." (citing *NYUNT*, 589 F.3d

at 449) (emphasis added)).  A statutory preclusion of review is not implied when there is " 'clear

and convincing' evidence of legislative intent to preclude review."  *McBryde*, 264 F.3d at 63

(citing *MCorp*, 502 U.S. at 44).  Here, there is clear and convincing evidence of congressional

intent to preclude this Court's review of the ARB Order, which means that *Leedom* is

inapplicable.

As Plaintiff effectively concedes, Congress (1) has not authorized this Court to review the

ARB Order at issue here; (2) has only authorized judicial review of final orders of the Secretary

in the courts of appeal; and (3) has explicitly granted jurisdiction to district courts in specified

FRSA actions that <u>do not</u> include claims such as Plaintiff's.  Def.'s Mem. at 10.  Plaintiff also

does not dispute that its claim "requires the interpretation of the parties' rights and duties under a

statute and its regulations."  Def.'s Mem. at 11 (citing *Sturm, Ruger & Co. v. Chao*, 300 F.3d

867, 874 (D.C. Cir. 2002)).  Where a statute gives district courts jurisdiction only in

circumstances nonexistent in a given case, but where an administrative order is reviewable in a

court of appeals, district courts are precluded from exercising jurisdiction.  Def.'s Mem. at 10-11

(citing *Thunder Basin Coal Co v. Reich*, 510 U.S. 200, 207-08 (1994); *Sturm*, 300 F.3d 873-74;

*Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 491 (D.C. Cir. 1988)).

   *Leedom* does not apply in this case because FRSA reveals "clear and convincing"

congressional intent to preclude this Court's review of the ARB Order.  Plaintiff's failure to

argue that FRSA's preclusion of judicial review is implied concedes this "clear and convincing"

intent.  "It is well-established in this Circuit that 'when a plaintiff files an opposition to a

dispositive motion and addresses only certain argument raised by the defendant, a court may

treat those arguments that the plaintiff failed to address as conceded.' "  *Shaw v. District of

Columbia*, 825 F. Supp. 2d 173, 177 (D.D.C. 2011) (quoting *Buggs v. Powell*, 293 F.Supp.2d

135, 141 (D.D.C. 2003) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997)).    Thus,

Plaintiff fails to show that this Court has *Leedom* jurisdiction and the Complaint should be

dismissed.

## II.  THE SECRETARY HAS NOT VIOLATED A "CLEAR AND MANDATORY" STATUTORY PROHIBITION.

### A.  Section 20109(f) Contains No "Clear and Mandatory" Prohibition Against the Secretary.

   Section 20109(f) does not contain a "clear and mandatory" prohibition against the

Secretary, as would be necessary for *Leedom* jurisdiction to exist here, 358 U.S. 188, for the

simple and undeniable reason that it does not even mention the Secretary.  That provision says:

> ELECTION OF REMEDIES.—An employee may not seek protection under both this
> section and another provision of law for the same allegedly unlawful act of the railroad
> carrier.

49 U.S.C. § 20109(f).

4

Besides nowhere mentioning the Secretary, this provision does not describe any limits on her investigative or adjudicatory authority.  Plaintiff admits that "§ 20109(f) does not explicitly say that the Secretary 'shall not' undertake an investigation" under FRSA when an employee has challenged his dismissal in arbitration, Pl.'s Mem. at 21.  *See Hanover Bank v. Comm'r of Internal Revenue*, 369 U.S. 672, 687 (1962) (noting that courts do not "add to or alter the words employed [in a statute] to effect a purpose which does not appear on the face of that statute"); *see also Chickasaw Nation v. United States*, 534 U.S. 84, 89 (2001) (refusing a party's interpretation of a statute that would essentially require the Court to rewrite the statute).  Indeed, Plaintiff can hardly deny that, no matter what § 20109(f) means, the Secretary not only may, but must investigate and adjudicate retaliation complaints under FRSA.  49 U.S.C. § 20109(d)(2), *incorporating the investigation requirement in* 49 U.S.C. § 42121(b)(2).  This obligation necessarily requires the Secretary to determine whether a complainant, such as Koger in this case, has sought protection under § 20109 and "another provision of law" for "the same allegedly unlawful act of the railroad carrier," which in turn requires her to interpret these terms.  As a result, Plaintiff cannot show that that the Secretary acted contrary to a "clear and mandatory" prohibition as needed for *Leedom* jurisdiction.

Plaintiff nonetheless contends that using "tools of statutory analysis" one can interpret § 20109(f) as a limitation on the Secretary's authority.[1]  But given the explicit authority of the Secretary to investigate and adjudicate FRSA complaints described in § 20109(d)(2) and §42121(b)(2), and the lack of an explicit limitation on the Secretary's authority in § 20109(f), such an interpretation is erroneous.  In any event, disputes over statutory interpretation are well

---

[1] Before filing the Complaint in this case, Plaintiff only argued that § 20109(f) imposed a limitation on employees. *See* Pl.'s Opp'n at 13; Compl. ¶ 26.  Plaintiff now contends that the statute also imposes a limitation on the Secretary in order to concoct a *Leedom* argument and get rid of a valid administrative decision that it simply disagrees with.  A "disagreement with the agency's ruling," however, "falls well short of the requirements for *Leedom* jurisdiction." *Ass'n of Civilian Technicians v. Fed. Labor Relations Auth.*, 283 F.3d 339, 344 (D.C. Cir. 2002).

beyond the narrow scope of *Leedom* jurisdiction.  Def.'s Mem. at 14 (citing *United Food and Commercial Workers, Local 400 v. NLRB*, 694 F.2d 276, 278 (D.C. Cir. 1982) (agency must have disregarded a specific and unambiguous statutory directive for *Leedom* to apply); *U.S. Dep't of Justice v. Fed. Labor Relations Auth.*, 981 F. 2d 1339, 1343 (D.C. Cir. 1993) (same)); Def.'s Mem. at 17 (citing, *e.g.*, *Borg-Warner Protective Services Corp. v. E.E.O.C.*, 81 F. Supp. 2d 20, 24 (D.D.C. 2000) (*Leedom* not justified when the dispute is simply over statutory interpretation) citing *Dart v. United States*, 848 F.2d 217, 231 (D.C. Cir. 1988)).

      *Railway Labor Executives' Ass'n v. Nat'l Mediation Board (RLEA)*, 29 F.3d 655 (D.C. Cir.) (en banc), *amended*, 38 F.3d 1224 (D.C. 1994), on which Plaintiff relies, similarly offers no support to Plaintiff's argument that this case involves a statutory prohibition that is sufficiently "clear and mandatory" for *Leedom* purposes.  Pl.'s Opp'n at 17-21.  The statutory prohibition in *RLEA* was clear, as the relevant provision explicitly mentioned the agency whose authority Congress limited and stated in clear terms what Congress intended the agency to do.

      In *RLEA*, the National Mediation Board decided that it could investigate or resolve representation disputes either *sua sponte* or pursuant to a petition from a carrier even though the statute explicitly provided that "[i]f any *dispute* shall arise *among a carrier's employees* …it shall be the duty of the Mediation Board, *upon request of either party to the dispute*, to investigate such dispute[s]…."  29 F.3d at 665 (citing 45 U.S.C. § 152, Ninth (emphasis in original)).  The court said that it was "perfectly clear" from the language of this statutory provision and undisputed by the Mediation Board that neither a carrier nor the Mediation Board was a "party" under the provision, so there was no authority to investigate a dispute absent a request from an employee.[2]  *Id.*  Although the statute did not include a negative ("shall not")

---

[2] The court referred to other provisions in the statute and to legislative history just to *confirm* what was "perfectly clear" from the plain text of the statute, not to determine the meaning of the statute, as Plaintiff suggests.  *RLEA,* 29

command, the court held that *Leedom* also applies when an agency violates affirmative ("shall")

commands. *RLEA*, 29 F.3d at 662.[3]  But the court of appeals' recognition in *RLEA* that *Leedom*

applies to affirmative commands offers absolutely no support to Plaintiff's characterization of

*RLEA* as allowing *Leedom* jurisdiction even when the relevant statutory provision does not

explicitly mention the agency whose authority Congress is allegedly limiting.  *RLEA* cannot

possibly support such a distorted characterization because the relevant statutory provision in that

case explicitly mentioned the Mediation Board and explicitly described the pre-conditions for it

to conduct an investigation.  Indeed, Plaintiff cites no case where a court has based its exercise of

*Leedom* jurisdiction on a statutory provision that does not explicitly mention the agency whose

authority Congress is supposedly limiting.[4]

     The court of appeals in *RLEA* evaluated other provisions in the relevant statute and

observed that, "where Congress meant to endow carriers with the right to invoke the Board's

jurisdiction, or to authorize the Board to *offer* its services, it did so explicitly."  *Id.* at 666

(emphasis in original) (citing 45 U.S.C. § 155, First (1988)).   *See id.* at 665-666 ("[W]here

Congress intended carriers and employees to be treated alike (that is, like "parties") with respect

to the resolution of particular disputes, this is made plain in the statute.") (citing, *e.g.*,  45 U.S.C.

§ 152, Sixth (1988)).  "The fact that Congress omitted equivalent [explicit] language in Section

---

F.3d at 665 ("Reference to other sections of the RLA [Railway Labor Act, 45 U.S.C. § 151] *confirms* that Section 2, Ninth does not contemplate action-initiating roles either for the Board or for carriers.") (emphasis added); *id.* at 669 ("Our review of the legislative history thus *confirms* our reading of the statutory text ….") (emphasis added)).

[3] Contrary to Plaintiff's suggestion, Defendant recognized in her Memorandum that FRSA provisions containing affirmative commands were within the scope of *Leedom*.  Def.'s Mem. at 15 (citing, *e.g.*, 49 U.S.C. § 20109(d)(2)(A), *incorporating* 49 U.S.C. § 4212(b)(2)(B)(i); 49 U.S.C § 20109(i)(2)).

[4] *Gracey* also offers no support to Plaintiff.  Besides being distinguishable from this case because the relevant statutory provision in that case explicitly mentions the Secretary, *Gracey* only mentions *Leedom* in a footnote without any discussion or analysis.  29 F.3d at 674 n.1.  That a centerpiece of Plaintiff's argument is a non-binding case with a passing reference to *Leedom* in a footnote reveals just how much support there is in the case law for Plaintiff's *Leedom* argument.

2, Ninth" led the court to conclude that "Congress intended neither carriers nor the Board to initiate representation proceedings." *Id.* at 666.

By contrast to the provision at issue in *RLEA*, § 20109(f) does not even mention the Secretary, much less clearly express what Congress intended the Secretary to do.  This is starkly different from other provisions in § 20109, where Congress explicitly expressed its intent to limit the authority of the Secretary or other Executive Branch officials.  Def.'s Mem. at 15 (citing, *e.g.*, 49 U.S.C. § 20109(d)(2)(A), *incorporating* 49 U.S.C. § 42121(b)(2)(B)(i) ("The Secretary of Labor *shall* dismiss a complaint filed under this subsection and *shall not* conduct an investigation…unless the complaint makes a prima facie showing that behavior described in paragraphs (1) through (4) of subsection (a) was a contributing factor in the unfavorable personnel action alleged in the complaint.") (emphasis added)).  No "tools of statutory analysis" are necessary to understand these limitations on the Secretary's authority because the language is clear.  The fact that Congress omitted from § 20109(f) equivalent clear language mentioning the Secretary and specifying what she could or could not do reveals that this section is not intended as a limitation on the Secretary's authority.  Because § 20109(f) does not contain a specific, clear, and mandatory limitation against the Secretary's authority, and in light of other provisions in FRSA containing explicit limitations on the Secretary's authority, there is no plausible *Leedom* argument in this case and the Complaint should be dismissed.  Def.'s Mem. at 14-16.

**B.  The Secretary Has Not Exceeded Her Authority.**

Assuming *arguendo* that Plaintiff can show that § 20109(f) contains a "clear and mandatory" statutory prohibition against the Secretary, Plaintiff still has to show that the Secretary has clearly exceeded this limitation on her authority.  *Leedom*, 358 U.S. at 188; *Physicians Nat'l House Staff Ass'n v. Fanning*, 642 F.2d 496 n.4 (D.C. Cir. 1981).  The only way

that Plaintiff can meet this requirement is by showing that § 20109(f) can <u>only</u> be read as precluding the Secretary from investigating and adjudicating a FRSA complaint when an employee has challenged his dismissal through a grievance and arbitration process.  Def.'s Mem. at 17.  This requires Plaintiff to show that the only plausible interpretation of an employee's filing of a grievance is that he "seeks protection" under the RLA for "the same allegedly unlawful act of the railroad carrier" that the employee "seeks protection" for under § 20109.

It is well established, however, that if the ARB has provided a colorable or plausible interpretation of the statute, *Leedom* does not apply.  Def.'s Mem. at 16-17 (citing, *e.g.*, *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1264 (D.C. Cir. 2006); *Griffith*, 842 F.2d at 494; *Jordan Hospital v. Leavitt*, 571 F.Supp. 2d 108, 117 (D.D.C. 2008); *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 234 (4th Cir. 2008)).  Even if the ARB's plausible statutory interpretation is erroneous, Plaintiff cannot invoke *Leedom* to contest it because disputes over statutory interpretation are beyond the narrow scope of *Leedom*.  Def.'s Mem. at 17 (citing, *e.g.*, *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964) (the *Leedom* exception is "not to be extended to permit plenary district court review of [agency] orders … whenever it can be said that an erroneous assessment … has led [the agency] to a conclusion which does not comport with the law.")).  This is such a heavy burden that the Court of Appeals for the D.C. Circuit has described an attempt to establish *Leedom* jurisdiction as "essentially a Hail Mary pass-[that] in court as in foot-ball … rarely succeeds."  Def.'s Mem. at 13 (quoting *NYUNT*, 589 F.3d at 449 (no *Leedom* jurisdiction even if the agency "has misinterpreted or otherwise evaded its statutory obligation")).[5]

---

[5] Plaintiff incorrectly states that the question under *Leedom* is just the same as in "any statutory interpretation case." Pl.'s Opp'n at 19.  Plaintiff has a heavier burden here; it needs to show that its interpretation is the only plausible one.  If the Court finds that the statute is ambiguous, Plaintiff has failed to meet this burden and the Complaint should be dismissed.  Def.'s Mem. at 28.

That the ARB's reading of the statute is correct is clear from the language of the statute itself.[6]  "[T]he meaning of statutory language, plain or not, depends on context" and the words in a statute must be read "with a view to their place in the overall statutory scheme[.]"  Def.'s Mem. at 25-26 (quoting *Intercollegiate Broadcast System, Inc. v. Copyright Royalty Bd.,* 574 F.3d 748, 771 (D.C. Cir. 2009); *Meredith v. Fed. Mine Safety and Health Review Comm'n*, 177 F.3d 1042, 1054 (D.C. Cir. 1999)).  There is no dispute that the term "this section" in § 20109(f) refers to § 20109.  And it also cannot be disputed that the "unlawful act" from which FRSA protects employees consists of discrimination and retaliation by railroad carriers for reporting safety violations or work-related injuries.  49 U.S.C. § 20109(a).  This is the relevant context and overall statutory scheme that controls the meaning of § 20109(f).

The ARB correctly concluded that the term "another provision of law" "does not encompass grievances filed pursuant to a 'collective bargaining agreement,' which is not 'another provision of law' but is instead a contractual agreement."[7]  Compl. Ex. A at 6.  The only inquiry in a grievance and arbitration process under a CBA is whether the parties have acted according to the contractual terms of the CBA.  Def.'s Mem. at 22 (citing *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 307 (1989) (the issue in arbitration is whether a party has a contractual right to take action under the terms of a CBA)).  *See* Pl.'s Opp'n at 26 (in

---

[6] The fact that an Administrative Law Judge ("ALJ") in a different case, *Mercier v. Union Pacific R.R.*, Case No. 2008-FRSA-0004 (June 3, 2009), interpreted § 20109(f) the same way as the ARB did here lends plausibility to the ARB's interpretation.  Def.'s Mem. at 17-18.  *See* Pl.'s Opp'n at 14.  Plaintiff contends that this is of no consequence because the court in *RLEA* found *Leedom* jurisdiction even though the judges did not all vote the same way.  Pl.'s Opp'n at 17.  However, multiple issues affected the judges' votes in *RLEA*.  *See RLEA*, 29 F.3d at 674-681 (Williams, dissenting) (dispute also included, among other things, the effect of the APA on *Switchmen's Union v. Nat'l Mediation Bd.*, 320 U.S. 297 (1943), whether the issue before the Court was jurisdictional, and the effect of *Chevron* deference).  In contrast, the ALJ in *Mercier* was considering only one issue.  In any event, the ARB's interpretation is not only plausible because it was validated by an independent ALJ, but also because it is correct.

[7] In Koger's FRSA proceeding, the ALJ decided that § 20109(f) barred him from pursuing the complaint because he had challenged his dismissal in arbitration.  Pl.'s Opp'n at 14.  But this does not support Plaintiff's argument the same way as the decision of the ALJ in *Mercier* supports Defendant's position because Plaintiff has to show that its interpretation is the only plausible one.  In contrast, for *Leedom* to be inapplicable, Defendant's interpretation of the statute needs to be simply a plausible one.

"arbitration an employee 'seeks protection' … for the alleged violation of his labor agreement rights."). Indeed, in this case, the issue in the grievance/arbitration was whether Koger violated a rule requiring him to alert his locomotive engineer to a red signal. Pl.'s Opp'n at 12. The terms of the RLA are irrelevant for the resolution of this issue because the RLA, despite requiring the formation of CBAs and establishing a process for resolving disputes regarding the terms of CBAs, does not require CBAs to provide any specific protections. Def.'s Mem. at 21 (citing *Terminal R. Ass'n of St. Louis v. Bhd. of R.R. Trainmen*, 318 U.S. 1, 6 (1943)). As a matter of logic, an employee cannot "seek protection" under the RLA in a grievance and arbitration process because the RLA offers no substantive protections for the employee to claim in that process. Thus, an employee can only "seek protection" under the CBA because it is the CBA that provides the rights, if any, that the employee can claim in the grievance and arbitration process. Courts have recognized this logic. Def.'s Mem. at 21-24.

Arbitrators also have no authority to consider retaliation/discrimination claims. Def.'s Mem. at 22-23, 30.[8] Accordingly, an employee who files a grievance and pursues arbitration under a CBA cannot "seek protection" for retaliation and discrimination by railroad carriers for reporting safety violations or work-related injuries, which is the "unlawful act" that the employee "seeks protection" for under § 20109. Therefore, an employee does not "seek protection" in arbitration for the "same allegedly unlawful act" that he "seek[s] protection" for under § 20109.[9]

---

[8] Plaintiff concedes multiple times in his Opposition that an employee may only vindicate his rights under a CBA in arbitration pursuant to the RLA. *See, e.g.*, Pl.'s Opp'n at 26 (in "arbitration an employee 'seeks protection' … for the alleged violation of his labor agreement rights."); *id* at 6 (RLA establishes a process for resolving disputes over the interpretation or application of CBAs concerning rates of pay, rules, or working conditions); *id.* at 22 ("RLA § 3 compelled Koger to go to arbitration if he wished to challenge his dismissal as assertedly in violation of his labor agreement.").

[9] Plaintiff mistakenly contends that "*Chevron* deference would never come into play at any point." Pl.'s Opp'n at 38 n.28. If the Complaint is dismissed (as it should be), Koger's complaint is fully adjudicated, and Plaintiff challenges the ARB's interpretation on appeal, the court of appeals may find that the relevant statutory provisions are ambiguous and afford *Chevron* deference to the ARB's interpretation. Def.'s Mem. at 28.

Plaintiff concedes that "the substance of the right the employee seeks to vindicate" in arbitration is not in the RLA, but rather in a "labor agreement."  Pl.'s Opp'n at 25, 31.  But Plaintiff argues that, first, an employee who files a grievance and pursues arbitration does not seek protection under a CBA, a contract, but rather under the RLA, Pl.'s Mem. at 26, and, second, that § 20109(f) does not require the other "provision of law" to contain any substantive right that the employee can vindicate, Pl.'s Opp'n at 24.  Both arguments are meritless.

First, it is well settled that CBAs are contracts and that an employee who files a grievance and pursues arbitration is vindicating the contractual rights in a CBA even if the CBA is established pursuant to the RLA.  Def.'s Mem. at 21- 22 (citing, *e.g.*, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49-50 (1974); *Norman v. Pac. R.R.*, 414 F.2d 73, 81-83 (8th Cir. 1969) (distinguishing between statutory rights under Title VII and contractual rights under a CBA established pursuant to the RLA).  *See Atchinson, Topeka and Santa Fe Railway Co. v. Buell*, 480 U.S. 557, 562-65 (1987) (distinguishing between rights under a CBA established pursuant to the RLA and statutory rights under FELA); *Graf v. Elgin, Joliet & Eastern Ry.*, 697 F.2d 771 (7th Cir. 1983).[10]  Indeed, § 20109(h) distinguishes between the rights and remedies of an employee under federal and state law and his rights and remedies under "*any collective bargaining agreement*," and provides that FRSA rights and remedies cannot be waived by these agreements.  49 U.S.C. § 20109 (h) (emphasis added).  In addition, an employee cannot be considered to "seek protection" under the RLA when he challenges his dismissal in arbitration

---

[10] Plaintiff argues that *Dispatchers* essentially overruled *Graf v. Elgin, Joliet & Eastern Ry.*, 697 F.2d 771 (7th Cir. 1983), Pl.'s Opp'n at 27, which held that disputes under a CBA do not arise under the RLA despite the fact that the RLA regulates CBAs in the railroad industry.  Def.'s Mem. at 19.  But, as Plaintiff itself suggests, the issue in *Graf* was different from the issue in *Dispatchers*, so *Dispatchers* cannot affect the holding in *Graf*.  Since *Graf* describes the relationship between the RLA and a CBA, it informs the issue in this case.  In any event, there is no conflict between *Dispatchers* and *Graf* because the Court in *Dispatchers* made clear that CBAs are contracts despite the fact that they are enforceable under the RLA.  This conclusion is consistent with *Buell* and *Norman*, which explain that the rights in a CBA are not statutory despite the fact that a CBA is formed pursuant to the RLA.  *See Buell*, 480 U.S. at 562-65; *Norman*, 414 F.2d at 81-83.

for the "same...unlawful act" that he seeks protection for under § 20109(f) because the RLA does not protect an employee from the same unlawful act— retaliation and discrimination for whistleblowing activities—that § 20109(f) forbids.  Therefore, the ARB correctly concluded that Koger did not seek protection under "another provision of law" when he filed a grievance and pursued arbitration.

Plaintiff contends that the Supreme Court in *Dispatchers* essentially held that employees who file a grievance and pursue arbitration seek protection under the RLA, not a CBA.  Pl.'s Opp'n at 27-28.  This argument stretches the holding in *Dispatchers* to untenable proportions. The Court in *Dispatchers* held that the term "all other law" in the Interstate Commerce Act ("ICA"), a statute exempting railroad carriers from "the antitrust laws and from all other law" when the Interstate Commerce Commission approves a railroad consolidation, was "broad enough to include laws that govern the obligations imposed by *a contract*."  Def.'s Mem. at 24 (citing *Dispatchers*, 499 U.S. at 129 (emphasis added)).  The Court explicitly stated that CBAs are contracts, but held that railroad carriers were exempt from their contractual obligations under CBAs because the ICA superseded the RLA, the law pursuant to which CBAs were formed. *Dispatchers*, 499 U.S. at 129-132.

Plaintiff also incorrectly contends that the holding in *Dispatchers* "rests on the breadth of the words 'all other law' and … not on the policies of the ICA."  Pl.'s Opp'n at 27.  The Court said that its holding was grounded on the national policy promoting railroad carrier consolidation of the ICA.  *See Dispatchers*, 499 U.S. at 119 ("the [ICA] … contains the current statement of this national policy [promoting railroad carrier consolidation]."); *id.* at 132 ("Our determination that [the ICA] supersedes collective-bargaining obligations via the RLA …makes sense of the consolidation provisions of the [ICA.]"); *id.* at 133 ("If [the ICA] did not apply to bargaining

agreement enforceable under the RLA, rail carrier consolidations would be difficult, if not

impossible, to achieve.").   It also emphasized in a subsequent case that its interpretation of the

term "all other law" in *Dispatchers* did not apply in every context.   Def.'s Mem. at 26 (citing

*Am. Airlines v. Wolens*, 513 U.S. 219, 229 n.6, 228-29 (1955)).   The applicable principle from

*Dispatchers* is that the national policy of a statute informs the construction of that statute's

language.   Construing the term "another provision of law" in § 20109(f) in light of the national

policy of FRSA to enhance the remedies of employees supports the Secretary's interpretation of

the this term as referring only to actual provisions of positive law, not that of Plaintiff's

overbroad reading of the term.   Def.'s Mem. at 26 (citations omitted).

Second, for an employee to "seek protection" under § 20109 and "another provision of

law for the same allegedly unlawful act of the railroad carrier," the other "provision of law" must

afford protection to employees for the "same … unlawful act" that the employee "seeks

protection" for under § 20109 – here, retaliation and discrimination for reporting safety

violations or work-related injuries.   *See* 49 U.S.C. § 20109(a).   The term "another provision of

law" cannot be read in isolation as Plaintiff pretends.   Rather, its meaning is derived from the

other terms in § 20109(f) and the overall statutory scheme.   Def.'s Mem. at 25.   Specifically, it is

defined by the term "this section," which immediately precedes it.   In addition, the term

"provision of law" is modified by the adjective "another," which suggests that the "provision of

law," while different from "this section," is of the same kind as "this section."   *See* MERRIAM-

WEBSTER DICTIONARY, at http://www.merriam-webster.com/dictionary/another;

DICTIONARY.COM, at http://dictionary.reference.com/browse/another.   The meaning must also

take into account the term "for the same allegedly unlawful act."   The "unlawful act" that §

20109 prohibits is retaliation and discrimination against employees for whistleblowing activities.

*See* 49 U.S.C. §20109(a).  Therefore, the sentence suggests that "another provision of law" refers to statutory provisions like § 20109 containing substantive protections for employees against retaliation and discrimination for reporting safety violations.[11]

Legislative history confirms this meaning of the term "another provision of law."  Section 20109(f) was established "to prevent, for example, an employee from getting double the backpay, compensatory damages, and punitive damages the employee is entitled to by seeking protection under both the *Occupational Safety and Health Act of 1970*, 29 U.S.C. [§] 660(c), and Section 20109."  Def.'s Mem. at 20 (quoting 73 Fed. Reg. 8455 (2008) (emphasis added)).  The Occupational Safety and Health Act ("OSHA") is a statute, like FRSA, affording substantive protections to employees who report safety violations against discrimination and retaliation by their employers.  This legislative history reveals that "another provision of law" refers to statutes, like the OSHA and FRSA, affording these substantive protections to employees.[12]

Plaintiff contends that § 20109(f) was not only enacted to prevent an employee from pursuing remedies under FRSA and OSHA.  Pl.'s Opp'n at 31 n. 23.  However, Plaintiff offers no evidence that Congress had other statutes in mind, especially ones like the RLA that afford no

---

[11] Plaintiff cites to a district court case in Iowa that interpreted the term "same allegedly unlawful act" as meaning "the act itself," not "the character or motivation of the employer's allegedly unlawful act."  Pl.'s Opp'n at 29 (citing *Sereda v. Burlington Northern Santa Fe R.R.*, 2005 U.S. District LEXIS 5598, at *13).  This case is immaterial. First, *Sereda* is of questionable validity because it was decided before the 2007 amendments to FRSA, which transferred authority to the DOL to investigate FRSA complaints and added subsections (g) and (h).  The case is inapplicable because it did not take into account §§ 20109(g) and (h), which govern the relationship between FRSA rights, other rights under federal and state law, and CBA rights.  These provisions establish that FRSA does not diminish other statutory and contractual rights. Indeed, Plaintiff recognizes that *Sereda* was overruled by § 20109(g).  Pl.'s Opp'n at 35 n.26.  Second, the court's statement cannot defeat the fact that the specific "unlawful act" that § 20109 prohibits is retaliation and discrimination for reporting safety violations or work-related injuries. Section 20109 does not prohibit other types of actions that may be unlawful, such as dismissing an employee in violation of a CBA.  Thus, filing a FRSA claim and seeking protection for different adverse actions, such as a dismissal in violation of a CBA, is not barred by § 20109(f).

[12] In addition, this legislative history refutes Plaintiff's contention that Defendant "just made-up" that Congress' intent in enacting § 20109(f) was to prevent an employer from "having to pay duplicative damages to the employee at the conclusion of each of the two proceedings."  Pl.'s Opp'n at 31 n.23.  *See also Gonero v. Union Pacific R.R. Co.*, 2009 WL 3378987, at *3 (E.D. Cal.) (explaining that the election of remedies doctrine does not bar a plaintiff from pursuing an action against an identical defendant in several courts for the enforcement of different and distinct rights or the redress of different and distinct wrongs, but that there can only be one recovery).

substantive protections to employees against discrimination/retaliation for whistleblowing

activities.  Plaintiff certainly does not show that Congress had CBAs in mind.  The best

indication of the meaning of the term "another provision of law" in § 20109(f), besides the

context and overall statutory scheme, is the explicit reference in the legislative history to OSHA.

There are other indications that the RLA, while clearly a statute, is not the other

"provision of law" referenced in § 20109(f).  First, before the 2007 amendments to FRSA, §

20109 complaints were adjudicated according to the procedures referenced in the RLA, which

included arbitration.  The RLA could not have originally constituted "another provision of law"

because an employee was required to submit FRSA claims to arbitration.  Def.'s Mem. at 21 n.6.

Second, Congress' intent in passing the 2007 amendment was to take FRSA complaints out of

arbitration and to authorize the Secretary to investigate and adjudicate these complaints.  Def.'s

Mem. at 30.   Accepting Plaintiff's interpretation of the term "another provision of law" would

leave many employees without a forum to vindicate federal statutory rights and undermine the

congressional mandate of the Secretary to ensure railroad safety.  Def.'s Mem. at 30.  This is

certainly not what Congress intended.

The only legislative history that Plaintiff relies on to support its argument that "another

provision of law" encompasses arbitration is a short part of a statement saying that § 20109(f) is

intended to prevent "unneeded litigation and inconsistent results."  Pl.'s Opp'n at 31 (citing 126

Cong. Rec. 26532 (Sept. 22, 1980) (remarks of Congressman Florio).  But nothing suggests that

this congressman had a grievance and arbitration process in mind.  Indeed, earlier in the same

statement, the congressman says that § 20109(f) is a provision "clarifying the relationship

between the remedy provided here and a possible separate remedy under *OSHA*."  Pl.'s Opp'n at

10 (citing 126 Cong. Rec. 26532 (Sept. 22, 1980) (emphasis added)).  This is an undeniable

indication that Congress intended the term "another provision of law" to mean OSHA and similar statutes protecting employees from retaliation and discrimination for reporting safety violations.

In any event, pursuing arbitration under a CBA does not make FRSA complaints "unneeded litigation" for three reasons.  First, despite relating to a common factual occurrence, the inquiry in FRSA (retaliation/discrimination) is different from the inquiry in arbitration (compliance with terms of a CBA).  Second, FRSA provides relief (compensatory and punitive damages) unavailable in arbitration.  And third, arbitration may be ill-suited for promoting railroad safety, the ultimate purpose of FRSA.  Def.'s Mem. at 23-24.

There is also no risk of inconsistent results.  As the Supreme Court has explicitly stated, there is no "inconsistency of results from permitting [CBA rights and federal statutory rights] to be enforced in their respectively appropriate forums."  *Alexander*, 415 U.S. at 50.  *See* Def.'s Mem. at 24.  Plaintiff argues that the Supreme Court's analytical approach is "plainly incorrect" because an arbitrator "might find in favor of the railroad and order no relief, while DOL could find in favor of the employee and order reinstatement, back pay, and damages."  Pl.'s Opp'n at 33.  But these results are not inconsistent.  The inquiry in arbitration is whether the terms of the CBA were violated, while the inquiry in a FRSA complaint is whether the carrier retaliated or discriminated against the employee for whistleblowing activities.  It is possible for an employee's dismissal to be consistent with the terms of a CBA because the employee may have, in fact, broken a rule, while possibly being in violation of FRSA because the dismissal may have been motivated in part by retaliation.  In such a scenario, there would be no relief under the CBA, but there could be relief under FRSA.  These results are not inconsistent because they stem from different inquiries despite sharing a common factual occurrence.  Def.'s Mem. at 22-23.  To

the extent that both of these proceedings result in a back pay award, a carrier can rely on §

20109(f) to avoid duplicative recovery.  Def.'s Mem. at 20 (citing Compl. Ex. A at 4, 9; *Gonero*

*v. Union Pacific R.R. Co.*, 2009 WL 3378987, at *3-*6 (E.D. Cal. Oct. 19, 2009) (section

20109(f) does not bar an employee from filing both a FRSA complaint and state common law

claims related to unlawful dismissal from employment, but it rather bars duplicative recovery)).

       In its quest for this Court to ignore *Alexander* (which it somewhat inconsistently contends

does not undercut its position), Plaintiff also argues that the case has no application where, as

here, there is a statutory election-of-remedies provision, Pl.'s Opp'n at 33, and that the

arbitration involved in *Alexander* was not mandated by a statute, Pl.'s Opp'n at 26.  These

differences do not undermine the Supreme Court's conclusions in *Alexander* that an employee

can only seek to vindicate contractual rights in arbitration, 415 U.S. at 49, that these contractual

rights are different from federal statutory rights, 415 U.S. at 49-50, that "no inconsistency results

from permitting both rights to be enforced in their respectively appropriate forums," 415 U.S. at

50,  that "the relationship between the forums is complementary since consideration of the claim

by both forums may promote policies underlying each," 415 U.S. at 50-51, and that "the

arbitrator has authority to resolve only questions of contractual rights," 415 U.S. at 53-54.  In

addition, the Supreme Court has applied *Alexander* in cases involving arbitration mandated by

the RLA.  *See Buell*, 480 U.S. at 564-565.  Accordingly, this Court cannot ignore *Alexander*.[13]

       Finding no support in the language of § 20109(f), the structure of § 20109, or the

legislative history, Plaintiff attempts an ill-conceived analogy between § 20109(f) and 42 U.S.C.

§ 1983.  Plaintiff argues that the other "provision of law" in § 20109(f) need not afford an

---

[13] Plaintiff incorrectly suggests that the Supreme Court has "long since repudiated" the rationale in *Alexander*.  Pl.'s Opp'n at 33 n.24.  While the Supreme Court has recognized "some tension" between *Alexander* and *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30-32 (1991), it has not repudiated *Alexander*.  *See Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 76-77 (1998).

employee any right that he can seek to vindicate because "no one would doubt for a moment" that a person suing under § 1983 seeks protection under that statute despite the fact that it affords no substantive rights.  Pl.'s Opp'n at 25.  But just because courts in § 1983 cases have said in passing that a plaintiff can seek or invoke the protection of § 1983 for violations of federal rights by state officials does not mean that a railroad employee who challenges his dismissal by filing a grievance and pursuing arbitration "seek[s] protection" under the RLA for purposes of § 20109(f).  The § 1983 cases Plaintiff cites are inapplicable, especially given the significant differences between § 1983 and the RLA.

Section 1983 was enacted as part of the Civil Rights Act of 1817 to provide a private civil cause of action for citizens to sue persons who, under color of state law, violated their federal constitutional and statutory rights.  *Adkins v. Hendrick*, 2012 WL 2178701, *1 n.1 (D.S.C.) (citing *Jennings v. Davis*, 476 F.2d 1271 (8th Cir. 1973)).  The RLA is not a private civil cause of action for violations of federal rights, but rather establishes a mandatory process for the resolution of disputes concerning the terms of a CBA.  Def.'s Mem. at 2 (citations omitted).  In addition, while it can be said colloquially that § 1983 can be used to protect a citizen's federal civil rights, it cannot be said, even colloquially, that the RLA can be used to protect federal rights like those under FRSA.  *See* Def.'s Mem. 22-23, 29; Pl.'s Opp'n at 22, 26.  Therefore, an employee does not "seek protection" under the RLA for purposes of § 20109(f) when he files a grievance and pursues arbitration.

Sections 20109(g) and (h) of FRSA confirm that § 20109(f) does not bar concurrent arbitration and FRSA claims.  Section 20109(g) establishes that nothing in § 20109, which obviously includes § 20109(f), "preempts or diminishes" any other protections against discrimination or retaliation in federal or state law.  Similarly, § 20109(h) establishes that

nothing in § 20109 "preempts or diminishes" the rights or remedies of any employee under any Federal or State law or under *any collective bargaining agreement*" and that FRSA rights and remedies *cannot be waived* "by agreement, policy, form, or condition of employment."  49 U.S.C. § 20109 (h) (emphasis added).  These provisions make three points clear.

First, Congress distinguishes between federal/state laws and CBAs for FRSA purposes. This supports the ARB's conclusion that the rights conferred by a CBA are not conferred by "another provision of law."  Second, § 20109(f) does not diminish the rights or remedies of an employee under a CBA.  And third, a CBA cannot waive FRSA rights.  If nothing in FRSA can diminish rights under a CBA, then nothing in a CBA can diminish rights under FRSA.  This is plain from § 20109(h), which establishes that a CBA cannot waive FRSA rights.  Accepting Plaintiff's argument that an employee who files a grievance and pursues arbitration under a CBA waives his right to file a FRSA claim is inconsistent with § 20109(h).  In essence, Plaintiff and its *Amicus* would present employees with the choice of either (a) filing a complaint under FRSA alleging retaliation and discrimination for reporting safety violations or work-related injuries, or (b) arguing in arbitration that the adverse employment action was unjustified under the terms of the CBA.  Pl.'s Opp'n at 34; Amicus Br. at 3-4.  Besides the fact that, as explained above, § 20109(f) does not require an employee to make this false choice, such an interpretation would effectively invalidate § 20109(h) because exercising CBA rights would waive FRSA rights.

A court that has considered a similar issue has rejected Plaintiff's view that §§ 20109(g) and (h) are only about "preserving rights" and do not allow proceedings concurrent with a FRSA complaint.  Pl.'s Opp'n at 35, 36 n.27.  In *Gonero*, a rail employee filed both a FRSA complaint and a claim under state law.  2009 WL 3378987, at *1-*3.  Although the plaintiff withdrew his FRSA claim shortly after filing the suit in state court, the court considered the effect of the FRSA

complaint on the state law claims.  First, the court established that ordinarily to " 'elect' a remedy … requires more than the mere commencement of a suit: 'a plaintiff may pursue an action against an identical defendant in several courts at the same time … [b]ut … there can be only one recovery.' "  *Id.* at *3 (citing *Sears, Roebuck & Co. v. Metro. Engravers, Ltd.*, 245 F.2d 67, 69-70 (9th Cir. 1956)).  The filing of "a complaint with [DOL] alleging violations under FRSA … [is] not … enough to invoke the doctrine of election of remedies …."  *Id.  See id*. at *5 (explicitly rejecting the "argument that the mere filing of a complaint, absent any element of estoppel, constitutes and 'election' " for purposes of § 20109(f)).  This categorically refutes Plaintiff's contention that an employee "seeks protection" for purposes of § 20109(f) simply by filing or pursuing a claim.  Pl.'s Opp'n at 30 n.22, 31 n.23.  Second, the court stated that the "election of remedies doctrine … 'has no application where a party has different remedies for the enforcement of different and distinct rights or the redress of different and distinct wrongs.' "  *Id.* (quoting *Latman v. Burdette*, 366 F.3d 774, 783 (9th Cir. 2004)).  This supports the ARB's reasoning that § 20109(f) does not bar an employee from pursuing both a FRSA complaint and arbitration because these constitute "distinct rights" for the redress of "different wrongs."  And third, the court concluded that §§ 20109(g) and (h) "clarify that railroad employees do not forfeit their rights under state law when they invoke the protections of the FRSA."  *Id.* at *5.  This refutes Plaintiff's argument that an employee cannot pursue to decision both a FRSA complaint and arbitration.[14]  Pl.'s Opp'n at 36 n.27.  "Interpreting Subsection (f) [as Plaintiff suggests]

---

[14] To the extent that Plaintiff suggests that the timing of the filing of a FRSA complaint and another action matter for purposes of §§ 20109(f), (g), and (h), *see* Pl.'s Opp'n at 36 n.27, *Gonero* does not lend support to that view.  To be sure, *Gonero* noted that Koger's case was different because he arbitrated his dismissal before filing a FRSA claim. 2009 WL 3378987, at *5.  But the court did not say that the timing of the filing of the suits was what could constitute an "election of remedies."  Rather, the court said that obtaining a remedy is what can constitute an "election."  *Id.*  In this case, after the FRSA complaint is fully adjudicated, § 20109(f) may bar Koger from obtaining duplicative remedies, but not punitive damages, compensatory damages, and attorney's fees, which he did not and could not have obtained in arbitration.  *See* Compl. Ex. A at 8.

would clearly diminish the rights of railroad workers, and is an interpretation which the statutory language of Subsections (f)[-](h) does not compel."[15]  *Id.* at *6.

Recognizing that § 20109(f) as written does not support their arguments, Plaintiff and its *Amicus* ask the Court to exercise *Leedom* jurisdiction to strike down the ARB Order because FRSA proceedings are more costly and burdensome for them than arbitration.  Pl.'s Opp'n at 32; Amicus Br. at 4, 10-13.  In doing so, they reveal that the real motivation behind this Complaint is reducing FRSA actions because of their inconvenience to railroad carriers.  Essentially, they advocate for a change in the law.  While Plaintiff and its *Amicus* may articulate legitimate business concerns, these types of arguments certainly do not show that *Leedom* applies.  In any event, the appropriate forum in which to raise these arguments is Congress, not this Court.

## III.  PLAINTIFF HAS NO CLEAR STATUTORY RIGHT TO VINDICATE, OR IN THE ALTERNATIVE, PLAINTIFF CAN OBTAIN RELIEF IN THE COURT OF APPEALS.

For *Leedom* to apply, the Secretary must have violated a clear statutory right of Plaintiff. Def.'s Mem. at 29 (citing *Public Citizen v. Office of the U.S. Trade Representatives*, 970 F.2d 916, 922 (D.C. Cir. 1992)).  It is plain from the text of § 20109(f) that Plaintiff does not have a clear statutory right.  A case that Plaintiff relies on for a different proposition, *FTC v. Miller*, 549 F.2d 452 (7th Cir. 1997), is instructive on this point.  *See* Pl.'s Opp'n at 40.  In that case, a statute <u>explicitly</u> exempted common carriers from FTC investigations.  *Miller*, 549 F.2d at 454-56.  The court held that plaintiff, a common carrier, had a clear right to be exempt from FTC

---

[15] Plaintiff relies on cases dealing with election-of-remedies provisions other than § 20109(f).  None of these cases is relevant because the language in those provisions is different from the language in § 20109(f).  For example, Plaintiff relies on *Jeffers v. Chao*, 2006 WL 13241 (D.D.C. 2006) and *Roswell v. Wood*, 357 F.Supp.2d 123 (D.D.C. 2004).  Pl.'s Opp'n at 21 n.16; 30 n.22.  These cases dealt with the same statute, the Civil Service Reform Act, which provides that an employee "may raise the matter under a statutory procedure of the negotiated [CBA] grievance procedure, but not both."  5 U.S.C. § 7121(d).  In contrast, § 20109(f) does not say that an employee may "raise" a matter under FRSA or a CBA "but not both."  Instead, it says that an employee may not "seek protection" under FRSA and "another provision of law for the same … unlawful act…."

investigations.  *Id.* at 460.  Here, however, § 20109(f) does not explicitly exempt Plaintiff from

FRSA investigations.  Therefore, Plaintiff does not have a clear right under § 20109(f).

Plaintiff claims that such a right should be inferred because "the rights afforded to

employees are conditioned in certain respects, in ways that serve to protect the interests of

railroads as respondents."  Pl.'s Opp'n at 41.  Using another ill-conceived analogy, Plaintiff

refers to statutes of limitations.  But Plaintiff cites no case where a court has exercised *Leedom*

jurisdiction based on a statute of limitations or another statute, such as § 20109(f), which does

not confer an explicit right to the party invoking *Leedom* jurisdiction.  Under Plaintiff's logic, as

long as one can infer a possible benefit from a statute, one can claim that Congress created a

clear statutory right enforceable through *Leedom*.  Accepting such logic would impermissibly

stretch *Leedom* beyond its very narrow scope.  There has to be a clear statutory right, not simply

an implied benefit, for *Leedom* to apply.  Since Plaintiff has no clear right under § 20109(f), the

Complaint should be dismissed.

Plaintiff also fails to show the lack of meaningful and adequate means of vindicating its

alleged statutory right under § 20109(f).  Plaintiff argues that it cannot be assured of obtaining

judicial review of the ARB Order in the Court of Appeals because Koger can withdraw its FRSA

complaint from DOL and bring a de novo civil action in district court.  Pl.'s Opp'n at 38.  In

addition, it argues that appellate review is not meaningful and adequate because it would still

have to go through the FRSA investigation and adjudication process.  Pl.'s Opp'n at 39.  Neither

of these arguments justifies exercising *Leedom* jurisdiction.

If Koger withdraws his FRSA complaint and bring an action in district court, Plaintiff

will have the opportunity there to raise its arguments regarding the proper interpretation of §

20109(f).  It could also seek to obtain binding circuit court precedent upon review of the district

court's decision.  Thus, Plaintiff has meaningful and adequate means for obtaining relief if Koger withdraws his FRSA complaint.

If Koger does not withdraw his FRSA complaint, Plaintiff has "an unquestioned right [under § 20109(d)(4)] to review of the" ARB Order in the court of appeals at such time as a final adverse ruling is issued.  *MCorp*, 502 U.S. at 44.  *See* Def.'s Mem. at 31 (citing, *e.g.*, *Sturm*, 300 F.3d at 875; *Detroit Newspaper Agency v. Nat'l Labor Relations Bd.*, 286 F.3d 391, 399-400 (6th Cir. 2002)).  In *MCorp*, a bank argued that there was *Leedom* jurisdiction to enjoin the prosecution of an administrative proceeding.  502 U.S. at 34.  The agency had issued various non-final cease-and-desist orders in that proceeding.  *Id.* at 35, 38.  A statutory provision clearly precluded judicial review of these non-final orders in district court, but authorized review of final agency orders in the courts of appeal.  *Id.* at 38-39.  The Supreme Court rejected the *Leedom* argument because:  "*If and when* the [agency] finds that [the bank] has violated the regulation, [the bank] will have, in the Court of Appeals, an unquestioned right to review of both the regulation and its application."  *Id.* at 43-44 (emphasis added).  *MCorp* establishes that (1) the possibility that a plaintiff's ability to obtain appellate review is affected during the course of an administrative proceeding; (2) the burden of going through the prescribed administrative process; and (3) the potentially negative effects of an allegedly improper administrative decision, do not justify the exercise of *Leedom* jurisdiction.

The rationale in *MCorp* applies here: "if and when" the ARB finds that Plaintiff has violated FRSA, Plaintiff will have in the court of appeals an unquestioned right to review of the ARB Order.  The "if and when" in this sentence refutes Plaintiff's suggestion that *Leedom* applies because it cannot be "assured" of obtaining appellate review or because, before obtaining review, it will be burdened by the effects of an allegedly improper administrative decision and by

having to go through the prescribed administrative process.[16]  *See* Def.'s Mem. at 31 (citing

*Sturm*, 300 F.3d at 875).  *Leedom* does not apply because Plaintiff has an unquestioned right

under § 20109(d)(4) to seek appellate review of the ARB Order "if and when" the ARB

determines that Plaintiff violated FRSA.

## CONCLUSION

For the foregoing reasons, the Court lacks jurisdiction over this matter and should dismiss

Plaintiff's Complaint under Rule 12(b)(1).  For essentially the same reasons, Plaintiff has failed

to state a claim upon which relief may be granted.  Consequently, and alternatively, the case

should be dismissed under Rule 12(b)(6).

Dated: June 25, 2012                              Respectfully submitted,

                                                  STUART F. DELERY
                                                  Acting Assistant Attorney General

                                                  JUDRY L. SUBAR
                                                  Assistant Branch Director

                                                  */s/ Héctor G. Bladuell*
                                                  HECTOR G. BLADUELL
                                                  Trial Attorney (D.C. Bar No. 503277)
                                                  United States Department of Justice
                                                  Civil Division, Federal Programs Branch
                                                  20 Massachusetts Avenue NW
                                                  Washington, D.C. 20530
                                                  Tel: (202) 514-4470
                                                  Fax:  (202) 616-8470

                                                  *Counsel for Defendant*

---

[16] As explained above, Plaintiff's reliance on *FTC v. Miller*, 549 F.2d 452 (7th Cir. 1977) for the proposition that it has a clear right to be free from investigations is misplaced.  *Miller* actually shows that Plaintiff does not have such a clear right.