# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NORFOLK SOUTHERN RAILWAY COMPANY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HILDA L. SOLIS,** *Secretary of Labor*,<br><br>**Defendant.** | **Civil Action No. 12-0306 (BJR)**<br><br>**MEMORANDUM OPINION** |

This matter is before the Court on a motion to dismiss (Dkt. #7) filed by Defendant Hilda L. Solis, Secretary of the United States Department of Labor ("Secretary").  The Secretary moves to dismiss the claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that this Court lacks subject-matter jurisdiction or, in the alternative, Plaintiff Norfolk Southern Railway Company ("NSR") has failed to state a claim.  NSR seeks review of a non-final agency action by the Secretary, acting through an Administrative Review Board ("ARB").  Compl. (Dkt. #1) ¶ 60.  NSR claims that the district court may review this action under the doctrine of *Leedom v. Kyne*, 358 U.S. 184 (1958), arguing that the decision was in excess of the Secretary's delegated powers, and that NSR will have no other meaningful and adequate means to vindicate its statutory right.  Compl. ¶ 4.  The Secretary cites to statutory provisions placing review of final decisions by the ARB in the appellate court.

Also pending before the Court are two motions to intervene:  one by Michael L. Mercier and his union, the Brotherhood of Locomotive Engineers and Trainmen ("BLET") (Dkt. #10) and one by the United Transportation Union ("UTU") (Dkt. #15).  Mercier, BLET, and UTU support the Secretary's motion to dismiss.

Having reviewed the briefs and underlying cases, the Court grants the Secretary's motion to dismiss.  The Court also grants Mr. Mercier's motion to intervene as a matter of right, and denies the motions to intervene by BLET and UTU.

## I.      LEGAL STANDARD

### A.      Rule 12(b)(1) Motion to Dismiss

The Secretary moves to dismiss this action under Rule 12(b)(1) for lack of subject-matter jurisdiction.  When a party files a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), "the plaintiff[ ] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction."  *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C. 2004).  Because subject-matter jurisdiction focuses on a court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority.  *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, NSR's "'factual allegations in the complaint . . . will bear closer scrutiny in resolving [the] 12(b)(1) motion' than in resolving [the] 12(b)(6) motion for failure to state a claim."  *Id.* at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (2d ed. 1987) (alteration in original)).

### B.      Rule 24 Motions to Intervene

Three parties seek to intervene in this matter under Federal Rule of Civil Procedure 24: Michael Mercier, BLET, and UTU.  The parties move to intervene as of right pursuant to Rule 24(a)(2), or, in the alternative, as a matter of discretion pursuant to Rule 24(b).

A party seeking to intervene as of right under Rule 24(a)(2) must satisfy four requirements:

> 1) [T]he application to intervene must be timely, 2) the party must have an interest relating to the property or transaction which is the subject of the action, 3) the party must be so situated that the disposition of the action may, as a practical matter, impair or impede the party's ability to protect that interest, and 4) the party's interest must not be adequately represented by existing parties to the action.

*Building & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994).  Furthermore, a movant seeking to intervene under Rule 24(a)(2) must satisfy the same Article III standing requirements as the original parties.  *Id.*

Permissive intervention under Rule 24(b)(1) is, as the name suggests, a matter of the court's discretion.  The Rule provides that the court may permit anyone to intervene who 1) makes a timely motion, 2) has a claim or defense, and 3) that claim or defense shares a common question of law or fact with the main action.  Fed. R. Civ. P. 24(b)(1)(B); *see also EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1045-46 (D.C. Cir. 1998).  In addition to these factors, the court must consider whether intervention would cause any undue delay or prejudice to the original parties.  *Id.*[1]

## II.    STATUTORY BACKGROUND

### A.    Railway Labor Act

The Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA") was enacted in 1926 to govern the relations between railroad carriers and their employees and to establish a process for the orderly resolution of disputes between rail carriers and their employees without interrupting commerce or operations.  45 U.S.C. § 151a.  The RLA requires the formation of collective bargaining agreements ("CBAs") between carriers and their employees as to rates of pay, rules,

---

[1]    The D.C. Circuit has not resolved whether independent Article III standing is required for permissive intervention. *Peters v. District of Columbia*, Case No. 09-CV-2020, 2012 U.S. Dist. LEXIS 52606, at *137 n.34 (D.D.C. Apr. 16, 2012) (citations omitted).

and working conditions, and to settle all disputes in a way that avoids interruption to commerce or the operation of the carrier.  45 U.S.C. § 152 First.[2]  Section 3 of the RLA, 45 U.S.C. § 153, establishes a framework for resolving disputes between an employee and carrier over the interpretation of such agreements.  Disputes concerning the application or interpretation of a CBA, including disputes over the assessment of discipline pursuant to the terms of a CBA, are first handled according to the grievance procedure in the CBA.  45 U.S.C. § 153 First (i); *see also Union Pac. R.R. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, --, 130 S. Ct. 584, 591 (2009).  If the grievance process is not successful in settling the matter, the employee or carrier may pursue further remedies though mandatory arbitration before the National Railroad Adjustment Board ("NRAB") or a special board of adjustment established by the railroad carrier and the union.  45 U.S.C. § 153 First (i), Second.  The special board of adjustment is created by the agreement of a railroad and labor union, under the authority of the National Mediation Board ("NMB"), a federal agency.  45 U.S.C. § 153 Second.

An award rendered by an RLA § 3 arbitration board is made "final and binding" by the statute.  45 U.S.C. § 153 First (m), Second.  The mandatory arbitration process is exclusive and extinguishes any other remedies for alleged violations of a railroad labor agreement.  *See, e.g., Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 322-26 (1972).  However, claims that are independent of a CBA, and that do not require the interpretation or application of a CBA, may be pursued in other forums.  *See, e.g., Atchinson, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 564-65 (1987) (finding that the possibility of pursuing a claim through the RLA did

---

[2]   Subsections in this statute are represented by ordinal name rather than a number.

not deprive an employee of an action under the Federal Employers' Liability Act, when the

rights asserted were not based on the CBA).

      **B.**     **Federal Railroad Safety Act, 49 U.S.C. § 20101 *et seq.***

          *1.*     *The 1980 Amendments to the Federal Railroad Safety Act*

The Federal Railroad Safety Act ("FRSA") was enacted by Congress in 1970. Pub. L.

No. 910458, 84 Stat. 971, *et seq.* (1970). After the passage of FRSA, however, Congress noted

that railroad workers who complained about safety conditions experienced retaliation for their

actions. *See Consol. Rail Corp. v. United Transp. Union*, 947 F. Supp. 168, 171 (E.D. Pa. 1996)

(citation omitted). In response, Congress amended FRSA in 1980. The 1980 amendments added

a section that prohibited rail carriers from retaliating and discriminating against employees who,

among other things, reported violations of federal railroad safety laws or refused to work under

hazardous conditions. *See* Federal Railroad Safety Authorization Act of 1980, Pub. L. No. 96-

423, § 10, 94 Stat. 1811, 1815 (1980). Following the 1980 amendments, employees who

experienced such retaliation in violation of FRSA could seek relief through the arbitration

procedures set forth in RLA § 3, 45 U.S.C. § 153. *See id.* at § 10, § 212(c)(1), 94 Stat. 1811,

1815.

The 1980 amendments also included an "Election of Remedies" provision.[3] *Id.* at § 10, §

212(d), 94 Stat. 1811, 1815-16. Congressman James Florio, manager of the 1980 bill in the

House of Representatives, explained the purpose of the Election of Remedies provision:

> We . . . agreed to a provision clarifying the relationship between
> the remedy provided here and a possible separate remedy under

---

[3]    The original section provided: "Whenever an employee of a railroad is afforded protection under this
section and under any other provision of law in connection with the same allegedly unlawful act of an
employer, if such employee seeks protection he must elect either to seek relief pursuant to this section
or pursuant to such other provision of law." Pub. L. No. 96-423 at § 10, § 212(d), 94 Stat. 1811,
1815-16.

> OSHA.  Certain railroad employees, such as employees working in
> shops, could qualify for both the new remedy provided in this
> legislation, or an existing remedy under OSHA.  It is our intention
> that pursuit of one remedy should bar the other, so as to avoid
> resort to two separate remedies, which would only result in
> unneeded litigation and inconsistent results.

126 Cong. Rec. 26,532 (1980).

The current "Election of Remedies" section reads as follows:  "An employee may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the railroad carrier."  49 U.S.C. § 20109(f).[4]

### 2.    The 2007 Amendments to the Federal Railroad Safety Act

In 2007, Congress amended FRSA to include additional categories of FRSA-protected conduct.  *See* Implementing Recommendations of the 9/11 Commission Act of 2007, Pub. L. No. 110-53, § 1521, 1221 Stat. 266, 444 (2007).  FRSA currently provides, in relevant part, that a railroad carrier "may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee" for an employee's actions "to notify, or attempt to notify, the railroad carrier or the Secretary of Transportation of a work-related personal injury or work-related illness."  49 U.S.C. § 20109(a)(4).

The 2007 amendments to FRSA also specifically eliminated the requirement that FRSA complaints proceed through the RLA arbitration process, instead transferring authority to investigate and adjudicate such complaints to the Secretary of Labor.  Pub. L. No. 110-53, § 1521(c), 1221 Stat. 266, 446.  Furthermore, Congress added sections (g) and (h) to the statute, which specify that nothing in § 20109 of FRSA preempts or diminishes other rights of

---

[4]    The parties do not dispute that the meaning of the section has not changed since 1980, although the language has been altered in subsequent amendments.  *See* Def.'s Mot. at 4; Pltf.'s Opp. (Dkt. #14) at 11 n.9.

employees, and that the rights provided by FRSA cannot be waived.[5]   49 U.S.C. §§ 20109(g),

(h).  The 2007 amendments were an attempt to "enhance[] administrative and civil remedies for

employees" and "to ensure that employees can report their concerns without the fear of possible

retaliation or discrimination from employers."  H.R. Rep. No. 110-259 at 348 (2007) (Conf.

Rep.).

3.      *Investigating retaliation claims under 49 U.S.C. § 20109*

The Secretary has delegated her authority to investigate complaints for retaliation under

49 U.S.C. § 20109 to the Assistant Secretary for Occupational Safety and Health (the "Assistant

Secretary"), who oversees the Occupational Safety and Health Administration ("OSHA").  *See*

29 C.F.R. § 1982.104.  The Assistant Secretary must dismiss a complaint if it does not contain a

*prima facie* showing that the employee's engaging in protected activity was a contributing factor

in the alleged adverse employment action.  *See* 49 U.S.C. § 20109(d)(2)(A), *incorporating* 49

U.S.C. § 42121(b)(2)(B)(i); 29 C.F.R. § 1982.104(e)(1).  Otherwise, the Assistant Secretary will

conduct an investigation and, if "there is reasonable cause to believe that a violation has

occurred," issue a preliminary order granting relief.  29 C.F.R. § 1982.105.  Relief may include

---

[5]      The sections are as follows:

> (g) No preemption. Nothing in this section preempts or diminishes any
> other safeguards against discrimination, demotion, discharge,
> suspension, threats, harassment, reprimand, retaliation, or any other
> manner of discrimination provided by Federal or State law.

> (h) Rights retained by employee. Nothing in this section shall be deemed
> to diminish the rights, privileges, or remedies of any employee under
> any Federal or State law or under any collective bargaining
> agreement. The rights and remedies in this section may not be
> waived by any agreement, policy, form, or condition of employment.

29 U.S.C. §§ 20109(g), (h).

abatement, reinstatement (with back pay, terms, and conditions of employment), compensatory damages, attorney's fees, and punitive damages up to $250,000. *Id.*

Either the rail carrier or the employee may file objections to the Assistant Secretary's findings and determinations and seek a hearing before an Administrative Law Judge ("ALJ"). 49 U.S.C. § 20109(d)(2)(A), *incorporating* 49 U.S.C. § 42121(b)(2)(A); 29 C.F.R. § 1982.106(a). A preliminary order of reinstatement issued on behalf of the Assistant Secretary remains in effect unless specifically stayed. *Id.* By delegation of the Secretary, decisions and recommendations by ALJs made pursuant to 49 U.S.C. § 20109 are reviewed by the Department of Labor's ARB. Secretary's Order No. 1-2010, 75 Fed. Reg. 3924-01 ¶ 5(c)(15) (Jan. 15, 2010). The ARB also has authority to issue final decisions on behalf of the Secretary. *Id.* ¶ 5. A party seeking review, including judicial review, of a decision of the ALJ must file a petition with the ARB. 29 C.F.R. § 1982.110(a). An order of reinstatement issued by an ALJ continues in effect while the matter is pending before the ARB, unless the reinstatement order is specifically stayed. 29 C.F.R. § 1982.110(b). A final order of the ARB (which is the final order of the Secretary) is subject to judicial review in a United States Court of Appeals. 49 U.S.C. § 20109(d)(4); 29 C.F.R. § 1982.112.

District courts have jurisdiction in § 20109 actions in two limited circumstances. First, if the Secretary has not issued a final decision within 210 days of the filing of an administrative complaint, and the delay is not due to the bad faith of the employee, the employee may bring an action in district court for *de novo* review of the complaint. 49 U.S.C. § 20109(d)(3). Second, the Secretary may bring an action in district court to require compliance with an order issued pursuant to the procedures in 49 U.S.C. § 42121(b) (Department of Labor complaint procedure). 49 U.S.C. § 20109(d)(2)(A)(iii). Neither of these circumstances is present in this case.

### III.      FACTUAL BACKGROUND

#### A.      Underlying events and the RLA proceeding

Larry L. Koger was employed by NSR as a conductor, and worked under a CBA between NSR and UTU, Koger's labor union.  Compl. ¶ 18.  On July 29, 2007, Koger failed to alert an engineer to stop at a red signal, in violation of NSR's operating rules.  Compl. ¶ 19.  The locomotive the engineer was driving ran the signal, struck a derailing device, derailed, and was damaged.  *Id.*  On August 8, 2007, NSR conducted a formal investigational hearing in accordance with the CBA to determine Koger's responsibility in connection with the locomotive passing the signal, and determined that he was responsible.  Compl. ¶ 20.  On August 21, 2007, NSR dismissed Koger from service for his responsibility in allowing the locomotive to run through the red signal.  *Id.*  Koger's representative from UTU appealed his dismissal within NSR, but it was affirmed.  Compl. ¶ 21.

Koger then challenged his dismissal in arbitration before Public Law Board No. 5944 ("PLB 5944"), as provided in his CBA.  Compl. ¶ 22.  PLB 5944 is an open, ongoing arbitration board created by NSR and UTU pursuant to RLA § 3 Second, 45 U.S.C. § 153 Second.  *Id.*  PLB 5944 consists of a partisan railroad member, a partisan union member, and a neutral chairman, who is compensated by the NMB.  *Id.*  On January 8, 2008, PLB 5944 issued an interim award, which directed that Koger be returned to service, but deferred a final determination of the propriety of NSR's assessment of discipline against Koger.  Compl. ¶ 23.  On July 28, 2008, PLB 5944 issued its final award, which upheld NSR's assessment of discipline, but modified the extent of the discipline by reducing it from a dismissal to an unpaid suspension from service for an extended period of time.  Compl. ¶ 24.

B.        The FRSA proceedings

On the day following the derailment, Koger notified NSR that he had been injured in the accident.  Compl. ¶ 25.  In February 2008, after receiving his notice of dismissal from NSR, and while arbitration was pending, Koger filed a whistleblower complaint under 49 U.S.C. § 20109, alleging that he had been terminated in violation of FRSA for reporting a work-related personal injury to NSR.  *Id.*  On June 3, 2008, following an investigation, the Regional Administrator for OSHA, Region III, exercising authority delegated by the Assistant Secretary, determined that there was no reasonable cause to believe that NSR had retaliated against Koger in violation of FRSA.  Compl. ¶ 26.  Koger appealed the Regional Administrator's determination to a Department of Labor ALJ.  Compl. ¶ 27.  The ALJ held that 49 U.S.C. § 20109(f) barred Koger's FRSA complaint, because Koger elected to challenge his dismissal by pursuing the grievance and arbitration procedures under RLA § 3, 45 U.S.C. § 153.  *Id.*; *Koger v. Norfolk Southern Ry.*, Case No. 2008-FRSA-003 (May 29, 2009).  According to the ALJ, Koger sought protection under "another provision of law," *i.e.*, the RLA, for the "same unlawful act," *i.e.*, his discharge.  Therefore, the ALJ reasoned, Koger's complaint ran counter to the language of § 20109(f).  *Id.*; Compl. Exh. A (Final Decision and Order on Interlocutory Review by the ARB) ("ARB decision") at 4.

Koger petitioned the ARB for review of the ALJ's decision.  Compl. ¶ 28.  The ARB consolidated Koger's appeal with an appeal in another case, *Mercier v. Union Pacific R.R.*, Case No. 2008-FRSA-0004 (June 3, 2009), where a different ALJ determined that § 20109(f) did not preclude an employee who had challenged his termination in RLA § 3 arbitration from filing a whistleblower claim under FRSA.  Compl. ¶ 29.  The ALJ in *Mercier* determined that "the contractual agreement or collective bargaining agreement under which Mercier had proceeded in

his grievance/arbitration action is not a provision of law in itself although it is enforceable through provisions of law such as the RLA." ARB decision at 3. The ALJ in *Mercier* observed that this conclusion was supported by § 20109(g), which provides that nothing in § 20109 preempts or diminishes any other safeguards against discrimination, and § 20109(h), which provides that employees retain rights and remedies "under any Federal or State law or under any collective bargaining agreement," and that the rights and remedies provided under FRSA "may not be waived." *Id.*

The ARB agreed with the decision of the ALJ in *Mercier*, and, on September 29, 2011, ruled that, as a matter of law, an employee's pursuit of RLA arbitration does not constitute an election of remedies under 49 U.S.C. § 20109(f). Compl. ¶ 30. The ARB affirmed the ALJ's order in *Mercier*, reversed the dismissal of Koger's FRSA complaint, and remanded both cases for further proceedings consistent with its opinion. ARB decision at 9. The ARB decision was not a final order of the Secretary, and is not appealable to a court of appeals under 49 U.S.C. § 20109(d)(4). Compl. ¶ 32.

### C.    The District Court action

NSR filed its complaint in the district court on February 24, 2012. NSR asks the Court to vacate and set aside the September 29, 2011 decision of the Secretary, to declare that the Secretary may not rely on that decision in any other proceedings under 49 U.S.C. § 20109, to direct the Secretary to dismiss Koger's complaint, and to enjoin the Secretary and her delegates from applying the interpretation of 49 U.S.C. § 20109(f) set forth in the September 29, 2011 decision in any other proceedings under 49 U.S.C. § 20109. Compl. ¶ 63(1). The Secretary filed the instant motion to dismiss on April 30, 2012. Mercier and BLET filed their motion to

intervene on May 23, 2012; UTU filed its motion to intervene on June 1, 2012.  The case was transferred to the undersigned judge on November 5, 2012.

## IV.   MOTIONS TO INTERVENE

### A.   Michael Mercier's motion to intervene will be granted as of right

There is no question that Mercier should be able to intervene as of right.  His underlying FRSA complaint was similar enough to Koger's that the ARB consolidated their cases, and, were this Court to declare that the Secretary could not rely on the ARB decision, it would directly impact his complaint.  NSR does not oppose Mercier's request, but asks leave to respond to any new arguments raised by Mercier in his briefing.  Pltf.'s Opp. to Mot. to Intervene (Dkt. #17) at 4.  Inasmuch as the Court did not rely on Mercier's briefing in reaching its decision on the motion to dismiss, it is not necessary for NSR to file a response.  Therefore, Mercier's motion to intervene is granted, and NSR's request for leave to file a response is denied.

### B.   The motions to intervene by the unions will be denied

#### 1.   Motion to intervene as of right

BLET and UTU move to intervene, either as of right or permissively, on the basis of their representation of railroad workers who could be impacted by this decision.  The unions argue that disposition of this action may, as a practical matter, impair or impede their ability to protect the interests of their members, who would be forced to choose between protecting the integrity of their CBAs and filing a complaint under FRSA if the Secretary could not rely on the ARB decision.  NSR opposes intervention by the unions, arguing that the unions fail to meet the prerequisites for intervention as of right, and have no basis for requesting permissive intervention.

The Court determines that neither union has shown that its interest as a collective bargaining overseer is sufficiently related to defending the Secretary's interpretation of FRSA to merit intervention as of right.  Furthermore, to the extent the unions' interests do relate to this action, the unions do not contend that the Secretary's representation is inadequate, nor do they contribute additional arguments to those raised by the Secretary.  While the unions raise the specter of what interests may be at stake if the Court denies the motion to dismiss, since the Court is granting the motion, that particular argument is irrelevant.

### 2.     *Motion for permissive intervention*

As to permissive intervention, the Court finds that the unions' interests do not demonstrate that either union has a claim or defense sharing a common question of law or fact with the main action such that permissive intervention would be appropriate.  Their respective positions merely support that of the Secretary without adding anything new, and their interests are speculative at best.  Therefore, the unions' motions to intervene are denied.

## V.     MOTION TO DISMISS

The Secretary contends that this Court lacks subject-matter jurisdiction, pointing to 49 U.S.C. § 20109(d)(4), which explicitly authorizes judicial review of final orders of the Secretary only in the courts of appeals.  NSR claims that it is entitled to direct review of the ARB decision, a non-final action by the Secretary, by the district court under the doctrine of *Leedom v. Kyne*. NSR claims that the ARB decision is "in excess of the Secretary's jurisdiction and delegated powers, and NSR has no other meaningful and adequate means of vindicating its statutory right." Compl. ¶ 4.

The *Leedom* doctrine provides a narrow exception to statutes that contain an implied preclusion of district court review of administrative action.  In *Leedom*, petitioners challenged a

decision of the National Labor Relations Board ("the NLRB" or "the Board"), in which the

Board certified a bargaining unit containing both professional and non-professional employees

without allowing the professional employees of the unit to vote.  *Leedom*, 358 U.S. at 185.  The

National Labor Relations Act ("the NLRA") contains a provision that the NLRB will not certify

a collective bargaining unit for such purposes if the unit contains both professional and non-

professional employees unless a majority of the professional employees vote for inclusion in the

unit.  29 U.S.C. § 159(b)(1).  The Board did not contest that it "acted in excess of its powers and

had thereby worked injury to the statutory rights of the professional employees."  *Leedom*, 358

U.S. at 187.  The NLRA, however, did not provide for any judicial review of the Board's

determination, as a Board order in a certification proceeding was not considered a "final order"

subject to review.  *Id.*  The Supreme Court held that, under the particular circumstances, the

district court had jurisdiction to afford the petitioners a remedy.  The Court noted that the district

court was not reviewing a decision by the Board made within the Board's jurisdiction, but was

being asked to strike down an order of the Board "made in excess of its delegated powers and

contrary to a specific prohibition in the Act."  *Id.* at 188.  The Supreme Court determined that the

provision requiring a vote among the professional employees was "clear and mandatory."  *Id.*  In

exercising a power that was specifically withheld, the Board "deprived the employees of a 'right'

assured to them by Congress."  *Id.* at 189.  Furthermore, if the federal courts did not exercise

jurisdiction, the professional employees would have no other means within their control by

which to protect and enforce the statutory right provided by Congress.  *Id.* at 190.

     The exception under the *Leedom* doctrine is extremely narrow.  The district court may

not invoke its jurisdiction merely because a party alleges that an agency has exceeded its

statutory authority.  *See Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S.

32, 43 (1991).   Under review schemes such as that in 49 U.S.C. § 20109(d)(4), "where Congress

has set out a complex scheme authorizing certain types of review but not others," and Congress

has "explicitly given the district courts review authority" in particular areas, the statute

powerfully suggests the intent to preclude district court review under other circumstances. [6]

*Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 494 (D.C. Cir. 1988).   Therefore, the

agency error at stake in a case where the *Leedom* doctrine applies must be "so extreme" as to be

"jurisdictional or nearly so."   *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449

(D.C. Cir. 2009) (citation omitted).   "Given that very stringent standard, a *Leedom v. Kyne* claim

is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds."   *Id.*

   A party seeking judicial review pursuant to *Leedom* must satisfy two predicates.   First,

the party must demonstrate that the agency disobeyed a statutory provision that is "clear and

mandatory."   *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437

F.3d 1256, 1258 (D.C. Cir. 2006) (quoting *Leedom*, 358 U.S. at 188).   Second, the party must

show that, without the district court's exercise of jurisdiction, it lacks any "meaningful and

adequate means of vindicating [its] statutory rights."   *Nat'l Air Traffic Controllers*, 437 F.3d at

1258. (quoting *MCorp*, 502 U.S. at 43).

   Having reviewed the briefing, FRSA, the ARB decision, and the case law, the Court

concludes that NSR has failed to satisfy either prong under the *Leedom* doctrine.

---

[6]   As the Secretary notes, the party seeking to invoke *Leedom* must show that the preclusion of judicial review in the statute was merely implied, rather than express.   While the Secretary argued that the Court does not have jurisdiction under FRSA to review the ARB decision in its motion to dismiss, however, she only raised the implied-versus-express preclusion argument in her reply brief.   *See* Def.'s Mot. at 10; Def.'s Reply (Dkt. #23) at 2-4.   The Court will not consider that particular argument, and will move on to the analysis under the *Leedom* doctrine.

**A.      NSR failed to show that the Secretary disobeyed a statutory provision that is clear and mandatory**

NSR must show a "clear and mandatory" obligation on the part of the Secretary either to refrain from or to engage in particular conduct, and show that the ARB decision violates that particular obligation. *Nat'l Air Traffic Controllers*, 437 F.3d at 1263. District court review under the *Leedom* doctrine may be appropriate when an agency has engaged in a "gross violation" of statutory duties, and when absence of review would result in the "sacrifice or obliteration of a right" created by Congress. *Ry. Labor Exec. Ass'n. v. Nat'l Mediation Bd.*, 29 F.3d 655, 661 (D.C. Cir. 1994) (*en banc*). Such review is not appropriate if the agency's interpretation is a "colorable" reading of the statute, even if that reading is not the only one possible. *Griffith*, 842 F.2d at 494. *See also Nat'l Air Traffic Controllers*, 437 F.3d at 1264 (noting that both sides raised compelling arguments, which indicated that the "statutory directive" was not "specific and unambiguous").

NSR claims that 49 U.S.C. § 20109(f) imposes a clear and mandatory obligation on the part of the Secretary to bar complaints from employees who have engaged in mandatory arbitration pursuant to the procedures in RLA § 3. NSR further claims that to allow employees who have already engaged in RLA § 3 arbitration to maintain complaints under FRSA would deprive rail carriers of a Congressionally-created right to be free of such suits.

Contrary to NSR's assertions, the statute is neither specific nor unambiguous. As noted above, at the forefront of the ARB decision was the question of whether an employee who engages in mandatory arbitration for violation of the terms of a CBA who also files a FRSA complaint is "seek[ing] protection" under FRSA and "another provision of law." ARB decision at 3. The ARB decision, citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), explained that "another provision of law" does not encompass grievance procedures pursued under a CBA.

ARB decision at 7.  In *Alexander*, the Court considered "under what circumstances, if any, an

employee's statutory right to a trial *de novo* under Title VII may be foreclosed by prior

submission of his claim to final arbitration under the nondiscrimination clause of a collective-

bargaining agreement."  *Alexander*, 415 U.S. at 38.  The Court determined that contractual rights

under a CBA were distinct from federal statutory rights, and the rights had "legally independent

origins."  *Id.* at 52-53.  Referencing *Alexander*, the ARB decision determined that a reading of

§ 20109(f) allowing retaliation claims to proceed concurrent with collective bargaining grievance

procedures would be consistent with the plain meaning of FRSA in light of §§ 20109(g) and (h),

which reinforce employee rights (under § 20109(h)) and limit the preemption of other rights of

action by an employee (under § 20109(g)).

NSR argues that the ARB decision's reasoning is flawed, citing *Norfolk & Western Ry. v.

Am. Train Dispatchers Ass'n*, 499 U.S. 117 (1991) for the proposition that a railroad employee

seeking relief for violation of the terms of a CBA is seeking protection under the RLA, and that a

CBA falls under "all other law" as it appears in a statutory immunity provision.  Contrary to

NSR's position, the opinion in *Norfolk & Western* is not entirely inconsistent with that in

*Alexander*, nor is it as determinative as NSR maintains.  *Norfolk & Western* states that the

obligations of the RLA "give[] force to the carriers' collective bargaining agreements," and that

the "RLA governs the formation, construction, and enforcement of the labor-management

contracts."  *Norfolk & Western*, 499 U.S. at 131.  In the instant action, as in *Norfolk & Western*,

the RLA provisions for mandatory arbitration of disputes concerning the CBA are procedural,

while the substantive provisions at issue come from the CBA itself.

NSR's argument is flawed in other respects.  Section 20109(f) states that the employee

cannot seek protection under FRSA and another provision of law for "the same allegedly

unlawful act of the carrier." 49 U.S.C. § 20109(f). By characterizing the "act" as the dismissal, NSR paints the "act" with a broad enough brush to include two very different factual scenarios with two different legal claims. In Koger's case, the unlawful act alleged under the FRSA was a dismissal in retaliation for reporting his injury. The unlawful act alleged in his RLA § 3 arbitration was dismissal in violation of his rights under the CBA concerning his responsibility for the accident.

The statutory history supports separating the claim of retaliation from the claim of a CBA violation. NSR ignores the different statutory scheme created by the 2007 amendments to FRSA.[7] Until the 2007 amendments, retaliation claims were pursued before an RLA § 3 arbitration board; therefore, retaliation claims and complaints pursuant to an employee's CBA were pursued in one action. The 2007 amendments to the FRSA were an attempt to "enhance[] administrative and civil remedies for employees" and "to ensure that employees can report their concerns without the fear of possible retaliation or discrimination from employers." H.R. Rep. No. 110-259 at 348 (2007) (Conf. Rep.). As a part of achieving these goals, the Secretary took over the proceedings related to retaliation claims under FRSA, separating such claims from any claims alleging violations of an employee's CBA. At the same time, Congress amended the statute with §§ 20109(g) and 20109(h). Under NSR's reading of the statute, an employee who was dismissed both in violation of his CBA and in retaliation for reporting an injury would be forced to choose between his claim for retaliation under FRSA and his rights under his CBA. As discussed above, Congress' provisions under §§ 20109(g) and (h) limited the preemption of other

---

[7]   For instance, NSR points to the 1980 amendments to the statute and the language of Congressman Florio to assert that allowing an employee to engage in arbitration under RLA § 3 and to pursue a FRSA complaint would produce "unneeded litigation and inconsistent results." Pltf.'s Opp. at 11 (citing statement of Congressman Florio, *see* Section II.B.1 *supra*). In doing so, NSR ignores that retaliation proceedings took place before an RLA § 3 arbitration board from 1980 until 2007.

rights of action by an employee and reinforced employee rights. It would be highly inconsistent

with the 2007 amendments for Congress, by transferring retaliation claims to the Secretary, to

limit the ability to engage in RLA arbitration and pursue a separate retaliation claim under FRSA

without further clarification.

For purposes of resolving the issue of its jurisdiction, this Court need not determine

whether or not the ARB's ruling was correct. It need only determine that it was colorable under

the statute, and not in violation of a clear, mandatory directive within the statute. Thus, the

Court finds that the *Leedom* doctrine does not apply.

**B.      NSR has not shown that it lacks meaningful and adequate means of
vindicating its statutory rights**

The second prong that NSR must meet to establish that it is entitled to access to this

Court under the *Leedom* doctrine is that it would be "wholly deprived" of "meaningful and

adequate means of vindicating its statutory rights." *Nat'l Air Traffic Controllers*, 437 F.3d at

1263. NSR argues that, without a ruling by this Court as to the correctness of the ARB's

decision, it lacks any real possibility of vindicating its right to be free from suit under FRSA after

an employee has already pursued mandatory arbitration under RLA § 3. First, because it has

been more than 210 days since Koger filed his complaint, and no final decision has been issued

by the Secretary, he may withdraw his complaint and seek *de novo* review by a district court. 49

U.S.C. 20109(d)(3). Koger has not exercised that right as of yet, but NSR claims that, if he does,

he will "short-circuit the administrative process." Pltf.'s Opp. at 39. NSR claims that it would

not be sufficient to argue that the ARB decision was wrongly decided in that case, because the

district court could not bind the Secretary to its decision. Furthermore, NSR claims that, even if

it were assured of court of appeals review at the end of the administrative process, it would not

provide a meaningful and adequate opportunity to obtain relief, because § 20109(f) is meant to

protect a railroad from having to go through FRSA investigation in the first place.  In short, NSR claims that, if it must proceed in the investigation, it has already lost its right under the statute.

First, NSR's view of its circumstances is too narrow.  The question of whether a party is "wholly deprived" of any means of vindicating its statutory rights should be viewed more broadly.  In *Leedom*, there was no scheme in place for review of the agency's action by any means.[8]  On the other hand, in *Sturm, Ruger & Company v. Chao*, the Court held that *Leedom* was inapplicable, because "[a]n employer" in general could challenge the contested practice under the statutory review procedure.  *Sturm, Ruger & Co. v. Chao*, 300 F.3d 867, 874 (D.C. Cir. 2002).  Likewise, while NSR may never get the opportunity to challenge the ARB decision before the court of appeals in Koger's case, it would still have the opportunity to challenge the ARB decision's interpretation of the statute in another case.  NSR may lack clarity on the fate of its claimed statutory rights at this time, but that does not render it "wholly deprived" such that the *Leedom* doctrine would be appropriate.

Furthermore, NSR's latter argument begs the question, in that the Court would have to assume NSR's position to be the correct one to believe the investigation to be such an unwarranted burden.  NSR has not argued that it would experience irreparable harm if forced to go through with Koger's FRSA investigation—merely that it would have to proceed with an investigation to prove that it does not have to proceed with an investigation.  It cannot be said that the practical effect of making NSR go through with this investigation is to somehow foreclose all access to the courts.  *Cf. Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 218

---

[8]     Specifically, the certification of a bargaining class in *Leedom* was a non-final agency action under the statute that did not involve any possibility of moving forward unless it was drawn into question by a petition for enforcement or review of an order restraining an unfair labor practice.  *See Leedom*, 358 U.S. 187.  In the instant action, whether or not Koger actually moves forward with his suit, the statutory scheme provides a structure for adjudication that would, conceivably, lead to a final order by the Secretary that NSR could eventually appeal.

(1994) (finding that the choice of compliance with the agency action until the review process was complete or the incurrence of penalties that were final and payable only after full review was not so "onerous" or "coercive" as to deny a mine operator of a meaningful and adequate means of vindicating its rights).

## VI.    CONCLUSION

In seeking to overturn the decision of the ARB, NSR has tried to avail itself of an extremely limited doctrine established by *Leedom v. Kyne*.  The Court finds that the Secretary correctly argues that NSR fails to meet the stringent requirements of *Leedom*.  This Court lacks subject-matter jurisdiction, and the Secretary's motion to dismiss is granted.

A separate Order will follow consistent with this opinion.

January 3, 2013

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE